| | |
|---|---|
| **NATHANIEL POLLEY, on behalf of himself** ) | **United States District Court** |
| **and all others similarly situated,** ) | **Northern District of Illinois** |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | |
| ) | |
| **NORTHWESTERN UNIVERSITY,** ) | |
| ) | |
| **Defendant.** ) | |

### COMPLAINT

Plaintiff Nathaniel Polley ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant Northwestern University ("Northwestern"), and complains and alleges upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys, and says:

### I.     NATURE OF THE CASE

1.     This is a class action brought on behalf of all people who paid tuition and fees, either directly or through a third party paying on their behalf, for in-person undergraduate or graduate programs at Northwestern, and who have been unable to receive the benefit of the education for which they paid, and/or the services for which their fees were paid, since the campus effectively shut down March 2020 and moved classes online as part of Northwestern's response to the Novel Coronavirus Disease 2019 ("COVID-19") pandemic.

2.     While the effects of the COVID-19 crisis are shared by all individuals and institutions across the country, Northwestern has failed to apportion the burden in an equitable manner or consistent with its obligations as an educational institution. Some Spring 2020 Quarter classes were canceled, all or substantially all Spring 2020 Quarter classes were held exclusively online, and all undergraduate classes were graded on a pass/fail basis without student consent.

3.     Nonetheless, Northwestern has retained all tuition, fees, and related payments for these classes and plans to do so for similar online classes in the coming quarters.

4.     As a result of Northwestern's unilateral policy changes, Plaintiff has not received the educational services, access to facilities, and/or related opportunities for which Plaintiff and the putative class contracted and paid.

5.     Prior to its March 11, 2020 announcement that it would cancel one week of classes and move remaining classes online, Northwestern offered online education for only some courses in select schools and typically charged far less for the aforementioned services as compared to in-person instruction. This is due to the inability of online classes to replicate the full academic opportunities and experiences of in-person instruction, as well as requiring a lesser financial burden to facilitate. Remote learning options cannot replace the comprehensive educational experience promised by Northwestern. Access to facilities, materials, faculty, residence life, school events, collaborative learning, dialogue, feedback and critique are essential to the in-person educational experience. Plaintiff and the putative class contracted and paid for the full experience of academic life on Northwestern's campus, and remote online learning does not provide the same value as in-person education.

6.     As a result, Northwestern has financially damaged Plaintiff and the putative class members. Plaintiff brings this suit because Plaintiff and the class members did not receive the full value of the services for which they paid. They had been deprived of the benefit of their bargain and had suffered out-of-pocket loss. In addition to legal fees, Plaintiff and Class are entitled to recover compensatory damages, trebling where permitted.

7.     Northwestern is not entitled, by either contract or equitable principles, to bequeath the debts of its COVID-19 related closure to its students and their families. Plaintiff and the

putative class are entitled to a partial refund of the tuition, fees, and other related payments for in-person educational services, access to facilities, and/or related opportunities that Northwestern did not provide.

8.      Plaintiff seeks, for himself and the putative class members, a return of a prorated portion of the tuition, fees, and other related costs, proportionate to the diminished value of online classes and the amount of time in the Spring 2020 Quarter when Northwestern ceased in-person classes, campus services, and access to campus facilities. The aforementioned remediation is to be continued through to such time as Northwestern reinstates in-person classes.

## II. JURISDICTION AND VENUE

9.      The Court has original jurisdiction of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because at least one member of the Class, as defined below, is a citizen of a different state than Northwestern. Additionally, the Class is comprised of more than one hundred members, and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

10.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Northwestern is headquartered in this district.

11.      The Court has personal jurisdiction over Northwestern because 1) Northwestern is headquartered in this district, 2) many of the acts and transactions giving rise to this action occurred in this district, and 3) Northwestern conducts substantial business in this district.

## III.      PARTIES

12.      Plaintiff Nathaniel Polley is a citizen and resident of the State of Illinois. Plaintiff has attended Northwestern University since the Fall 2018 Quarter. Plaintiff paid, either directly or through a third party paying on his behalf, approximately $13,528 in

tuition to Northwestern for the 2020 Spring Quarter. In June 2020, Plaintiff had graduated from Northwestern's McCormick School of Engineering with a Master of Science in Biotechnology.

