**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| NATHANIEL POLLEY, NANCY QUIROZ, SURYA VEERAVALLI, and DANIEL GREENWALD, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>    v.<br><br>NORTHWESTERN UNIVERSITY,<br><br>            Defendant. | Civil Action No. 1:20-cv-04798 (HDL)<br><br>**CONSOLIDATED**<br>**CLASS ACTION COMPLAINT** |

Plaintiffs Nathaniel Polley, Nancy Quiroz, Surya Veeravalli, and Daniel Greenwald ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant Northwestern University ("Northwestern" or "Defendant"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      Northwestern is one of the most prestigious private universities in the country, providing higher education in the arts, sciences, business, law, communications, education and social policy, engineering, journalism, management, music, medicine, and other disciplines. Plaintiffs are all students that have attended Northwestern during the Spring 2020 quarter or are attending Northwestern during the Fall 2020 quarter and beyond.

2.      On March 11, 2020, Northwestern announced that it was canceling in-person classes due to the pandemic of the Coronavirus Disease 2019 ("COVID-19").

3.      Plaintiffs do not dispute that Northwestern's decision to cease in-person instruction was warranted as a matter of compliance with the health and safety protocols in place by various state and local governments. Rather, Plaintiffs challenge Northwestern's unliteral decision to retain the full amount of tuition and the full amount of fees when it was unable to provide the educational services and experiences for which Plaintiffs and Class Members (as defined herein) contracted – and ask to be refunded the money they paid for services that were not provided.

4.      Though all individuals and institutions feel the impact of COVID-19, Northwestern has not apportioned the burden in an equitable manner or consistent with its educational obligations.

5.      Plaintiffs and Class Members paid tuition, fees, and related payments for in-person education and facility access at Northwestern for the full academic quarter.

6.      Northwestern provided only online classes for the vast majority of its classes and limited education services since March 11, 2020.

7.      After Northwestern converted to online only education in or around March 11, 2020, Plaintiffs and Class Members did not receive any in-person classes, any in-person educational services, any access to campus facilities and resources, and any on-campus opportunities.

8.      Nonetheless, Northwestern has retained and demanded tuition and fee payments as if it were still offering a full in-person and on-campus educational experiences.

9.    Northwestern itself typically charges far less for online education than in-person education.

10.    Online classes cannot replicate the full academic opportunities of in-person instruction. Online learning cannot recreate, for example, the access to facilities, materials, and faculty, or the opportunity for collaborative learning and in-person dialogue, feedback, and critique. Such remote learning options simply cannot replace the experiential richness of academic life on a college campus and thus do not have the same value as the in-person education for which Plaintiffs and Class Members paid.

11.    Plaintiffs and Class Members paid Northwestern for access to buildings and facilities that they were not permitted to enter, equipment and technology that they could not use, internships in which they could not participate, and much more.  Northwestern is thus asking Plaintiffs and Class Members to bear the financial brunt of the pandemic.

12.    Northwestern is not entitled, by either contractual or equitable principles, to pass the entire cost of COVID-19-related closures to Plaintiffs and Class Members. Rather, Plaintiffs and Class Members are entitled to a partial refund of tuition and fees for in-person and on-campus educational services, facilities, access and/or opportunities that they paid for and that Northwestern has failed to provide.

## PARTIES

13.    Plaintiff Nathaniel Polley is a citizen and resident of the State of Illinois. Plaintiff Polley has attended Northwestern since the Fall 2018 Quarter. Plaintiff Polley paid, either directly or through a third-party paying on his behalf, approximately $13,528 in tuition to Northwestern for the 2020 Spring Quarter. In June 2020, Plaintiff Polley graduated from Northwestern's McCormick School of Engineering with a Master of Science in Biotechnology.

14. Plaintiff Nancy Quiroz is a citizen and resident of the State of Illinois. Plaintiff Quiroz is a graduate student at Northwestern's Marriage and Family Therapy program at the Family Institute. For the Fall 2020 Quarter, Northwestern charged Plaintiff Quiroz approximately $19,343 in tuition.

15. Plaintiff Surya Veeravalli, a resident of Illinois, was an undergraduate student enrolled at Northwestern during the Winter 2020 and Spring 2020 Quarters and is enrolled for classes in the Fall 2020 with an expected graduation date of June 2021. For the Winter 2020 and Spring 2020, Northwestern charged Plaintiff Veeravalli approximately $18,744.00 in tuition and fees per quarter. For the Fall 2020 Quarter, Northwestern charged Plaintiff Veeravalli similar rates for tuition and fees.

