**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| NATHANIEL POLLEY, NANCY QUIROZ, SURYA VEERAVALLI, and DANIEL GREENWALD, on behalf of themselves and all others similarly situated,<br><br>             Plaintiffs,<br><br>    v.<br><br>NORTHWESTERN UNIVERSITY,<br><br>             Defendant. | Civil Action No. 1:20-cv-04798<br>Honorable Judge Harry D. Leinenweber |

**DEFENDANT NORTHWESTERN UNIVERSITY'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

**TABLE OF CONTENTS**

Page

BACKGROUND ...........................................................................................................................1

ARGUMENT ..............................................................................................................................4

I.      Plaintiffs Fail to State a Claim for Breach of Contract (First Claim for Relief). ..................5

        A.      Plaintiffs Do Not—and Cannot—Identify a Specific, Identifiable Promise
                by Northwestern to Provide In-Person Instruction. ................................................6

        B.      Plaintiffs Accepted Remote Instruction as Part of Their Contract with
                Northwestern for the Spring 2020 Quarter and Subsequent Terms. ......................11

II.     Plaintiffs' Claims are Non-Cognizable Educational Malpractice Claims (All
        Claims). ................................................................................................................................13

III.    Plaintiffs Fail to State a Claim for Unjust Enrichment (Second Claim for Relief). ..............14

CONCLUSION ..........................................................................................................................15

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aase v. State, S. Dakota Bd. of Regents,*
400 N.W.2d 269 (S.D. 1987) ................................................................................................11

*Abrams v. Ill. Coll. of Podiatric Med.,*
395 N.E.2d 1061 (Ill. App. Ct. 1979) .....................................................................................6

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)................................................................................................................4

*Basso v. N.Y. Univ.,*
No. 16-7295, 2020 WL 7027589 (S.D.N.Y. Nov. 30, 2020)................................................14

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)................................................................................................................4

*Bissessur v. Ind. Univ. Bd. of Trs.,*
581 F.3d 599 (7th Cir. 2009) ...............................................................................................10

*Bogie v. Rosenberg,*
705 F.3d 603 (7th Cir. 2013) ............................................................................................2, 5

*Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.,*
741 F.3d 769 (7th Cir. 2013) .......................................................................................5, 6, 8

*Cleary v. Philip Morris Inc.,*
656 F.3d 511 (7th Cir. 2011) ...............................................................................................15

*DiPerna v. Chi. Sch. of Prof'l Psychology,*
893 F.3d 1001 (7th Cir. 2018) ...............................................................................................5

*DiPerna v. Chi. Sch. of Prof'l Psychology,*
No. 14-57, 2014 WL 4167491 (N.D. Ill. Aug. 21, 2014) .......................................................6

*Doe v. Columbia Coll. Chi.,*
933 F.3d 849 (7th Cir. 2019) .................................................................................................5

*Eisele v. Ayers,*
381 N.E.2d 21 (Ill. App. Ct. 1978) ................................................................................. *passim*

*Fleming v. Chi. Sch. of Prof'l Psychology,*
No. 15-9036, 2017 WL 4310536 (N.D. Ill. Sept. 28, 2017)..............................................2, 5

*Galligan v. Adtalem Glob. Educ. Inc.,*
No. 17-6310, 2019 WL 423356 (N.D. Ill. Feb. 4, 2019) ........................................................7

*Gociman v. Loyola Univ. of Chi.,*
  No. 20-3116, 2021 WL 243573 (N.D. Ill. Jan. 25, 2021) ................................................. *passim*

*Gokool v. Okla. City Univ.,*
  No. 16-807, 2016 WL 10520949 (W.D. Okla. Dec. 29, 2016) ................................................. 14

*Hammer v. Twin Rivers Ins. Co.,*
  No. 16-7371, 2017 WL 2880899 (N.D. Ill. July 5, 2017) ........................................................ 14

*Hassan v. Fordham Univ.,*
  No. 20-3265, 2021 WL 293255 (S.D.N.Y. Jan. 28, 2021) ........................................ 6, 8, 10, 15

*Lindner v. Occidental Coll.,*
  No. 20-8481, 2020 WL 7350212 (C.D. Cal. Dec. 11, 2020) ...................................... 6, 7, 9, 14

*McCauley v. City of Chi.,*
  671 F.3d 611 (7th Cir. 2011) ..................................................................................................... 4

*Miller v. MacMurray Coll.,*
  2011 IL App (4th) 100988-U ..................................................................................................... 8

*Reger Dev., LLC v. Nat'l City Bank,*
  592 F.3d 759 (7th Cir. 2010) ..................................................................................................... 5

*Ross v. Creighton Univ.,*
  957 F.2d 410 (7th Cir. 1992) ....................................................................................... 2, 5, 10, 13