13.    Northwestern University is a private research university comprised of twelve constituent schools. Northwestern had a total enrollment of over 8,000 undergraduate students and over 13,000 graduate students for the 2019-2020 academic year. As of 2019, Northwestern reportedly had an endowment of $11.1 billion.

14.    Northwestern was eligible to receive federal stimulus funding under the CARES Act, which provides for approximately $14 billion for colleges and universities based on enrollment numbers in order to mitigate the financial impact of the COVID-19 crisis on both institutions and students. On or about April 28, 2020, Northwestern announced it would not apply for CARES Act funding.

## IV.    FACTUAL ALLEGATIONS

### A.    Closure of Campus and Suspension of In-Person Education

15.    Plaintiff and Class members are individuals who paid the cost of tuition, mandatory fees, and other related costs, either directly or through a third party paying on their behalf, to attend undergraduate or graduate programs during the Spring 2020, Fall 2020, Winter 2021, and/or succeeding quarters at Northwestern.

16.    Plaintiff and Class members entered into a contract with Northwestern whereby the transaction of tuition, fees, and other related costs would be made, and Northwestern would provide an agreed-upon number of classes through in-person instruction and access to physical resources and school facilities such as libraries, laboratories, and classrooms.

17.    During the 2019-2020 academic year, Northwestern charged its undergraduate students a tuition of $18,744 per quarter if enrolled between 3 to 5.5 course units, amounting to

an estimated average cost of $4,828 per course unit. Students enrolled in fewer than 3 course units were charged $6,668 in tuition for each course unit, and students enrolled in greater than 5.5 course units were charged $6,668 for each additional course unit.

18.     During the 2019-2020 academic year, Northwestern similarly charged its graduate students tuition by the quarter and/or by course unit. For instance, Northwestern charged graduate students obtaining a Master of Science in Biotechnology from the McCormick School of Engineering $16,528 for the Spring 2020 Quarter ($4,652 per course unit).

19.     On March 11, 2020, Northwestern announced it had cancelled all classes from March 31, 2020 until April 3, 2020, effectively closed its campus facilities, and moved all (or substantially all) classes online.

20.     While the actions to close campus and to terminate in-person classes were warranted by circumstances, they effectively breached or terminated the contract Northwestern had with each and every student and tuition provider, who paid for the opportunity to participate fully in the academic life on the Northwestern campus.

21.     Northwestern failed to adhere to its contractual commitment to a review-and-approval protocol for policy changes.

22.     Virtually all classes that continued in the Spring 2020 and Summer 2020 quarters were offered only in an online format with no in-person instruction. Even students with concentrations in areas where in-person instruction is especially crucial (such as music, theatre, and the sciences) had access exclusively to online education options.

23.     As a result of the closure of Northwestern's campuses, Northwestern has failed to deliver the educational services, facilities, access and/or opportunities for which Plaintiff and the putative class contracted and paid, either directly or through a third-party on their behalf.

24.     Northwestern subsequently decided that in the Fall of 2020, on-campus life would be drastically reduced with the vast majority of faculty and staff continuing to work remotely into the foreseeable future.

25.     On March 31, 2020, Northwestern announced that all undergraduate Spring 2020 Quarter classes will be graded on a Pass/Fail basis and denied undergraduate students the option of receiving a grade for their course work. Pass/Fail courses do not count toward a student's GPA.

26.     Northwestern attests that its contract with students and tuition providers remains in full effect and that it maintains reciprocity.

27.     Conversely, Northwestern has failed to uphold its side of the agreement, while insisting that students uphold their side of the agreement, thus refusing to refund tuition and related expenses, purportedly on its provision of online classes.

28.     In so doing, Northwestern is attempting to replace the irreplaceable – on-campus life at an elite university – with "virtual learning" via online classes and is attempting to beguile that this substitute educational experience is identical to or of the same quality as full participation in the university's academic life.

29.     Plaintiff and members of the Class paid Northwestern tuition in reliance on its promise of teaching a certain number of courses via an in-person format and with in-person facility access. Plaintiff did not choose to attend and/or pay tuition for an online institution of higher learning but instead chose to attend Northwestern's institution and enroll on an in-person basis.