16. Plaintiff Daniel Greenwald, a resident and citizen of Maryland, attended the Evanston campus of Northwestern during 2019-2020. Plaintiff Greenwald enrolled in an MA program in Sound Arts and Industries during 2019-2020 and agreed to pay tuition in the amount of $65,536.

17. Defendant Northwestern University is a private research university comprised of twelve constituent schools. Northwestern had a total enrollment of over 8,000 undergraduate students and over 13,000 graduate students for the 2019-2020 academic year. As of 2019, Northwestern reportedly had an endowment of $11.1 billion.

18. Northwestern was eligible to receive federal stimulus funding under the CARES Act, which provided $14 billion for colleges and universities based on enrollment numbers to mitigate the financial impact of COVID-19 on both institutions and students. On or about April 28, 2020, Northwestern announced it would not apply for CARES Act funding.

4

## JURISDICTION AND VENUE

19.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

20.     This Court has personal jurisdiction over Defendant because Defendant is headquartered in this district, because many of the acts and transactions giving rise to this action occurred in this district, and because Defendant conducts substantial business in this district.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant is headquartered in this district.

## FACTUAL ALLEGATIONS

### Northwestern University

22.     On its website, Northwestern markets its on-campus and in-person experiences and opportunities as a benefit to students.

23.     Northwestern uses its website, promotional materials, circulars, admission papers, and publications to tout the benefit of being on campus and the education students will receive in its facilities.

24.     Northwestern holds itself out through its website, educational and promotional literature, and through in-person activities such as campus tours, as being as an elite residential research university. Northwestern advertises itself as a "comprehensive research university that is deeply interdisciplinary across multiple schools and units. Our rigorous yet empathetic academic environment provides a robust mixture of theory and practice, with an emphasis on top-tier

research, new knowledge, creative expression, and practical application. If you are at Northwestern, you are part of an innovative, collaborative, and multidimensional community delivering an impact that is rare in higher education."[1]

25.     Northwestern is comprised of two primary campuses, a main campus in Evanston, Illinois, and another campus in downtown Chicago, Illinois. Northwestern also operates a campus in Qatar offering undergraduate degrees in communication and journalism.

26.     Northwestern advertises the Evanston campus as located in a "quintessential college town," where students will find "beaches, shops, coffee houses, restaurants, and theaters just down the street from classrooms, labs and lecture halls."[2]

27.     Northwestern boasts of "240 acres of natural beauty, including several hundred varieties of trees, grasses and flowers" on its Evanston campus.[3]

28.     Through a "Campus Life" link on its webpage, Northwestern advertises "Favorite Spots" as "some of the best loved places on campus," including:

- Lakeside Fields

- Norris University Center

- Alice Millar Chapel

- Deering Meadow

- Shakespeare Garden

- Dearborn Observatory

- Deering Library, Sheridan Road

- Henry Crown Sports Pavilion

---

[1] https://www.northwestern.edu/about/facts.html (last viewed December 22, 2020).
[2] https://www.northwestern.edu/campus-life/campus-highlights.html (last viewed December 22, 2020).
[3] *Id.*

- First Fridays at Harris Hall

- Patrick G. and Shirley W. Ryan Center for the Musical Arts,

- Block Museum

- Annenberg Hall[4]

29.     Through the same "Campus Life" portal, prospective students and their parents can view calendars for the academic year, as well as varsity athletics, alumni events, and exhibits and performances all taking place at Northwestern.[5]

30.     Northwestern advertises the Chicago campus as located in a "global city . . . in the bustling Streeterville neighborhood . . . close to the attractions such as the Magnificent Mile, the Museum of Contemporary Art and the John Hancock Center."[6]

31.     In recruiting new and prospective students, Northwestern offers an "online guided tour for an interactive 360-view of the Northwestern campus at your own convenience. In addition to the academic buildings, you can see residential buildings, dining halls, athletic facilities and more."[7]

32.     Northwestern itself touts the value of its campus life and services throughout its promotional literature advertising the school.

33.     For instance, in Plaintiff Greenwald's MA program in Sound Arts and Industries, Northwestern emphasized in a publication titled "Director's Welcome – Sound Arts and Industries" that:

- Persons enrolling in this program "have hands-on experience with the latest audio production technologies . . . ."

---

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] https://admissions.northwestern.edu/visit/experience/virtual-tour.html (last viewed December 22, 2020).