*Student "A" v. Hogan,*
  No. 20-1434, 2021 WL 119083 (D. Md. Jan. 13, 2021) ............................................................ 8

*Vigus v. S. Illinois Riverboat/Casino Cruises, Inc.,*
  274 F.R.D. 229 (S.D. Ill. 2011) ................................................................................................. 8

*Villareal v. Chamberlain Coll. of Nursing & Health Scis., Inc.,*
  No. 19-0300, 2019 WL 4736488 (S.D. Tex. Sept. 27, 2019) ..................................................... 7

*Waugh v. Morgan Stanley and Co., Inc.,*
  966 N.E.2d 540 (Ill. App. Ct. 2012) ........................................................................................ 13

*Wright v. Capella Univ., Inc.,*
  378 F. Supp. 3d 760 (D. Minn. 2019) ..................................................................................... 15

iii

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)...........................................................................................................................4

Nearly one year ago, in the face of a once-in-a-generation pandemic, universities across the country were forced to shift their operations online nearly overnight to comply with local and state guidelines—including a shelter-in-place order issued by the Governor of Illinois—intended to protect communities from the spread of COVID-19. Defendant Northwestern University ("Northwestern") utilized the break between its Winter and Spring 2020 Quarters to put a robust infrastructure in place to support its virtual classes, services, and activities. Implementing remote instruction allowed Northwestern to continue delivering world-class education to its students, while also keeping its community safe during an unprecedented global public health emergency.

Plaintiffs, who are current and former Northwestern students, nevertheless claim that Northwestern broke a supposed promise to conduct its operations in person and on campus under any and all circumstances. Plaintiffs' conclusory assertions are contradicted both by their own allegations and by the documents that actually form the contract between Northwestern and its students. In fact, plaintiffs' allegations and the contractual documents decisively show that each affirmatively agreed to pay tuition and fees for the Spring 2020 Quarter and successive terms with full knowledge that most, if not all, courses and activities would be remote. Plaintiffs' claims also fail for the independent reason that they fundamentally challenge the quality of the education Northwestern provided, making them educational malpractice claims that are not cognizable in Illinois. Thus, this Court should dismiss plaintiffs' claims, with prejudice.

## BACKGROUND

Northwestern is a private university serving approximately 8,000 undergraduate students and 13,000 graduate students, with its primary campus located in Evanston, Illinois. Compl. ¶¶ 17, 25. Unlike most universities, Northwestern's undergraduate and graduate programs operate on a

1

quarter system. *E.g.*, *id.*, ¶¶ 1, 5, 44; Decl. of J. Casazza ("Casazza Decl."), Ex. 1, Ex. 3 at 6.[1] Its

students typically attend courses during three quarters each year (fall, winter, and spring), and thus

are able to take more courses than a traditional semester system allows. *Id.*, Ex. 3 at 6.

Plaintiffs Nathaniel Polley, Nancy Quiroz, Surya Veeravalli, and Daniel Greenwald are

current or former undergraduate and graduate students at Northwestern. Compl. ¶¶ 13–16. Polley,

Veeravalli, and Greenwald allege that they were enrolled during the Spring 2020 Quarter, and

Quiroz and Veeravalli allege that they enrolled for the Fall 2020 Quarter. *Id.* Veeravalli is

currently an undergraduate student, Quiroz is currently a graduate student in the Marriage and

Family Therapy program at the Family Institute, and Greenwald was a graduate student in the

Sound Arts and Industries program during the 2019-20 academic year. *Id.* ¶¶ 14–16. Polley

graduated in June 2020 with a Master of Science in Biotechnology degree. *Id.* ¶ 13.

On March 9, 2020, at the end of Northwestern's Winter 2020 Quarter, Illinois Governor

J.B. Pritzker declared a public health emergency in connection with the COVID-19 pandemic.

Declaration of B. Letourneau ("Letourneau Decl."), Ex. 1. On March 11, in a notice emailed to

students and published on its website, Northwestern announced that it would transition to remote

instruction for the Spring 2020 Quarter. Compl. ¶¶ 2, 58; Declaration of J. Yates ("Yates Decl."),

Ex. 1. In an email sent to students and posted online on March 19, Northwestern explained that it

"remains open and its core operations will continue, albeit in a new, more virtual environment,"

and that it was devoting "substantial effort" and resources to "ensure that we are well prepared to

---

[1] On a motion to dismiss, the Court may consider all "documents referenced in the pleading if they are central to the claim[s]." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). Plaintiffs' contract with Northwestern is referenced throughout the complaint, is central to plaintiffs' claims, and includes policies and communications "made available to the matriculant[s]." *Ross v. Creighton Univ.*, 957 F.2d 410, 416 (7th Cir. 1992). This Court also may consider matters subject to judicial notice, including those in the public record. *Fleming v. Chi. Sch. of Prof'l Psychology*, No. 15-9036, 2017 WL 4310536, at *1 n.2 (N.D. Ill. Sept. 28, 2017).