**B.     Inferiority of Online Educational Experience**

30.     A multitude of studies conclude that, "[o]nline courses do less to promote

academic success than do in person courses." One study in particular found that:

    a)    Taking a course online reduced student achievement in that course by .44 points on the traditional four-point grading scale, a full one-third of a standard deviation;

    b)    Specifically, students taking the in-person course earned roughly a B- (2.8 GPA) versus a C (2.4 GPA) for students taking an online version of the same course;

    c)    Taking a course online also reduces future grades by 0.42 points for courses taken in the same subject area in the following semester;

    d)    Taking an online course reduced the probability of the student remaining enrolled in the university a year later by over ten percentage points.

Eric P. Bettinger *et al., Virtual Classrooms: How Online College Courses Affect Student Success*, AMERICAN ECONOMIC REVIEW, Vol. 107, No. 9, p. 2857.

    31.    The transition to exclusively online classes deprived students of the opportunity to benefit from a wide variety of academic and student events, on-campus entertainment, facilities, and athletic programs, which provided considerable value to Plaintiff and the Class members.

    32.    The online learning options Northwestern offered for the Spring 2020, Summer 2020, and Fall 2020 Quarters, though consistent with safety measures, cannot provide the academic and collegiate experience Northwestern itself extolls as its signatures.

**C.    Lower Tuition for Online Education**

    33.    In-person education is of higher value than online education.

    34.    Accordingly, the tuition and fees for in-person instruction at Northwestern are higher than tuition and fees for its own online classes and for other online institutions because

such costs cover not just the academic instruction, but encompass an entirely different experience which includes but is not limited to:

  a)    Face to face interaction with professors, mentors, and peers;

  b)    Access to facilities such as libraries, laboratories, computer labs, and study rooms;

  c)    Student governance and student unions;

  d)    Extra-curricular activities, groups, intramural sports, etc.;

  e)    Student art, cultures, and other activities;

  f)    Social development and independence;

  g)    Hands on learning and experimentation;

  h)    Networking and mentorship opportunities.

35.    The fact that Northwestern students paid a higher price for an in-person education than they would have paid for an online education is illustrated by the vast price difference in Northwestern's in-person, on-campus programs versus Northwestern's own online learning program.

36.    For example, upon information and belief, for a student taking a course unit at Northwestern's Medill School of Journalism, Media, Integrated Marketing Communications, Northwestern charged students approximately $6,121 for the in-person, on-campus class, while it charged $4,665 for the online class.



**D.      Damages**

37.      Through this lawsuit, Plaintiff seeks, for himself and Class members, Northwestern's disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Spring 2020 Quarter when classes moved online and campus services ceased being provided, accounting for the value of classes canceled, the diminished

value of online learning, the diminished value of forced pass/fail grading, as well as for each subsequent quarter, continuing until Northwestern resumes in-person classes. Plaintiff seeks return of these amounts on behalf of himself and the Class as defined below.

38.     Plaintiff also seeks damages relating to Northwestern's articulated subterfuge that an online "virtual" college experience is as similar in kind to full immersion in the academic life of a college campus.

## V.     CLASS ACTION ALLEGATIONS

39.     Plaintiff seeks to represent a class defined as:

> Any person who paid or caused to be paid tuition and/or fees to attend Northwestern University when classes and/or coursework were limited in whole or in part to online attendance as a result of or in connection with COVID-19.

Specifically excluded from the Class are Northwestern, Northwestern's officers, directors, trustees and agents, the judge assigned to this action, and any member of the judge's immediate family.

40.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

41.     **Numerosity.** The members of the Class are geographically dispersed and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiff reasonably estimates that there are thousands of members in the Class. Although the precise number of Class members is unknown to Plaintiff at this time, the true number of Class members is known by Northwestern and may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Northwestern and third-party retailers and vendors.

42.     **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

a)      whether Northwestern accepted money from Class members in exchange for the promise to provide services;

b)      whether Northwestern provided the services for which Class members contracted;

c)      whether Class members are entitled to a refund for that portion of the tuition and fees that was contracted for services that Northwestern did not provide;

d)      whether Northwestern is liable to Plaintiff and the Class for unjust enrichment.

43.     **Typicality.** Plaintiff's claims are typical of the claims of the other members of the Class in that, among other things, all Class members were similarly situated and were comparably injured through Northwestern's wrongful conduct as set forth herein. Further, there are no defenses available to Northwestern that are unique to Plaintiff.