- "Students take advantage of Northwestern's state-of-the-art sound facilities, which include a newly renovated sound production lab, multiple sound editing stations, cutting-edge audiology facilities, and one of the best student radio stations in the country. Our students take advantage of a vibrant artistic and academic culture that is sustained through yearly conferences on emerging topics related to sound, as well as regular visits from world-famous professionals in sound science, sound studies, sound art, aural health and a range of sound industries."

- "The creative environment at Northwestern gives our sound professionals the opportunity to develop as innovators and collaborators. The MA in Sound Arts and Industries is part of a suite of professional programs at Northwestern, and our students interact and collaborate with writers, filmmakers, artists, and performers in the MFA in Documentary Media, the MFA in Writing for Screen and Stage and the MS in Creative Enterprises."

- "Our students take their unique set of knowledge and skills out into the world through the program's robust internship program. Our staff work closely with students throughout the year and draw upon a cohort of alumni and industry advisors that include executives at major Hollywood film studios and Academy Award-winning sound designers, as well as academics, researchers and entrepreneurs."

34.     Another document Plaintiff Greenwald received, "Facilities – Sound Arts and Industries," stated that "Adjacent to WNUR-FM, this newly renovated 1,700 square foot sound studio and performance space can accommodate anything from a radio monologue to an 18-piece orchestra. SAI students use this space for classes and recording projects."

### Contract Terms

35.     Plaintiffs and Class Members entered into express or implied contracts with Northwestern whereby, in exchange for the payment of tuition, fees and other related costs, Northwestern would provide an agreed-upon number of classes through in-person instruction (as it had historically provided) and access to physical resources and school facilities such as libraries, laboratories, and classrooms.[8]

---

[8] Tuition rates and fees for undergraduate and graduate programs, for the 2019-2020 academic

36.     Northwestern's promise to provide in-person and on-campus educational services can be found in material materials, application materials, admission matters, registration materials, and other documents that detail and reference the services that Northwestern agreed to provide and make available in exchange for the payment of tuition and fees.

37.     For example, and for each class taken, Northwestern promised to provide the education specified in the course catalog and course syllabus, including the time and physical location of the in-person instruction. An example of such a promise is below:[9]

---

year and beyond, can be found on Northwestern's website. *See, e.g.,* Northwestern Student Finance, Undergraduate Tuition, *available at* https://www.northwestern.edu/sfs/tuition/undergraduate/index.html (last viewed December 22, 2020); Northwestern Student Finance, Graduate Tuition, *available at* https://www.northwestern.edu/sfs/tuition/graduate/index.html (last viewed December 22, 2020).
[9] CAESAR, Northwestern University Course Search, *available at* https://caesar.northwestern.edu (last viewed December 22, 2020). The example is provided at https://www.northwestern.edu/class-descriptions/4780/WCAS/ASTRON/220-0/36469.html (last viewed December 22, 2020).

## Northwestern

HOME » SPRING 2020 » WCAS » ASTRON » 220-0 » 1

# Class Descriptions

## Introduction to Astrophysics

### Instructors

Giles A Novak - 847/491-8645 - Technological Institute (2145 Sheridan Road), Room F253, Evanston

### Meeting Info

Technological Institute L361 - MoWeFr 2:00PM - 2:50PM

### Overview of class

This introductory course is designed for undergraduate science and engineering students who are interested in quantitatively exploring the observed universe in terms of the underlying physical processes. The syllabus has been revamped for Spring 2020: While the course will still touch on all developments in astrophysics, it will focus primarily on star/planet systems including our own Solar System. We will review the 21st century experiments that have led to the recent discovery of thousands of planets in our Galaxy orbiting stars other than our Sun - a.k.a. "exoplanets". We will also discuss the formation and evolution of star/planet systems, as well as the final collapse to form a white dwarf star, neutron star, or black hole.

### Registration Requirements

Physics 135-1,2,3 or the equivalent

### Teaching Method

Three 50-minute lectures per week

### Evaluation Method

Weighted average of problem set, in-class exam, and final exam scores

### Class Materials (Required)

Foundations of Astrophysics By Ryden (NU Undergrad Alumna) and Peterson
ISBN: 978-0-321-59558-4

Previous editions: Not applicable
Online: No
Price: $90-$200
Other purchases: None

### Class Attributes

Natural Sciences Distro Area

Current as of 4/5/20 7:04 PM (CT)