2

deliver remote coursework that is in line with our exceptional academic curricula." *Id.*, Ex. 3. Northwestern also arranged for remote delivery of academic and career advising and mental health, religious, spiritual, and other services, and automatically credited students' accounts for Spring 2020 Quarter housing, dining, and athletic fees. *Id.*, Ex. 2, Ex. 3, Ex. 5, Ex. 9.

On March 20, 2020, Governor Pritzker issued a statewide order requiring residents to stay at home and refrain from non-essential activities. Letourneau Decl., Ex. 2. The order allowed educational institutions to remain open solely "for purposes of facilitating distance learning, performing critical research or performing essential functions." *Id.* Northwestern communicated with its students that same day, reaffirming that "[w]hen we return from Spring Break on April 4, courses will begin remotely, as planned." Yates Decl., Ex. 4.

Concurrently with its transition to remote instruction, Northwestern moved the start of the Spring 2020 Quarter to April 4–6, the deadline to obtain a tuition adjustment for changes in enrollment to April 24, and the deadline to pay tuition and fees to April 30. *See* Casazza Decl., Ex. 1; Yates Decl., Ex. 1. Thus, Northwestern gave its students notice of the transition to remote learning more than three weeks before the Spring 2020 Quarter began, and more than a month before they incurred any related financial obligation. Polley, Veeravalli, and Greenwald nevertheless elected to enroll in courses for the Spring 2020 Quarter. *See* Compl. ¶¶ 13, 15–16.[2]

Northwestern issued notice no later than June 16, 2020—months before the Fall 2020 Quarter enrollment and payment deadlines—that most, if not all, Fall 2020 Quarter courses would be remote. *Id.* ¶ 62; Yates Decl., Ex. 9. Northwestern's 2020-21 undergraduate course catalog states that "[t]o be eligible to enroll" for courses, "students must agree" that, among other things,

---

[2] Plaintiffs challenge Northwestern's retention of "Mandatory Fees." Compl. ¶¶ 82–83; *see also id.* ¶¶ 3, 5, 12, 35–36, 41–42, 99, 111. They neither define "Mandatory Fees," nor allege facts regarding the fees, or that any plaintiff other than Veeravalli paid fees at all. *Id.* ¶¶ 13–16.

they "understand and acknowledge that . . . some or all instruction for all or part of the term may be delivered remotely" and "[t]uition and fees will not be refunded or prorated" for that reason. Casazza Decl., Ex. 4 at 9–10. Northwestern required all of its students to expressly acknowledge their agreement to those terms prior to registering for Fall 2020 and Winter 2021 Quarter courses. *Id.* ¶¶ 7–9; Yates Decl., Ex. 11. Greenwald, Quiroz, and Veeravalli did so for the Fall 2020 Quarter, as did Quiroz and Veeravalli for the Winter 2021 Quarter. Casazza Decl. ¶¶ 12-13.

Plaintiffs nonetheless allege that they contracted with Northwestern to receive *in-person* education for the Spring 2020 Quarter and subsequent terms in exchange for payment of tuition and fees, and that Northwestern's provision of supposedly "inferior" remote education breached that agreement. *E.g.*, Compl. ¶¶ 3, 5–12, 35, 42, 67, 69–73, 75–80. Plaintiffs bring two claims against Northwestern, for breach of contract (Count I) and unjust enrichment (Count II). *Id.* ¶¶ 97–108, 109–16. They seek a refund of tuition and fees for the Spring 2020 Quarter and subsequent quarters based on the allegedly "diminished value of online learning," as well as "damages relating to Northwestern's passing off an online, 'virtual' college experience as similar in kind to full immersion in the academic life of a college campus." *Id.* ¶¶ 84–86, 108, 116.

## ARGUMENT

To survive a motion to dismiss, a plaintiff must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6). Determining whether a claim is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011). Mere "labels and conclusions" or "a formulaic recitation of the elements" of a claim are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, plaintiffs must "plead particularized factual content" that "allows the court to plausibly infer the defendant is

4

liable for the alleged misconduct." *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 854 (7th Cir. 2019). Like legal conclusions, allegations that are "incontrovertibly contradict[ed]" by "documents referenced in the pleading" are properly set aside. *Fleming*, 2017 WL 4310536, at *1 n.2 (quoting *Bogie*, 705 F.3d at 609).