44.     **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class. Furthermore, Plaintiff has no interests that are antagonistic to those of the Class.

45.     **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by

individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against Northwestern. It would, thus, be virtually impossible for the Class on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

46. In the alternative, the Class may also be certified because:

a) the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the Northwestern; and/or

b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c) Northwestern has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a

whole.

## COUNT I
### Breach of Contract

47.     Plaintiff restates, realleges, and incorporates by reference the allegations contained in all preceding paragraphs of this complain as if fully set forth herein.

48.     Plaintiff brings this claim individually and on behalf of the members of the Class against Northwestern.

49.     Through the admission agreement and payment of tuition and fees, Plaintiff and each member of the Class entered into a binding contract with Northwestern.

50.     As part of the contract, and in exchange for the aforementioned consideration, Northwestern promised to provide in-person education services, including in-person instruction and access to on-campus resources, for the full duration of the Spring 2020 Quarter, and continuing into the 2020-2021 academic year.

51.     Plaintiff and Class members fulfilled their end of the bargain when they paid monies due for tuition, fees, and related expenses.

52.     Northwestern has failed to provide the contracted-for services and has otherwise not performed under the contract as set forth above but has retained tuition monies paid by Plaintiff and the Class for the Spring 2020 and Summer 2020 Quarters, and refuses to issue a corresponding tuition adjustment for the following quarters.

53.     Plaintiff and members of the Class have suffered damage as a direct and proximate result of Northwestern's breach, including but not limited to deprivation of the education, experience, and services that they were promised and for which they have already paid.

54.     As a direct and proximate result of Northwestern's breach, Plaintiff and the Class are entitled to damages, to be decided by the trier of fact in this action, to include but not be

limited to reimbursement of certain tuition, fees, and other expenses that were collected by Northwestern for services that Northwestern has failed to deliver.

### COUNT II
**Unjust Enrichment**

55.     Plaintiff restates, realleges, and incorporates by reference the allegations contained in all preceding paragraphs of this complain as if fully set forth herein.

56.     Plaintiff brings this claim individually and on behalf of the members of the Class against Northwestern, and in the alternative to Count I.

57.     Plaintiff and members of the Class conferred a benefit on Northwestern in the form of monies paid for tuition, fees, and related expenses in exchange for certain service and promises. This tuition was intended to cover in-person educational services for the academic quarter.

58.     Northwestern voluntarily accepted and retained this benefit by accepting payment.

59.     Northwestern has retained this benefit, even though it ceased providing the full education, experience, and services for which the tuition and fees were collected.

60.     The online education services Northwestern substituted for the in-person education for which Plaintiff and class members paid has a substantially lesser value, but Northwestern has nonetheless retained full payment.

61.     It would be unjust and inequitable for Northwestern to retain benefits in excess of the services it provided, and Northwestern should be required to disgorge any tuition, fees and related expenses that exceed the value of online education.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Northwestern as follows:

A.     For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

B.     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

C.     For actual, compensatory, and punitive damages in amounts to be determined by the Court and/or jury;

D.     For prejudgment interest on all amounts awarded;

E.     For an order of restitution and all other forms of equitable monetary relief;

F.     For injunctive relief as pleaded or as the Court may deem proper;

G.     For an order awarding Plaintiff and the Class reasonable attorneys' fees and expenses and costs of suit; and

H.     All other relief to which Plaintiff and members of the Class may be entitled by law or in equity.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: August 14, 2020                    Respectfully submitted,

NATHANIEL POLLEY, *on behalf of himself and all others similarly situated.*

By:     */s/Yvette Golan*
        Yvette Golan
        **THE GOLAN FIRM**
        2000 M Street, NW, Suite #750-A
        Washington, D.C. 20036

T: (866) 298-4150 ext. 101
F: (928) 441-8250
ygolan@tgfirm.com

James A. Francis*
John Soumilas*
David A. Searles*
Edward H. Skipton*
**FRANCIS MAILMAN SOUMILAS, P.C.**
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: (215) 735-8600
F: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
dsearles@consumerlawfirm.com
eskipton@consumerlawfirm.com

*_Pro hac vice_ forthcoming

_Attorneys for Plaintiff_