Office of the Registrar • 633 Clark Street • Evanston, Illinois 60208-1118

Phone: 847-491-5234 • Fax: 847-491-8458 • E-mail: nu-registrar@northwestern.edu

CAESAR • Academic Calendar

© 2020 Northwestern University

38.     Northwestern's print version of its Course Catalogs similarly identifies the times and location of its courses, promising them to be in-person courses. An example from Northwestern's Spring 2020 Course Catalog is provided below:[10]

**HISTORY**

| 200-0 | **New Introductory Courses in History** | | | | | |
|---|---|---|---|---|---|---|
| 32443 | 20 | TTh | 03:30PM | 04:50PM | LCY111 | Hanretta |
| 32447 | 22 | MW | 03:30PM | 04:50PM | HRSL06 | Freedman |
| 32448 | 24 | MW | 02:00PM | 03:20PM | FSK217 | Sowerby |
| 32458 | 26 | MW | 11:00AM | 12:20PM | LCY110 | Ramirez |
| 37974 | 28 | TTh | 12:30PM | 01:50PM | KRG3410 | Hilel |
| 201-2 | **Europe in the Modern World** | | | | | |
| 32253 | 20 | MW | 11:00AM | 12:20PM | HRSL07 | Frommer |
| 210-2 | **History of the United States, Reconstruction to the Present** | | | | | |
| 32260 | 20 | MW | 12:30PM | 01:50PM | ANNG15 | Woodhouse |
| 260-2 | **History of Latin America in the Modern Period, 1789-present** | | | | | |
| 32459 | 20 | TTh | 11:00AM | 12:20PM | UNV101 | Gillingham |
| 275-2 | **History of Modern Science and Medicine** | | | | | |
| 32267 | 20 | MWF | 10:00AM | 10:50AM | UNV121 | Carson |
| 300-0 | **New Lectures in History** | | | | | |
| 32463 | 20 | MW | 03:30PM | 04:50PM | UNV121 | Harris |
| 32467 | 22 | TTh | 09:30AM | 10:50AM | UNV122 | Koul |
| 32468 | 24 | MWF | 02:00PM | 02:50PM | LCY301 | Lauziere |
| 32472 | 26 | MW | 12:30PM | 01:50PM | HRSL07 | Britto |
| 32476 | 28 | MW | 02:00PM | 03:20PM | UNV101 | Bates |
| 32480 | 30 | TTh | 03:30PM | 04:50PM | HRSL06 | Kiel |
| 32481 | 32 | MW | 09:30AM | 10:50AM | HRSL28 | Ionescu |
| 37411 | 36 | MW | 02:00PM | 03:20PM | UNV118 | Biondi |
| 37959 | 38 | TTh | 09:30AM | 10:50AM | HRSL07 | Boyle |

---

[10] Northwestern Undergraduate Spring 2020 Course Catalog, *available at* https://www.registrar.northwestern.edu/documents/registration/class-schedule-pdf/spring-2020-class-schedule.pdf (last viewed December 22, 2020); *see also* Northwestern Graduate School Catalog Spring 2020 Course Catalog, *available at* https://northwestern-preview.courseleaf.com/archives/2019-2020/pdf/2019-2020-tgs.pdf  (last viewed December 22, 2020); Northwestern Law School Course Catalog, *available at* https://northwestern-preview.courseleaf.com/archives/2019-2020/pdf/2019-2020-law.pdf (last viewed December 22, 2020).

39.     When Plaintiffs and Class Members applied for admission to one of Northwestern's programs, they had the expectation that they would have use of these campuses and educational facilities and services.

40.     Plaintiffs and Class Members also have the expectation, assuming they maintain academic eligibility and comply with relevant codes of conduct, of continuing their studies through the attainment of a degree.

41.     Northwestern offers admission to well-qualified students, like Plaintiffs and Class Members. The acceptance of such an offer of admission must come with a deposit and a promise to pay the requisite tuition and fees, and it forms a contract.

42.     As was required, Plaintiffs and Class Members paid their deposit and/or requested tuition and fees, and they entered into express or implied contracts with Northwestern that provided that Plaintiffs and Class Members would pay tuition and fees and Northwestern would provide in-person and on-campus instruction as it had historically provided and access to its physical resources such as libraries and laboratories and other campus facilities.

43.     The admissions offer letter Northwestern provides to incoming students promises live, in-person education at one of Northwestern's actual campuses, not an "online" education at a "virtual" campus.

44.     Plaintiffs and Class Members accepted the offer for on-campus, in-person educational by providing monies to Northwestern in the form of a deposit initially, and tuition and fee payments subsequently, from quarter to quarter.