Plaintiffs' allegations, when stripped of legal conclusions and read against the documents that comprise their contract with Northwestern, fail to support their claims. *First*, plaintiffs do not identify any specific promise of in-person education. In fact, their allegations and the relevant contractual documents demonstrate that Northwestern offered, and plaintiffs accepted, remote instruction during the relevant terms. *Second*, because plaintiffs' claims are based on a perceived difference in value between remote and in-person instruction, they are non-cognizable educational malpractice claims. *Third*, the undisputed existence of a contractual relationship between plaintiffs and Northwestern bars their unjust enrichment claim. *Fourth*, plaintiffs have not alleged, and cannot allege, facts to support their assertion that Northwestern has been unjustly enriched.

## I. Plaintiffs Fail to State a Claim for Breach of Contract (First Claim for Relief).

To state a claim for breach of contract, plaintiffs must allege: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resulting damages. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010). "In Illinois, a college or university and its students have a contractual relationship, and the terms of the contract are generally set forth in the school's catalogs and bulletins." *DiPerna* v. *Chi. Sch. of Prof'l Psychology*, 893 F.3d 1001, 1006–07 (7th Cir. 2018). A student asserting a breach of contract claim against a university may not "merely state" that a "contract exist[s]." *Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.*, 741 F.3d 769, 773 (7th Cir. 2013). Rather, the student must "point to an identifiable contractual promise that the [university] failed to honor," *Ross*, 957 F.2d at 417, specifying the source of the contract and "the exact promises the

university made to the student," *Charleston*, 741 F.3d at 773. *See also Gociman v. Loyola Univ. of Chi.*, No. 20-3116, 2021 WL 243573, at *4 (N.D. Ill. Jan. 25, 2021) (Gettleman, J.) ("[P]laintiffs are required to provide an identifiable contractual promise."); *Eisele v. Ayers*, 381 N.E.2d 21, 26 (Ill. App. Ct. 1978) ("[A] contract will not be held binding and enforceable unless its terms are sufficiently definite and certain."). "[E]xpression[s] of intention, hope or desire" will not suffice. *Abrams v. Ill. Coll. of Podiatric Med.*, 395 N.E.2d 1061, 1065 (Ill. App. Ct. 1979).

Plaintiffs' breach of contract claim fails because: (1) they do not identify a specific promise that Northwestern made and breached, (2) the terms of the contract provide that Northwestern may change modes of instruction and course formats without notice, and (3) plaintiffs accepted remote learning as part of their contract with Northwestern for the Spring 2020 Quarter and beyond.

### A. Plaintiffs Do Not—and Cannot—Identify a Specific, Identifiable Promise by Northwestern to Provide In-Person Instruction.

Plaintiffs cannot state a breach of contract claim because Northwestern did not make a specific promise to provide in-person instruction. Plaintiffs assert that Northwestern agreed that "in exchange for the payment of tuition, fees and other related costs, [it] would provide an agreed-upon number of classes through in-person instruction" and "access to physical resources and school facilities such as libraries, laboratories, and classrooms." Compl. ¶ 35; *see also id.* ¶¶ 5, 42. But Illinois law requires plaintiffs to allege an "identifiable contractual promise." *Gociman*, 2021 WL 243573, at *4.[3] This they have not done, and cannot do. Plaintiffs' vague references to

---

[3] *Accord Hassan v. Fordham Univ.*, No. 20-3265, 2021 WL 293255, at *6–7 (S.D.N.Y. Jan. 28, 2021) (dismissing similar claim where plaintiffs failed to identify "a specific promise to provide in-person educational services"); *Lindner v. Occidental Coll.*, No. 20-8481, 2020 WL 7350212, at *8 (C.D. Cal. Dec. 11, 2020) (dismissing similar claim where plaintiffs "failed to identify any specific language in the" course catalog or "any other publication" that "promise[d] in-person instruction"); *DiPerna v. Chi. Sch. of Prof'l Psychology*, No. 14-57, 2014 WL 4167491, at *3 (N.D. Ill. Aug. 21, 2014) (dismissing student's contract claim for failure to "plead specifically which contractual provision [was] breached").

"materials," "matters," and "other documents," Compl. ¶ 36, fail to sufficiently identify the source of any purported promise to provide in-person instruction. *See Gociman*, 2021 WL 243573, at \*4; *Villareal v. Chamberlain Coll. of Nursing & Health Scis., Inc.*, No. 19-0300, 2019 WL 4736488, at \*3 (S.D. Tex. Sept. 27, 2019) (dismissing claim where student "identifie[d] the Academic Catalog but not any provision within it that bound" college to the promise alleged). Moreover, as explained below, the actual language of those documents defeats plaintiffs' claim.