45.     Thus Plaintiffs, Class Members, or others paying tuition and fees to Northwestern in 2020, as in previous years, had an expectation that the students would have the ability to live

on-campus and take advantage of all of Defendant's offers in exchange for the requested tuition and fees.

46.     Defendant not only failed to provide the on-campus and in-person educational services it promised, but also failed to comply with its own internal processes to help ensure that Plaintiffs and Class Members received their paid-for and bargained-for consideration.

47.     For example, Northwestern requires that changes to course formats be approved in advance, and that changes to school policies must have 45-day notice and comment period.

48.     Northwestern did not follow its own procedures before converting the course formats.

49.     Northwestern's Faculty Handbook states: "faculty members are expected to be in residence and available to students and colleagues throughout the period of their appointment — in the case of faculty on nine-month appointments, from the arrival of students in the fall through Commencement."[11]

50.     Northwestern did not follow its own procedures before altering the availability of its faculty members.

51.     In Northwestern's Policy on Awarding Credit, Northwestern defines a credit hour (or course unit) as "One hour of classroom or direct faculty instruction and a minimum of two hours of out of class student work each week for approximately fifteen weeks for one semester or trimester hour of credit, or ten to twelve weeks for one quarter hour of credit, or the equivalent

---

[11] Northwestern University Faculty Handbook at 23 (effective October 19, 2018 - August 13, 2020), *available at* https://www.northwestern.edu/provost/docs/faculty_handbook_2018.pdf (last viewed December 22, 2020); Northwestern University Faculty Handbook at 23 (effective August 14, 2020), *available at* https://www.northwestern.edu/provost/docs/faculty_handbook_2020.pdf (last viewed December 22, 2020).

amount of work over a different amount of time," or "[a]t least an equivalent amount of work . . . for other academic activities as established by the institution including laboratory work, internships, practica, studio work, and other academic work leading to the award of credit hours."[12]

52.     "Quarter-long classes typically meet three hours per week on average (three 50-minute sessions per week or two 80-minute sessions) over a 10-week term."[13]

53.     "The University's standard meeting times illustrate meeting patterns that meet the requirement for direct faculty instruction each week."[14]

54.     Northwestern did not comply with its own standards for allotted classroom time.

55.     Northwestern's Policy on Awarding Credit recognizes that online instruction cannot simply replace in-person instruction. While typical, in-person classes require one hour of classroom or direct faculty instruction plus two hours of "out of class student work," each week, Northwestern's Policy states that, for "[o]nline and blended classes . . . the University awards one unit of credit when at least *nine* full hours of work per week are expected of the student, irrespective of department, delivery format, or degree level."[15]

56.     During the 2019-2020 academic year, Northwestern charged its undergraduate students a tuition of $18,744 per quarter if enrolled between 3 to 5.5 course units, amounting to an estimated average cost of $4,828 per course unit. Students enrolled in fewer than 3 course units were charged $6,668 in tuition for each course unit, and students enrolled in greater than 5.5 course unites were charged $6,668 for each additional course unit.

---

[12] Northwestern Policy on Awarding Credit, *available at*
https://www.northwestern.edu/provost/policies/awarding-credit.html (last viewed December 22, 2020).
[13] *Id.*
[14] *Id.*
[15] *Id.* (emphasis added).

57.     During the 2019-2020 academic year, Northwestern similarly charged its graduate students tuition by the quarter, term, and/or by course unit. For instance, Northwestern charged graduate students obtaining a Master of Science in Biotechnology from the McCormick School of Engineering $16,528 for the Spring 2020 Quarter ($4,652 per course unit).

**Closure of Northwestern's Campuses and Cancellation of In-Person Classes**

58.     On March 11, 2020, Northwestern, through an email to its students, faculty, and staff, announced that because of COVID-19 it had cancelled all classes from March 31, 2020 until April 3, 2020, effectively closes its campus facilities, and moved all (or substantially all) classes online.

59.     This announcement effectively signaled the breach or termination the contract Northwestern had with Plaintiffs and Class Members, who paid for the opportunity to participate in the academic services to be provided by Northwestern on-campus and in-person.

60.     The closure of Northwestern's campuses has been extended through the end of the Spring 2020 Quarter and through the Summer 2020 and Fall 2020 Quarters, and possibly beyond.

61.     Classes that have continued since late March 2020 have been offered in an online-only format, with no in-person instruction. Even classes for Class Members with concentrations in areas where in-person instruction is crucial (such as music, theatre, and the sciences), students have had access only to online education services – if such alternatives were even available.