In a recent opinion dismissing similar claims against Loyola University, the court rejected the plaintiffs' citation to "hundreds of pages of documents," including Loyola's "website, brochures, course catalogs, and online registration portal," as the source of a purported promise of in-person instruction. *Gociman*, 2021 WL 243573, at \*1, \*4. The court observed that none of the documents made any "mention of on-campus courses or in-person access to facilities," and their actual language, which, among other things, reserved to Loyola the right to modify its course offerings without notice, "undermine[d] plaintiffs' claim that the on-campus experience" is "necessary or guaranteed." *Id*. at \*4.

The same is true here. Plaintiffs allege that "Northwestern markets its on-campus and in-person experiences and opportunities as a benefit to students" and "touts the value of its campus life and services" in its "promotional literature" and on its website. Compl. ¶¶ 22, 25, 32; *see also id.* ¶¶ 23–24, 26–31, 71. But as in *Gociman*, plaintiffs cannot identify a specific reference to in-person instruction or services. And in any event, "promotional statements" are not "concrete promises that could comprise part of a contract between a student and university." *Galligan v. Adtalem Glob. Educ. Inc.*, No. 17-6310, 2019 WL 423356, at \*6 (N.D. Ill. Feb. 4, 2019); *see also Lindner*, 2020 WL 7350212, at \*8 n.1 (holding that website description of college's features was

"an advertisement" and "not a contractual obligation"); *Student "A" v. Hogan*, No. 20-1434, 2021 WL 119083, at *3 (D. Md. Jan. 13, 2021) (same).

Plaintiffs' contention that listings of "the time and physical location" of courses promised "in-person instruction," Compl. ¶¶ 37–38, is similarly unavailing. To begin with, plaintiffs fail to allege "the time and physical location" of any course in which they personally were enrolled. They reference undergraduate astrophysics and history courses, *id.*, but do not allege that they enrolled in those courses. Prior to class certification, "the relevant inquiry is not whether any member of the putative class might have a claim," but whether the *named plaintiffs* have stated a claim. *Vigus v. S. Illinois Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 233 (S.D. Ill. 2011). Plaintiffs thus fail to allege the threshold element of their claim: an identifiable promise that *their own courses* would be taught in person. *See Charleston*, 741 F.3d at 773 (dismissing claim where plaintiff failed to "describe the specific promises that the university made *to him*" (emphasis added)).

Regardless, course descriptions are not a promise by a university to "schedule its classes in the manner [plaintiffs] claim[]." *Miller v. MacMurray Coll.*, 2011 IL App (4th) 100988-U, ¶¶ 49, 53. Rather, they merely "contain[] informational guidance regarding, for example, a course's instructor, location, and schedule." *Hassan*, 2021 WL 293255, at *5–6. In *Gociman*, the court concluded that "lecture (in-person)" notations in Loyola's course catalog were "hardly sufficient to form a binding contract" to provide those courses in person. 2021 WL 243573, at *4; *accord Hassan*, 2021 WL 293255, at *5–6 (rejecting contract claim even though catalog distinguished between "in-person" and "online" courses). As plaintiffs' complaint demonstrates, Northwestern's course listings do not include the phrase "in person" or any equivalent, *see* Compl. ¶¶ 37–38, making plaintiffs' assertion that Northwestern's course catalogs contain a promise to provide "in-person instruction" even flimsier than the claim the *Gociman* court rejected.

8

The *Gociman* court granted Loyola's motion to dismiss for another reason: Loyola's course catalog provided that Loyola "reserves the right to change, at any time, without notice . . . curriculum, course structure and content," and thus, "[p]laintiffs' attempt to read into the catalogue an obligation to provide only in-person instruction is plainly inconsistent with the document itself." 2021 WL 243573, at *4. That reasoning applies with equal force here. The 2019-20 undergraduate course catalog states that Northwestern "reserves the right to change without notice any statement in this catalog concerning, but not limited to, rules, policies, tuition, fees, curricula, and courses." Casazza Decl., Ex. 3 at 9. The 2019-20 graduate course catalog provides that the graduate school intends to create an "adaptable educational infrastructure," and that registration and academic program policies are "subject to change without notice." *Id.*, Ex. 5 at 6, 15; *see also id.*, Ex. 6 at 6, 15. The language in the 2020-21 undergraduate catalog (and in the separate acknowledgment form that Greenwald, Quiroz, and Veeravalli expressly agreed to) is even more explicit: it states that "the majority of courses will be delivered remotely," and "[t]uition and fees will not be refunded or prorated" if an in-person course moves online. *Id.* ¶¶ 9–10, Ex. 4 at 9–10, Ex. 8. Thus, the language of the course catalogs defeats plaintiffs' claims. *Gociman*, 2021 WL 243573, at *4; *accord Lindner*, 2020 WL 7350212, at *8; *Eisele*, 381 N.E.2d at 26 (reservation of rights in course catalog precluded contract claim based on tuition increase).[4]

Plaintiffs' selective quotations from Northwestern's Policy on Awarding Credit, Compl. ¶¶ 51–55, further undermine their claim. Setting aside that this policy is directed toward faculty

---

[4] Plaintiffs allege that Northwestern "requires that changes to course formats be approved in advance, and that changes to school policies must have 45-day notice and comment period[s]," Compl. ¶ 47. They fail to identify the source of any such requirement, which, in any event, is contrary to the reservation of rights language described above.