62.     On June 16, 2020, Northwestern announced that a "significant portion" of its Fall 2020 Quarter classes would be online and on-campus life would be drastically reduced.[16]

---

[16] June 16, 2020 Northwestern University, Student Fall 2020 Academic Update, *available at* https://www.northwestern.edu/coronavirus-covid-19-updates/developments/student-fall-2020-academic-update.html (last viewed December 22, 2020).

63.     However, Northwestern did not identify for Class Members which classes would be online until the period for course registration.[17]

64.     Northwestern did not give Class Members the time necessary to make alternative arrangements (such as applying to another program) for the Fall 2020 Quarter.

65.     Northwestern promised that some courses in the Fall 2020 Quarter would be provided in a face-to-face format. It remains to be seen whether these courses are delivered as promised.

66.     Plaintiffs and Class Members have done all they can to mitigate their damages, and have made appropriate arrangements based on Northwestern's representations, including those on its website concerning dinning, housing, and other traditional campus experiences.

67.     Plaintiffs and Class Members did not and do not have the option of transferring or pausing their education to wait for the resumption of in-person classes, whether based on Northwestern's matriculation requirements, financial burden, or other academic or personal necessity, and were, therefore, compelled to pay full tuition for inferior education in the Spring, Summer, Fall, and any subsequent quarters if they wished to avoid the prejudice associated with an interrupted or terminated education.

68.     Northwestern refused to refund tuition and related expenses properly and proportionally.

69.     As a result of Northwestern's closure of its campuses, Northwestern has failed to deliver the educational services, facilities, access and/or opportunities that Plaintiffs and the Class Members paid for, either directly or through a third-party on their behalf.

---

[17] *Id.*

70.     Plaintiffs and Class Members did not choose and pay to attend an online college, but instead chose to attend Northwestern's elite institution and enroll on an in-person basis and have access to the facilities and educational opportunities available on Northwestern's campuses.

71.     The online learning options Northwestern actually given, though consistent with safety measures, thus simply cannot provide the academic experiences Northwestern itself touts as its signatures.

## Lower Tuition for Online Education

72.     Online education is not equivalent to in-person education and on-campus services, as is reflected in the significantly different price points Northwestern charges for online versus in-person classes.

73.     The tuition and fees for in-person instruction at Northwestern are higher than tuition and fees for its own online classes and for other online institutions because such costs cover not just the academic instruction, but encompass an entirely different experience that includes but is not limited to:

- Face to face interaction with professors, mentors, and peers;

- Access to facilities such as libraries, laboratories, computer labs, and study rooms;

- Student governance and student unions;

- Extra-curricular activities, groups, intramural sports;

- Student art, cultures, and other activities;

- Social development and independence;

- Hands on learning and experimentation; and

- Networking and mentorship opportunities.

74.    For example, for a student taking a course unit at Northwestern's Medill School of Journalism, Media, Integrated Marketing Communications, Northwestern charged students approximately $6,121 for the in-person, on-campus class, while it charged $4,665 for the online class.[18]

---

[18] Northwestern University, Student Finance, Medill School of Journalism, Media, Integrated Marketing Communications, 2019-2020 tuition, *available at* https://www.northwestern.edu/sfs/tuition/graduate/medill-school-of-journalism.html#tab-panel2-2 (last viewed December 22, 2020).



75.     The online learning options being offered to Plaintiffs and Class Members are materially different compared to the educational experience previously afforded to them. During the online portion of the Spring and Summer 2020 quarters, Northwestern used programs by which previously recorded lectures were posted online for students to view on their own or by virtual

Zoom meetings. Therefore, there was a lack of classroom interaction among teachers and students, and among students that is instrumental in educational development and instruction.

76.     The online formats being used by Northwestern do not require the development of strong study skills given the absence of any possibility of being called on in class and the ability to consult books and other materials when taking exams. Further, the ability to receive a Pass-Fail grade rather than a letter grade provides educational leniency that the students would not otherwise have with the in-person letter grading education that was paid for and expected.

77.     Plaintiffs and Class Members have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.

78.     Plaintiffs and Class Members were denied access to facilities such as libraries, laboratories, computer labs, recitations, and study rooms, that are considered integral to a college education.

79.     Plaintiffs and Class Members were denied access to activities offered on campus including those that fosters intellectual and academic development and independence, and networking for future careers.

80.     Northwestern priced the tuition, fees, and related expenses based on the in-person educational services, opportunities and experiences it was providing on campus.