9

and not students,[5] *see* Casazza Decl., Ex. 7, the actual text contains no promise of in-person courses. Rather, it states that "[t]eaching and learning at Northwestern *take many forms*," that Northwestern awards equal credit for equal work "irrespective of department, *delivery format*, or degree level," and that "online or blended courses" are "*held to the same standard*" as any other course. *Id*. (emphasis added). Plaintiffs' reliance on this policy—which specifically contemplates instruction in a variety of formats—demonstrates just how tenuous their claim is.[6] *See Hassan*, 2021 WL 293255, at *6 (rejecting argument that policy which "ma[de] no distinctions among different modes of instruction" constituted a specific promise of in-person education).

Plaintiffs' attempt to state a claim for breach of implied contract similarly fails. Plaintiffs cannot avoid alleging a specific promise merely by asserting that "an implied contract existed and was breached." *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009). Nor do "[p]laintiffs' expectations of future conduct" by Northwestern create an enforceable contract. *Eisele*, 381 N.E.2d at 26. Thus, plaintiffs' allegations that they "expected" in-person courses because Northwestern "historically provided" them, *e.g.*, Compl. ¶¶ 35, 39–40, 42, 45, fall short. *Eisele, 381* N.E.2d at 26; *Hassan*, 2021 WL 293255, at *7. For similar reasons, plaintiffs' allegations that Northwestern charges "significantly different price points" for traditional and online programs, Compl. ¶¶ 72–74, 80, do not establish an implied contract to provide in-person classes. "A difference in tuition is insufficient to allege a specific contractual promise." *Gociman*, 2021 WL 243573, at *4. Plaintiffs also do not—and cannot—identify an "online-only" counterpart

---

[5] *Cf. Ross*, 957 F.2d at 416 (student contract with university consists of materials "made available to the *matriculant*" (emphasis added)). The Court also should disregard plaintiffs' citation to Northwestern's faculty handbook, Compl. ¶¶ 49–50, which is not part of its contract with *students*.

[6] Plaintiffs also misrepresent their admission offer letters, which they reference but do not provide to the Court, as "promis[ing] live, in-person education." Compl. ¶ 43. The actual letters contain no such language. *See* Declaration of S. Korzeniowski, Ex. 1; Declaration of B. West, Ex. 1; Declaration of M. Rastogi ("Rastogi Decl."), Ex. 1; Declaration of C. Watson, Ex. 1.

to their own degree programs. They allege differences in tuition for programs in Northwestern's Medill School of Journalism, Media, and Integrated Marketing Communications, Compl. ¶ 74, but not that any plaintiff was enrolled in a Medill School program.

For the reasons above, plaintiffs fail to identify any specific promise by Northwestern to provide in-person instruction and services in exchange for payment of tuition and fees. Because plaintiffs' breach of contract claim lacks that fundamental element, this Court should dismiss it.

**B.      Plaintiffs Accepted Remote Instruction as Part of Their Contract with Northwestern for the Spring 2020 Quarter and Subsequent Terms.**

Plaintiffs' claim also fails because their allegations, as well as the documents that comprise the contract at issue, conclusively show that they agreed to remote instruction during the Spring 2020 Quarter and beyond. Plaintiffs' claim fundamentally relies on the premise that upon their initial enrollment, they entered a contract with Northwestern for the entire duration of their respective programs. That premise contravenes Illinois law, however, which provides that their contracts with Northwestern are "renewable on a [quarter] to [quarter] basis," and "[n]o obligation to pay tuition arises until a student enrolls for courses each [quarter]." *Eisele*, 381 N.E.2d at 27; *see also Aase v. State, S. Dakota Bd. of Regents*, 400 N.W.2d 269, 270 (S.D. 1987) ("[T]he only contract formed between the student and the school which he is attending is for the term for which the tuition is paid."). Indeed, plaintiffs acknowledge that Northwestern charges tuition on a quarterly basis, and that they renew their acceptance of Northwestern's offer of education by paying tuition and fees "from quarter to quarter." Compl. ¶¶ 44, 56–57, 100.