81.     Northwestern has not made any refund of any portion of the tuition Plaintiffs and Class Members paid for the quarters affected by COVID-19.

82.     Northwestern has not refunded any portion of the fees it collected from Plaintiffs and Class Members for the affected quarters even though it closed or ceased operating the services and facilities for which the Mandatory Fees were intended to pay.

83.     Plaintiffs and Class Members are therefore entitled to a pro-rated refund of the tuition and Mandatory Fee they paid for the Spring 2020 quarter for the remaining days of that quarter after classes moved from in-person to online and facilities were closed, and for the future quarters where in-person classes are cancelled and moved online.

**Damages**

84.     Through this lawsuit, Plaintiffs seek, for themselves and the Class Members, Northwestern's reimbursement, return, and disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Spring Quarter 2020 when classes moved online and campus services ceased being provided, accounting for the diminished value of online learning. Plaintiffs seek return of these amounts on behalf of themselves and the Class as defined below.

85.     Plaintiffs further seek, for themselves and Class Members, Northwestern's reimbursement, return, and disgorgement of the tuition and fees paid for subsequent quarters, over and above the value of online learning.

86.     Plaintiffs also seek damages relating to Northwestern's passing off an online, "virtual" college experience as similar in kind to full immersion in the academic life of a college campus.

<u>**CLASS ALLEGATIONS**</u>

87.     This action is brought, and may properly be maintained as, a class action pursuant to FED R. CIV. P. 23(b)(3) on behalf of the following Class:

> Any person who paid or caused to be paid tuition and/or fees for attendance at Northwestern University programs when classes and/or coursework were limited in whole or in part to online attendance as a result of or in connection with COVID-19.

88.     Members of the Class are collectively referred to herein as "Class Members."

89.     Specifically excluded from the Class are Northwestern, Northwestern's officers, directors, trustees and agents, the judge assigned to this action, and any member of the judge's immediate family.

90.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

91.     **Numerosity.** The members of the Class are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiffs reasonably estimate that there are thousands of Class Members. Although the precise number of Class Members is unknown to Plaintiffs at this time, the true number of Class Members is known by Northwestern and may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Northwestern and third-party retailers and vendors.

92.     **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all Class Members and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to, the following:

(a)     whether Northwestern accepted money from Class Members in exchange for the promise to provide in-person, on-campus educational services;

(b)     whether Northwestern has provided the services for which Class Members contracted;

(c)     whether Class Members are entitled to a refund for that portion of the tuition and fees that was contracted for services that Northwestern did not provide; and

(d)     whether Northwestern is liable to Plaintiffs and the Class Members for unjust enrichment.

93.     **Typicality.** Plaintiffs' claims are typical of the claims of the other members of the Class in that, among other things, all Class Members were similarly situated and were comparably injured through Northwestern's wrongful conduct as set forth herein. Further, there are no defenses available to Northwestern that are unique to Plaintiffs.

94.     **Adequacy of Representation.** Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Class. Furthermore, Plaintiffs have no interests that are antagonistic to those of the Class.

95.     **Superiority.**   A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense of individual litigation of their claims against Northwestern. It would, thus, be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if Class Members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

96.     In the alternative, the Class may also be certified because:

(a)     the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the Northwestern;

(b)    the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)    Northwestern has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class.

## COUNT I
### Breach Of Contract
### (On behalf of Plaintiffs and the Class)

97.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

98.    Plaintiffs bring this claim individually and on behalf of the Class against Northwestern.

99.    Through its school policies, course catalog, course schedule, representations, admission agreement, acceptance letters, registration materials, and payment of tuition and fees, Plaintiffs and each Class Member entered a binding contract with Northwestern.

100.    As part of the contract, and in exchange for the aforementioned consideration, Northwestern promised to provide in-person, on-campus education services, including in-person instruction and access to on campus resources, for the full duration of applicable term, including the Spring 2020 term.

101.    Northwestern has held that its in-person educational opportunities, experiences, and services are of substantial value.

102.    Northwestern has agreed to provide in-person educational opportunities, experiences, and services to Plaintiffs and Class Members.

103.    Northwestern has promoted its in-person educational services as being valuable to the educational experiences and development of Plaintiffs and Class Members.

104.     Plaintiffs and Class Members fulfilled their end of the bargain when they paid monies due for tuition, fees, and related expenses.

105.     Northwestern has failed to provide the contracted-for services and has otherwise not performed under the contract as set forth above.