Plaintiffs allege that "[o]n March 11, 2020, Northwestern, through an email to its students, faculty, and staff, announced" that it had "effectively closes [sic] its campus facilities, and moved all (or substantially all) classes online" for the Spring 2020 Quarter. *Id*. ¶ 58. They allege further that "[o]n June 16, 2020, Northwestern announced that a 'significant portion' of its Fall 2020

11

Quarter classes would be online and on-campus life would be drastically reduced." *Id*. ¶ 62. Those admissions are fatal to their claims.[7]   Plaintiffs admit Northwestern notified them that "substantially all" courses would be remote nearly four weeks before the Spring 2020 Quarter began, and nearly seven weeks before tuition and fees were due. Compl. ¶ 58; Casazza Decl., Ex. 1. Thus, "at the time the [transition to remote instruction] was announced, plaintiffs were under no obligation to pay" tuition and fees for the Spring 2020 Quarter, and were free to opt not to do so. *Eisele*, 381 N.E.2d at 27.

The same is true of the Fall 2020 Quarter. Plaintiffs admit that Northwestern announced that the Fall 2020 Quarter likely would take place remotely at least *three months* before it began, and more than *fifteen weeks* before payment was due.[8]   Compl. ¶ 62; Casazza Decl., Ex. 2. Moreover, Greenwald, Quiroz, and Veeravalli *expressly agreed* that "[t]uition and fees [would] not be refunded or prorated if [they chose] to participate in courses offered remotely." *Id*. ¶ 9; *see also id*., Ex. 4, Ex. 8. By enrolling anyway, plaintiffs accepted remote learning as part of their contract with Northwestern. *See Eisele*, 381 N.E.2d at 27.

Plaintiffs' conclusory assertion that they were "compelled to pay full tuition for inferior education in the Spring, Summer, Fall, and any subsequent quarters," Compl. ¶ 67, cannot save their claim. Northwestern gave students reasonable notice and additional time to opt out of remote learning for the Spring 2020 Quarter and beyond. There was "nothing inherently wrong or oppressive" in Northwestern's assessment of full tuition and some fees, "particularly in light of

---

[7] Only Veeravalli alleges that he was enrolled at Northwestern during both the Spring 2020 and Fall 2020 Quarters. *See* Compl., ¶¶ 13–16. Any claims by the other plaintiffs related to quarters in which they were not enrolled should be dismissed for lack of standing. *See Gociman*, 2021 WL 243573, at *2 (dismissing plaintiffs who paid tuition on behalf of others but were not enrolled as students for failure to "meet their burden of showing injury-in-fact").

[8] In fact, Northwestern first advised students that most fall courses would be remote as early as May 22, 2020. Yates Decl., Ex. 8; *see also id.*, Ex. 10, Ex. 11; Rastogi Decl., Ex. 2.

12

the financial realities" caused by the pandemic (*see* Section II below). *See Eisele*, 381 N.E.2d at 27 (rejecting similar argument). Plaintiffs' unsupported contention that they "did not and do not have the option of transferring or pausing their education," Compl. ¶ 67, is belied by common sense, given how frequently students transfer and withdraw from universities for countless reasons.

Plaintiffs knowingly agreed to pay tuition and fees for remote instruction in the Spring 2020 and Fall 2020 Quarters and beyond. Thus, their breach of contract claim should be dismissed.

**II.      Plaintiffs' Claims are Non-Cognizable Educational Malpractice Claims (All Claims).**

Plaintiffs' claims fundamentally challenge the quality of the education Northwestern provided, and thus are non-cognizable "educational malpractice" claims. It is well-established in Illinois that claims seeking damages on the basis that a university failed "to provide [its students] with an education of a certain quality" are not actionable. *Ross*, 957 F.2d at 417. "Regardless of how the claim is pled, courts will not 'second-guess' the 'professional judgment' of [a] university." *Gociman*, 2021 WL 243573, at *3 (quoting *Ross*, 957 F.2d at 416). Thus, any "claim [that] requires an analysis of the quality of education," however framed, is barred as a matter of Illinois law. *Waugh v. Morgan Stanley and Co., Inc.*, 966 N.E.2d 540, 555 (Ill. App. Ct. 2012).