106.     Northwestern has retained monies paid by Plaintiffs and Class Members and refuses to issue tuition adjustments or any other type of refund or reimbursement for services Plaintiffs and Class Members never received.

107.     Plaintiffs and Class Members have suffered damage as a direct and proximate result of Northwestern's breach, including but not limited to deprivation of the education, experience, and services that they were promised and for which they have already paid.

108.     As a direct and proximate result of Northwestern's breach, Plaintiffs and the Class Members are entitled to damages, to be decided by the trier of fact in this action, to include but not be limited to reimbursement of certain tuition, fees, and other expenses that were collected by Northwestern for services that Northwestern has failed to deliver.

## COUNT II
### Unjust Enrichment
### (On behalf of Plaintiffs and the Class and in the Alternative to Count I)

109.     Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1-96 of this complaint.

110.     Plaintiffs bring this claim individually and on behalf of the Class against Northwestern, in the alternative to Count I.

111.     Plaintiffs and Class Members conferred a benefit on Northwestern in the form of monies paid for tuition, fees, and related expenses in exchange for in-person educational services and in-person facility access, and an in-person, on-campus educational experience. Tuition and

fees were intended to cover in-person educational services, not a virtual campus and online courses.

112.     Plaintiffs and the Class Members did not pay for course credits. Plaintiffs and the Class Members paid for the services Northwestern promised, which services they did not receive.

113.     Northwestern voluntarily accepted and retained this benefit by accepting payment from Plaintiffs and the Class.

114.     Northwestern unfairly and inequitably retained the tuition and fees paid by Plaintiffs and the Class, even though it ceased providing the full education, experience, and services for which the tuition and fees were collected.

115.     The online education services Northwestern substituted for the in-person education and on-campus services for which Plaintiffs and Class Members paid has a substantially lesser value, but Northwestern has nonetheless retained full payment from Plaintiffs and the Class.

116.     It would be unjust and inequitable for Northwestern to retain benefits in excess of the services it provided, and Northwestern should be required to disgorge any tuition and fees that exceed the value of online education for the days of instruction where Northwestern failed to provide in-person, on-campus academic experience.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Northwestern, as follows:

(a)     For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class;

(b)     For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

(c)     For actual, compensatory, and all other available damages in amounts to be determined by the Court and/or jury;

(d)    For prejudgment interest on all amounts awarded;

(e)    For an order of restitution and all other forms of equitable monetary relief, including disgorgement;

(f)    For injunctive relief as pleaded or as the Court may deem proper;

(g)    For an order awarding Plaintiffs and the Class reasonable attorneys' fees and expenses and costs of suit; and

(h)    All other relief to which Plaintiffs and members of the Class may be entitled by law or in equity.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated: December 22, 2020

Respectfully submitted,

*/s/ Kathleen P. Lally*
Katrina Carroll
Kathleen P. Lally
**CARLSON LYNCH LLP**
111 West Washington Street
Suite 1240
Chicago, IL 60602
P (312) 750-1265
kcarroll@carlsonlynch.com
klally@carlsonlynch.com

Edward W. Ciolko
**CARLSON LYNCH LLP**
1133 Penn Avenue 5th Floor
Pittsburgh, PA 15222
P (412) 322-9243
F. (412) 231-0246
eciolko@carlsonlynch.com

Daniel A. Edelman
Cathleen M. Combs
Kasun Wijegunawardana
EDELMAN, COMBS, LATTURNER &
GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, IL 60603
Tel: 312-626-3585
Email: dedelman@edcombs.com
Email: ccombs@edcombs.com
Email: kwije@edcombs.ccom

James A. Francis
John Soumilas
David A. Searles
Edward H. Skipton
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Tel: 215-735-8600
Fax: 215-940-8000
Email: jfrancis@consumerlawfirm.com
Email: jsoumilas@consumerlawfirm.com
Email: dsearles@consumerlawfirm.com
Email: eskipton@consumerlawfirm.com

Yvette Golan
THE GOLAN LAW FIRM
2000 M Street, N.W., Suite #750-A
Washington, DC 20036
Tel: 866-298-4150, ext. 101
Fax: 928-441-8250
Email: ygolan@tgfirm.com

Jeffrey K. Brown, Esq. *(To Apply Pro Hac Vice)*
Michael Tompkins, Esq. *(Pending Pro Hac Vice)*
**LEEDS BROWN LAW, P.C.**
One Old Country Road, Suite 347
Carle Place, NY 11514
(516) 873-9550
jbrown@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com