Plaintiffs' allegations plainly attack the quality of the education they received. They allege that "[t]he online learning options being offered to Plaintiffs and Class Members *are materially different* compared to the educational experience previously afforded to them," Compl. ¶ 75 (emphasis added), that remote instruction "diminished" the "value" of their education, *id.* ¶ 84; and that they were "deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique," *id.* ¶ 77; *see also id.* ¶¶ 10–11, 67. These are precisely the type of allegations that have led courts to dismiss breach of contract claims on the ground that they are educational malpractice claims. In *Gociman*, for example, the court concluded that the plaintiffs' similar assertions that remote instruction was "'worth significantly less than the value of live

13

classes' . . . clearly challenge[d] the quality of the online instruction," and thus, were "the type of educational malpractice claims that Illinois courts, and courts throughout the country, have rejected." *Gociman*, 2021 WL 243573, at *3. Another court likewise dismissed a claim against Occidental College in which the plaintiffs alleged that the remote courses Occidental offered diminished their education because "online classes lacked 'collaborative learning and . . . dialogue, feedback, and critique.'" *Lindner*, 2020 WL 7350212, at *7.[9] This Court, too, should reject plaintiffs' invitation to second-guess Northwestern's exercise of professional judgment in the delivery of courses offered during an ongoing pandemic. *See Gociman*, 2021 WL 243573, at *3.

### III. Plaintiffs Fail to State a Claim for Unjust Enrichment (Second Claim for Relief).

Plaintiffs' unjust enrichment claim depends on the same facts they allege in support of their contract claim, *see* Compl. ¶¶ 97, 109, and fails for the same reasons. *Gociman*, 2021 WL 243573, at *5 (dismissing unjust enrichment claim "because the breach of contract claim fails"). Plaintiffs' claim also lacks merit because a contract undisputedly governs their relationship with Northwestern. Under Illinois law, an unjust enrichment claim cannot lie "where there is a contract that governs the relationship between the parties," whether or not the contract addresses the specific disputed issues. *Hammer v. Twin Rivers Ins. Co.*, No. 16-7371, 2017 WL 2880899, at *10 (N.D. Ill. July 5, 2017); *accord Gociman*, 2021 WL 243573, at *5. Plaintiffs' allegations regarding their contract with Northwestern are inextricably bound up with their unjust enrichment claim, which "incorporate[s] by reference the allegations contained in Paragraphs 1-96 of th[e]

---

[9] *Accord Basso v. N.Y. Univ.*, No. 16-7295, 2020 WL 7027589, at *15 (S.D.N.Y. Nov. 30, 2020) ("[S]tudents' complaints about the general quality of the education they received and invitations for courts to make comparative value judgments between academic programs both constitute essentially repackaged actions asserting educational malpractice."); *cf. Gokool v. Okla. City Univ.*, No. 16-807, 2016 WL 10520949, at *4 (W.D. Okla. Dec. 29, 2016) ("[T]he fact that [plaintiff] does not believe OCU provided the type of ideal learning environment promised does not confer upon her some action in contract.").

complaint," Compl. ¶ 109, including an entire section of allegations labeled "Contract Terms," *e.g.*, *id.* ¶¶ 3, 35–38, 41-44, 59, 65.

Regardless, plaintiffs fail to state a claim. Plaintiffs must allege that Northwestern's retention of tuition and fees "violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011). They cannot do so. Plaintiffs admit they received educational services in exchange for their tuition and fees, and Polley admits he earned his degree. *See* Compl. ¶¶ 6, 13, 61, 71. Thus, their "allegations do not support an inference that it is illegal or unlawful for [Northwestern] to retain the tuition payments." *Wright v. Capella Univ., Inc.*, 378 F. Supp. 3d 760, 774–75 (D. Minn. 2019); *see also Hassan*, 2021 WL 293255, at *10–11 (rejecting similar unjust enrichment claim because university "acted promptly in the face of a pandemic in order to continue educating its students"). Nor have plaintiffs plausibly alleged that Northwestern's retention of tuition and fees "violates the fundamental principles of justice, equity, and good conscience." *Cleary*, 656 F.3d at 516. They do not—and cannot—allege that Northwestern reduced its operational costs by transitioning to remote instruction. Not only does Northwestern continue to pay salaries to faculty and staff and otherwise fund the many ongoing services offered to students despite deteriorating financial conditions caused by the pandemic, it also has devoted substantial resources to setting up and maintaining the infrastructure required for remote instruction. *See* Yates Decl., Ex. 2, Ex. 6, Ex. 7, Ex. 9. Northwestern thus did not unjustly and inequitably "retain benefits in excess of the services it provided." Compl. ¶ 116.

## CONCLUSION

Plaintiffs' claims against Northwestern University should be dismissed with prejudice.

Dated: February 5, 2021                    Respectfully submitted,

                                           /s/ Craig C. Martin
                                           One of the Attorneys for Defendant

15

Craig C. Martin
Brienne M. Letourneau
Chloe Holt
cmartin@willkie.com
bletourneau@willkie.com
cholt@willkie.com
WILLKIE FARR & GALLAGHER
300 North LaSalle, 50th Floor
Chicago, Illinois 60654
Tel: (312) 728-9000

*Counsel for Defendant Northwestern University*

16