# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |
|---|---|
| NATHANIEL POLLEY, NANCY QUIROZ, SURYA VEERAVALLI, and DANIEL GREENWALD, on behalf of themselves and all others similarly situated, | Civil Action No. 1:20-cv-04798 |
| Plaintiffs, | Honorable Harry D. Leinenweber, U.S.D.J. |
| v. | |
| NORTHWESTERN UNIVERSITY, | |
| Defendant. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................ii

LEGAL STANDARD......................................................................................................... 2

ARGUMENT.......................................................................................................................3

I.      Plaintiffs Properly Plead a Breach of Contract................................................... 3

        A.      Northwestern Promised In-Person Classes and On-Campus Access...................... 4

                1.      Northwestern's Express Promises................................................. 4

                2.      Northwestern's Implied Promises.................................................6

                3.      Courts Hold Similar Allegations State a Contract Claim........................... 7

                4.      Magic Words Are Not Necessary to Allege a Breach of Contract.............. 9

                5.      Northwestern's Reliance on Distinguishable Cases Is Unavailing............10

                6.      Northwestern Cannot Change Course Formats without Notice................ 12

        B.      Students Did Not "Accept" Online Classes................................................. 13

                1.      At time of enrollment, students did not know their classes would be only online........................................................................................ 14

                2.      Students were not free to reject online classes......................................... 15

                3.      Northwestern cannot claim a waiver on a motion to dismiss.................... 16

II.     Plaintiffs Do Not Claim Educational Malpractice................................................17

III.    Plaintiffs Properly Claim Unjust Enrichment in the Alternative.......................19

CONCLUSION...................................................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Abrams v. Illinois College of Podiatric Med.*,
395 N.E.2d 1061 (Ill. App. 1st Dist. 1979)..................................................................11

*Argonaut Ins. Co. v. Broadspire Servs., Inc.*,
2008 WL 4346418 (N.D. Ill. Mar. 25, 2008)..............................................................19

*Bahrani v. Ne. Univ.*,
2020 WL 7774292 (D. Mass. Dec. 30, 2020)....................................................2, 18, 19

*Basso v. New York Univ.*,
2020 WL 7027589 (S.D.N.Y. 2020)............................................................................17

*Bergeron v. Rochester Inst. of Tech.*,
2020 WL 7486682 (W.D.N.Y. Dec. 18, 2020)........................................................2, 8, 19

*Bissessur v. Indiana U. Bd. of Trustees*,
581 F.3d 599 (7th Cir. 2009).......................................................................................10

*In re: Boston Univ. COVID-19 Refund Litig.*,
2021 WL 66443 (D. Mass. Jan. 7, 2021)..............................................................2, 18

*Cairone v. McHenry Cty. Coll.*,
2019 WL 3766112 (N.D. Ill. Aug. 9, 2019)..................................................................7

*Chong v. Ne. Univ.*, ("*Chong I*"),
2020 WL 5847626 (D. Mass. Oct. 1, 2020)................................................................11

*Chong v. Ne. Univ.*, ("*Chong II*"),
2020 WL 7338499 (D. Mass. Dec. 14, 2020)..................................................2, 8, 12, 19

*CNA Int'l Inc. v. Guangdong Kelon*,
2007 WL 9817862 (N.D. Ill. 2007).............................................................................19

*Cross v. Univ. of Toledo*,
2020 WL 4726814 (Ohio Ct. Cl., July 8, 2020)..................................................2, 9, 18

*Deckard v. Gen. Motors Corp.*,
307 F.3d 556 (7th Cir. 2002)......................................................................................... 16

*DiPerna v. Chicago Sch. of Prof. Psychol.*,
2014 WL 4167491 (N.D. Ill. Aug. 21, 2014)................................................................ 10

*DiPerna v. Chicago Sch. of Prof. Psychol.,*
2015 WL 361902 (N.D. Ill. Jan. 27, 2015).................................................................. 10

*Doe v. Bradley Univ.*, ("*Bradley*"),
2020 WL 7634159 (C.D. Ill. Dec. 22, 2020)........................................................ 1, 7, 8, 19

*Doe v. Emory Univ.*,
2021 WL 358391 (N.D. Ga. Jan. 22, 2021)...................................................................2

*Dual-Temp of Illinois, Inc. v. Hench Control, Inc.*,
821 F.3d 866 (7th Cir. 2016)......................................................................................... 3

*Eisele v. Ayers*,
381 N.E.2d 21 (Ill. App. 1st Dist. 1978).....................................................................16

*Erickson v. Pardus*,
551 U.S. 89 (2007)....................................................................................................2, 10

*Ford v. Rensselaer Polytechnic Inst.*,
2020 WL 7389155 (N.D.N.Y. Dec. 16, 2020).........................................................2, 18, 20

*Galligan v. Adtalem Glob. Educ. Inc.*,
2019 WL 423356 (N.D. Ill. Feb. 4, 2019)............................................................... 7, 10

*Garland v. Western Michigan Univ.*,
No. 20-0063-MK (Mich. Ct. C1. Sept. 15, 2020)...........................................................2, 9, 18

*Gibson v. Lynn Univ., Inc.*,
2020 WL 7024463 (S.D. Fla. Nov. 29, 2020)......................................................2, 8, 17, 18, 19

*Gociman v. Loyola U. of Chicago*,
2021 WL 243573 (N.D. Ill. Jan. 25, 2021)........................................................... 11, 17

*Gokool v. Oklahoma City Univ.*,
2016 WL 10520949 (W.D. Okla. 2016)............................................................................ 17

iii

*Grant v. Chapman Univ.*,
    2021 WL 684581 (Cal. Super. Jan. 22, 2021)..................................................................... 2, 8, 18

*Hassan v. Fordham U.*,
    2021 WL 293255 (S.D.N.Y. Jan. 28, 2021)..................................................................... 10, 11

*Hefferman v. Bass*,
    467 F.3d 596 (7th Cir. 2006)................................................................................................ 9

*Hiatt v. Brigham Young Univ.*,
    2021 WL 66298 (D. Utah Jan. 7, 2021).............................................................................2, 8

*Indiana Harbor Belt R. Co. v. Pielet Bros. Scrap Iron & Metal*,
    676 F. Supp. 849 (N.D. Ill. 1987)....................................................................................... 20

*Kishinevsky v. Bd. of Trs. of Met. State Univ. of Denver*,
    No. 20CV31452 (Colo. Dist. Ct. Nov. 23, 2020)................................................................. 2

*LaBella Winnetka, Inc. v. Village of Winnetka*,
    628 F.3d 937 (7th Cir. 2010)................................................................................................ 6

*In re Lexi Dev. Co., Inc.*,
    453 B.R. 440 (S.D. Fla. 2011)............................................................................................ 16

*Lindner v. Occidental College*,
    2020 WL 7350212 (C.D. Cal. Dec. 11, 2020)................................................................11, 17

*Little v. Grand Canyon Univ.*,
    2021 WL 308940 (D. Ariz. Jan. 29, 2021).......................................................................... 2

*McCarthy v. Loyola Marymount Univ.*,
    2021 WL 268242 (C.D. Cal. Jan. 8, 2021).......................................................................... 2

*McCullah v. Gadert*,
    344 F.3d 655 (7th Cir. 2003)............................................................................................... 2

*McDermott v. The Ohio State Univ.*,
    2020 WL 5239892 (Ohio Ct. Cl. July 8, 2020).............................................................. 2, 9, 18

*Mellowitz v. Ball State Univ. & Bd. Of Trs. of Ball State Univ.*,
    2020 Ind. Super. LEXIS 854 (Marion Sup. Ct. Civil Div. 14 Aug. 12, 2020)......................... 2

*Milanov v. Univ. of Mich.*,
 2020 Mich. Ct. Cl. LEXIS 1 (Mich. Ct. Cl. July 27, 2020)............................................2, 9, 18

*Miller v. MacMurray College*,
 2011 IL App (4th) 100988-U....................................................................................................10

*In re Modern Dairy of Champaign, Inc.*,
 171 F.3d 1106 (7th Cir. 1999)................................................................................................ 13

*Moran v. Stonehill College*,
 No. 2077CV00431 (Mass. Super. Feb. 16, 2021)....................................................................2

*Muehlbauer v. General Motors Corp.*,
 431 F. Supp. 2d 847 (N.D. Ill. 2006).......................................................................................20

*Ocasio-Hernandez v. Fortuno-Burset*,
 640 F.3d 1 (1st Cir. 2011).........................................................................................................6

*Optima Media Group Ltd. v. Bloomberg L.P.*,
 383 F. Supp. 3d 135 (S.D.N.Y. 2019)......................................................................................16

*Oyoque v. DePaul U.*,
 2021 WL 679231 (N.D. Ill. Feb. 21, 2021)............................................................................. 7

*Plotzker v. Equifax Info. Services LLC*,
 2020 WL 1548956 (N.D. Ill. Apr. 1, 2020).............................................................................. 6

*Rhodes v. Embry-Riddle Aeronautical Univ.*,
 2021 WL 140708 (M.D. Fla. Jan. 14, 2021)....................................................................2, 8, 18

*Robinson v. Ada S. McKinley Cmty. Servs., Inc.*,
 19 F.3d 359 (7th Cir. 1994)................................................................................................. 1, 15

*Rosado v. Barry Univ.*,
 2020 WL 6438684 (S.D. Fla., Oct. 30, 2020)........................................2, 8, 9, 15, 17, 19, 20

*Ross v. Creighton U.*,
 957 F.2d 410 (7th Cir. 1992)................................................................................................ 7

*Salerno v. Florida So. Coll.*,
 2020 WL 5583522 (M.D. Fla. Sept. 16, 2020)................................................................2, 8, 18

*Saroya v. Univ. of the Pac.*,
  2020 WL 7013598 (N.D. Cal. Nov. 27, 2020)...................................................... 2, 9, 18

*Smith v. The Ohio State Univ.*,
  2020 WL 5694224 (Ohio Ct. Cl., Sept. 9, 2020)................................................. 2, 9, 18

*Spiegel v. Trustees of Indiana Univ.*,
  2020 Ind. Cir. LEXIS 388 (Monroe Cir. Ct. Nov. 19, 2020)................................... 2, 15

*Student "A" v. Hogan*,
  2021 WL 119083 (D. Md. Jan. 13, 2021)................................................................ 11

*Sullivan v. Alcatel-Lucent USA, Inc.*,
  2013 WL 228244 (N.D. Ill. Jan. 22, 2013)............................................................. 20

*Swanson v. Citibank, N.A.*,
  614 F.3d 400 (7th Cir. 2010)...................................................................................... 2

*VC Mgt., LLC v. Reliastar Life Ins. Co.*,
  195 F. Supp. 3d 974 (N.D. Ill. 2016)...................................................................... 16

*Verlanga v. Univ. of San Francisco*,
  2020 Cal. Super. LEXIS 1785 (Cal. Sup. Ct. Nov. 12, 2020)............................... 2, 19

*Villareal v. Chamberlain College of Nursing & Health Scis., Inc.*,
  2019 WL 4736488 (S.D. Tex. Sept. 27, 2019)........................................................ 10

*Waitt v. Kent State Univ.*,
  2020 WL 5894543 (Ohio Ct. Cl. Sept. 28, 2020)............................................... 2, 9, 18

*Workman v. United Parcel Serv., Inc.*,
  234 F.3d 998 (7th Cir. 2000)................................................................................... 11

*Zahn v. Ohio Univ.*,
  2020 WL 6163919 (Ohio Ct. Cl. Oct. 19, 2020)................................................... 2, 18

## FEDERAL RULES

Fed. R. Civ. P. 8..................................................................................................2, 9, 20

Fed. R. Civ. P. 8(a)(3)................................................................................................ 19

Fed. R. Civ. P. 8(c).................................................................................................... 16

Fed. R. Civ. P. 8(d)(1)........................................................................................................9

Fed. R. Civ. P. 12............................................................................................................2

Fed. R. Civ. P. 15(a)...................................................................................................... 20

Fed. R. Civ. P. 56............................................................................................................3

## OTHER AUTHORITIES

2019-2020 Graduate Catalog, *available at*
https://catalogs.northwestern.edu/archives/2019-2020/pdf/2019-2020-tgs.pdf............5, 12, 15

2019-2020 Student Handbook *available at*
https://www.northwestern.edu/communitystandards/student-handbook/student
-handbook-2019-2020.pdf................................................................................... 6

2019-20 Undergraduate Course Catalog, *available at*
https://catalogs.northwestern.edu/archives/2019-2020/pdf/2019-2020-undergr
aduate.pdf.................................................................................................5, 13, 15

Class Descriptions, Overview, *available at*
www.northwestern.edu/ses/staff/class-descriptions/overview.html...................................... 10

Course Leaf Scheduling System *available at*
www.registrar.northwestern.edu/faculty-staff/resources-for-departmental-staff
-schedulers/clss-scheduling-guide.pdf.......................................................................12

New Course and Changes to Existing Courses, *available at*
www.registrar.northwestern.edu/faculty-staff/new-coursechange-an-existing-c
ourse.html ...........................................................................................................12

Restatement (Second) of Contracts (1981)................................................................... 1, 6

University Policy Development Guidelines, *available at*
https://policies.northwestern.edu/docs/policy-development-guidelines-final.pd
f............................................................................................................................ 12

Pandemics are not new in contract law, and they do not give one party the benefit of the bargain while denying the other his bargained-for consideration. Existing contract law guides the analysis if a pandemic, earthquake, or similar event renders a party unable to perform. *See* Restatement (Second) of Contracts § 377 (1981) (providing restitution in cases of impracticability of performance). And existing contract law forbids unilateral modifications to an agreed-upon contract. *Robinson v. Ada S. McKinley Cmty. Servs., Inc.*, 19 F.3d 359, 363 (7th Cir. 1994).

Northwestern tries to avoid these contract principles, claiming it can retain Plaintiffs' full pre-payment of tuition and fees even though it was unable to provide the agreed-upon in-person classes and on-campus access. Consolidated Complaint ("CC") at ¶ 3 (ECF 20). To be clear: Plaintiffs do not claim Northwestern must provide on-campus classes "under any and all circumstances." Def. Motion to Dismiss Mem. at 1 (ECF 27) ("Mem."). They do not question its decision to close its campus or implement safety protocols. *See* CC at ¶ 3. Instead, Plaintiffs challenge Northwestern's billing decision: charging Plaintiffs full fare for in-person classes and an on-campus experience, but providing only online classes and a virtual campus.

Overwhelmingly, courts addressing similar college tuition cases have denied similar motions to dismiss. *See, e.g., Doe v. Bradley Univ.*, 2020 WL 7634159, at *2 (C.D. Ill. Dec. 22, 2020) ("Courts have largely denied universities' motions to dismiss on nearly identical breach of contract claims because they found there were sufficient facts to allege a contract for in-person

instruction based on university handbooks, catalogs, and brochures.”).[1]

**<u>LEGAL STANDARD</u>**

A motion to dismiss is to be denied if the plaintiff "satisfied the notice pleading standards of Rule 8 and if the facts he has presented would entitle him to relief under any applicable legal theory." *McCullah v. Gadert*, 344 F.3d 655, 659 (7th Cir. 2003). "Specific facts are not necessary." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Instead, Plaintiffs need only "give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). *See Erickson*, 551 U.S. at 93 ("the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests.").

Ignoring the Rule 12 standard, Northwestern attaches no less than seven declarations and

---

[1]     *See also, e.g., Bahrani v. Ne. Univ.*, 2020 WL 7774292 (D. Mass. Dec. 30, 2020); *Bergeron v. Rochester Inst. of Tech.*, 2020 WL 7486682 (W.D.N.Y. Dec. 18, 2020); *In re: Boston Univ. COVID-19 Refund Litig.*, 2021 WL 66443 (D. Mass. Jan. 7, 2021); *Chong v. Ne. Univ.*, 2020 WL 7338499 (D. Mass. Dec. 14, 2020) ("*Chong II*"); *Cross v. Univ. of Toledo*, 2020 WL 4726814 (Ohio Ct. Cl., July 8, 2020); *Doe v. Emory Univ.*, 2021 WL 358391 (N.D. Ga. Jan. 22, 2021); *Ford v. Rensselaer Polytechnic Inst.*, 2020 WL 7389155 (N.D.N.Y. Dec. 16, 2020); *Garland v. Western Michigan Univ.*, No. 20-0063-MK (Mich. Ct. C1. Sept. 15, 2020); *Gibson v. Lynn Univ., Inc.*, 2020 WL 7024463 (S.D. Fla. Nov. 29, 2020); *Grant v. Chapman Univ.*, 2021 WL 684581 (Cal. Super. Jan. 22, 2021); *Hiatt v. Brigham Young Univ.*, 2021 WL 66298 (D. Utah Jan. 7, 2021); *Kishinevsky v. Bd. of Trs. of Met. State Univ. of Denver*, No. 20CV31452 (Colo. Dist. Ct. Nov. 23, 2020); *Little v. Grand Canyon Univ.*, 2021 WL 308940, at *6 (D. Ariz. Jan. 29, 2021); *McCarthy v. Loyola Marymount Univ.*, 2021 WL 268242 (C.D. Cal. Jan. 8, 2021); *McDermott v. The Ohio State Univ.*, 2020 WL 5239892 (Ohio Ct. Cl. July 8, 2020); *Mellowitz v. Ball State Univ. & Bd. Of Trs. of Ball State Univ.*, 2020 Ind. Super. LEXIS 854 (Marion Sup. Ct. Civil Div. 14 Aug. 12, 2020); *Milanov v. Univ. of Mich.*, 2020 Mich. Ct. Cl. LEXIS 1 (Mich. Ct. Cl. July 27, 2020); *Moran v. Stonehill College*, No. 2077CV00431 (Mass. Super. Feb. 16, 2021); *Rhodes v. Embry-Riddle Aeronautical Univ.*, 2021 WL 140708 (M.D. Fla. Jan. 14, 2021); *Rosado v. Barry Univ.*, 2020 WL 6438684, at *4 (S.D. Fla., Oct. 30, 2020); *Salerno v. Florida So. Coll.*, 2020 WL 5583522 (M.D. Fla. Sept. 16, 2020); *Saroya v. Univ. of the Pac.*, 2020 WL 7013598 (N.D. Cal. Nov. 27, 2020); *Smith v. The Ohio State Univ.*, 2020 WL 5694224 (Ohio Ct. Cl., Sept. 9, 2020); *Spiegel v. Trustees of Indiana Univ.*, 2020 Ind. Cir. LEXIS 388 (Monroe Cir. Ct. Nov. 19, 2020); *Verlanga v. Univ. of San Francisco*, 2020 Cal. Super. LEXIS 1785 (Cal. Sup. Ct. Nov. 12, 2020); *Waitt v. Kent State Univ.*, 2020 WL 5894543 (Ohio Ct. Cl. Sept. 28, 2020); *Zahn v. Ohio Univ.*, 2020 WL 6163919, at *3 (Ohio Ct. Cl. Oct. 19, 2020).

twenty-six exhibits to raise new factual issues and dispute the allegations. (ECF 28-34.) Plaintiffs object to these submissions without converting its motion to one for summary judgment and affording them discovery under Rule 56.[2] *See* Plaintiffs Motion to Strike (ECF 40).

## **ARGUMENT**

### I. **Plaintiffs Properly Plead a Breach of Contract**

Northwestern offered to provide certain on-campus classes and access to its on-campus resources in exchange for tuition and fees. CC at ¶¶ 35-41 (quoting promises). Plaintiffs accepted and fully performed, paying Northwestern the full eye-popping tuition and fees. *Id.* at ¶¶ 35 n.8, 42. Northwestern did not provide the promised on-campus courses, hours of instruction, and on-campus access. *Id.* at ¶¶ 6-7, 58-65. Instead of refunding Plaintiffs' payments, Northwestern elected to retain the full amounts. *Id.* at ¶¶ 8, 68, 81-82. Plaintiffs were injured, paying full price but receiving only partial performance. *Id.* This pleads a breach of contract. *Dual-Temp of Illinois, Inc. v. Hench Control, Inc.*, 821 F.3d 866, 869 (7th Cir. 2016) (stating elements).

Northwestern does not dispute that there was a promise for classes of a certain length, which it breached. *See* Section I.A.1, *infra*. Nor does Northwestern dispute that there was a promise for on-campus access, which it also breached. CC at ¶¶ 35-36, 39, 58, 78-80, 82, 100. As such, these claims survive and discovery should move forward.

Instead, Northwestern disputes ***only*** that there was a promise for on-campus classes. Its position is unsupported upon examination of the allegations in the Consolidated Complaint.

---

[2] Plaintiffs respond by citing their allegations and judicially noticeable websites, but do not waive their Rule 56 notice and discovery rights. They seek leave to amend should further response be needed.

A. **Northwestern Promised In-Person Classes and On-Campus Access**

1. *Northwestern's Express Promises*

Much like a product catalog, Northwestern's course catalogs promised classes of a

certain length at a certain physical on-campus location:[3]

| 200-0 | | **New Introductory Courses in History** | | | | |
|-------|----|-----|-----------------|---------|--------|----------|
| 32443 | 20 | TTh | 03:30PM | 04:50PM | LCY111 | Hanretta |
| 32447 | 22 | MW  | 03:30PM | 04:50PM | HRSL06 | Freedman |
| 32448 | 24 | MW  | 02:00PM | 03:20PM | FSK217 | Sowerby  |

CC at ¶ 38. *See also id.* at ¶ 37 (providing example from online catalog).

Before the pandemic and during the registration process, Northwestern explicitly

identified which classes would be delivered online, and which would be delivered on campus.

*See, e.g.,* Spring 2020 Course Catalog (highlights added), cited at CC at ¶ 38.

| 388-0 | | **Field Studies in Business Culture** | | | | | | *GEN ONLINE* | 1.0 4.0 |
|-------|---|--------|---|---------|---------|------------|---------------|-----|
| 31320 | 1 | SEMTBA | M | 07:00PM | 08:30PM | Dorzweiler | *GEN ONLINE* | *D |
| 37929 | 2 | SEMTBA | T | 07:00PM | 08:30PM | Achettu    | *GEN ONLINE* | *D |

During the registration and payment processes, Northwestern offered online classes, but

charged much less in tuition. CC at ¶¶ 72-74. For example,[4] Northwestern students taking two

journalism courses per quarter could pay either $6,121 per unit for the on-campus class, or

$4,665 per unit for the online class. *Id.* at ¶ 74.

Northwestern's policies distinguish between online and on-campus courses, further

supporting Plaintiffs' expectation that online and on-campus courses are different products. For

---

[3] By alleging the specificity of Northwestern's promises, Plaintiffs do not suggest it would be in breach by a de minimis change like moving a class from room 121 to 123.

[4] Northwestern quibbles that no Plaintiff was enrolled at Medill. Mem. at 11. But as Plaintiffs allege, the Medill program is an "example." CC at ¶ 74. To the extent that the Court believes that Plaintiffs should provide more specificity, Plaintiffs request leave to amend.

4

example, an on-campus class received one credit for "[o]ne hour of classroom or direct faculty instruction and a minimum of two hours of out of class student work each week," whereas for "[o]nline and blended classes . . . the University awards one unit of credit when at least nine full hours of work per week are expected . . ." CC at ¶¶ 51, 55.

Northwestern also breached additional promises. For example, Northwestern promised ten weeks of classes for the Spring 2020 quarter. CC at ¶ 52; 2019-2020 Undergraduate Catalog at 44, *available at* https://catalogs.northwestern.edu/archives/2019-2020/pdf/2019-2020-undergraduate.pdf. However, it canceled a week of class, providing only nine. CC at ¶ 58; Casazza Ex. 1 (ECF 29-1).

Northwestern also promised on-campus access, and the Complaint quotes some examples. Its "Director's Welcome" to Plaintiff Greenwald for the Sound Arts and Industries program promised that enrolled students have access to "Northwestern's state-of-the-art sound facilities …." CC at ¶ 33. Its offer letters also promise on-campus access, which Plaintiffs accepted. *Id.* at ¶¶ 43-44. *See* Plaintiff Quiroz Admission Offer Letter (ECF 31-1) ("You will . . . see clients in the Family Institute's own Bette D. Harris Family and Child Clinic."). *See also* 2019-2020 Undergraduate Course Catalog at 7 (ECF 29-3) ("In addition to enjoying numerous opportunities on campus, students benefit from Northwestern's location . . ."); *id.* at 7 (ECF 29-3) ("The six undergraduate schools on the Evanston campus offer the programs and courses described in their respective sections of this catalog."); 2019-2020 Graduate Course Catalog at

5

14 (ECF 29-5) (stating that university facilities are available to enrolled students, but not students on a leave of absence).[5]

### 2. *Northwestern's Implied Promises*

Even if the course catalog, admission letters, and other written documents do not create an express contract, an implied contract was created by the parties' words and conduct – including (i) Northwestern charging higher tuition for on-campus classes and charging fees tied to on-campus services, (ii) Plaintiffs' payment of these on-campus tuition and fees, (iii) Northwestern's demand that Plaintiffs pay tuition and fees before they could register for classes, (iv) its past conduct providing on-campus classes and access, (v) its course catalog, (vi) admissions materials, (vii) course change approval requirements, (viii) credit award policy, (ix) various handbooks, and (x) marketing materials. *See* CC at ¶¶ 22-57; Restatement (Second) of Contracts § 4 (1981) ("A promise . . . may be inferred wholly or partly from conduct.").

Northwestern contends that each standing alone is not enough for an implied contract. Mem. at 10. But Northwestern does not contest that, considering the promises and conduct *together*, there is at least a question of fact as to whether an implied contract was formed. *See Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 14 (1st Cir. 2011) (reversing dismissal; "the

---

[5] *See also* 2019-2020 Student Handbook at 21 ("As members of the University community, all students . . . are expected to . . . model exceptional conduct, character, and citizenship on campus and beyond."), *available at* https://www.northwestern.edu/communitystandards/student-handbook/student-handbook-2019-2020.pdf.

This Court may take judicial notice of Northwestern's websites. *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 944 n.3 (7th Cir. 2010); *Plotzker v. Equifax Info. Services LLC*, 19 C 4554, 2020 WL 1548956, at *4 (N.D. Ill. Apr. 1, 2020).

district court erred when it failed to evaluate the cumulative effect of the factual allegations"). As the Seventh Circuit recognizes, "a formal university-student contract is rarely employed and, consequently, the general nature and terms of the agreement are usually implied, with specific terms to be found in the university bulletin and other publications; custom and usages can also become specific terms by implication." *Ross v. Creighton U.*, 957 F.2d 410, 417 (7th Cir. 1992) (reversing dismissal).

### 3. *Courts Hold Similar Allegations State a Contract Claim.*

"[T]he basic legal relation between a student and a private university or college is contractual in nature. The catalogues, bulletins, circulars, and regulations of the institution made available to the matriculant become a part of the contract." *Ross*, 957 F.2d at 416. *See also Galligan v. Adtalem Glob. Educ. Inc.,* 2019 WL 423356, at *7 (N.D. Ill. Feb. 4, 2019) (denying motion to dismiss claim that handbook promised school is "committed to ensuring that qualified students with disabilities are afforded reasonable accommodations"); *Cairone v. McHenry Cty. Coll.*, 2019 WL 3766112, at *9 (N.D. Ill. Aug. 9, 2019) (same, for code of conduct promising "peaceful pursuit of education" and "reasonable use of College services and facilities").

Courts in other college tuition suits have held that course catalogs that identify the on-campus course location – like the Northwestern course catalog here – state a contract for on-campus classes.[6] *Bradley*, 2020 WL 7634159, at *2 (denying motion to dismiss breach of

---

[6] *Oyoque v. DePaul U.*, No. 20 C 3431, 2021 WL 679231, at *3 (N.D. Ill. Feb. 21, 2021) does not help Northwestern. Unlike Northwestern's course catalog, the DePaul catalog "does not contain any promises that classes will be held in-person or even on campus." *Id.* at *3. Nonetheless, the court allowed plaintiffs to seek leave to amend, noting promises of experiential learning raised at oral argument. *Id.* at *3 n.4, 6.

contract claim based on course catalog indicating that the courses were intended to be on campus); *Salerno*, 2020 WL 5583522, at *2 (same, for "course portal" identifying days, times, and location of courses); *Chong II*, 2020 WL 7338499, *3 (same, for course registration materials indicating instruction at campus locations); *Rosado*, 2020 WL 6438684, at *1 (same); *Grant*, 2021 Cal. Super. LEXIS 3, at *9-10 (same).

As courts addressing similar COVID college tuition claims have held, allegations similar to Northwestern's other materials also state a contract for in-person and on-campus services. *Bradley*, 2020 WL 7634159, at *2 (applying Illinois law, denying motion to dismiss claims based on school's materials which "tout its many resources and facilities — all of which were located on Bradley's campus and thereby imply in-person participation.") (collecting cases); *Hiatt*, 2021 WL 66298, at *4 (denying motion to dismiss based on university's website, marketing materials, and acceptance letter promoting its in-person educational services); *Bergeron*. 2020 WL 7486682, at *8 (same, for school's website); *Rhodes*, 2021 WL 140708 at *5 (same, for school's "publications and related materials that imply a contract for on-campus instruction and services"); *Gibson*, 2020 WL 7024463, *3 (same, for school's policies, publications, invoices, and the parties' course of conduct); *Salerno*, 2020 WL 5583522 at *5 (same, for college publications that "touted its many resources and facilities — all of which were located on the campus thereby implying in- person participation.").

Indeed, "it was reasonable for Plaintiff[s] to expect that when [they were] billed for the Spring 2020 semester, [they] would receive the in-person educational services that were

8

allegedly promised." *Saroya*, 2020 WL 7013598, at *6 (denying motion to dismiss). *See also Rosado*, 2020 WL 6438684, at *3 (holding allegations that school accepted tuition, provided in-person courses until mid-March 2020, and "the backdrop of numerous other documents referring to in-person classes and amenities, are sufficient to establish, at minimum, an implied contract."); *Milanov*, 2020 Mich. Ct. Cl. LEXIS 1, at *15 ("the complaint identifies the parties to the contract, the subject-matter (live, in-person instruction, room and board, and 'fees'), the consideration provided by each side, and each side's obligations."); *Garland*, 2020 Mich. Ct. Cl. LEXIS 7 at *6; *Waitt*, 2020 WL 5894543; *Cross*, 2020 WL 4726814; *Smith*, 2020 WL 5694224, *McDermott*, 2020 Ohio Misc. LEXIS 127, at *6-7.

### 4. *Magic Words Are Not Necessary to Allege a Breach of Contract*

Ignoring the notice pleading standard of Rule 8, Northwestern first gripes that Plaintiffs do not "allege the time and physical location of any course in which they personally were enrolled." Mem. at 8 (internal quotation marks omitted).

Nonsense. Plaintiffs cite the course catalogs, which are incorporated in their Complaint and cover Plaintiffs' courses. CC at ¶¶ 37, 38. Plaintiffs allege they enrolled in and paid for on-campus classes as stated in the catalog, satisfying the notice pleading standard. *See, e.g.,* CC at ¶ 99. They need not include pictures of every catalog page; whether their courses were to be held in room 201 or room 203 does not affect liability. *See* Fed. R. Civ. P. 8(d)(1) ("Each allegation must be simple . . . No technical form is required."); *Hefferman v. Bass*, 467 F.3d 596, 599 (7th Cir. 2006) (reversing dismissal where district court "took an approach that resembled

the Illinois fact pleading rules far more than notice pleading of Rule 8.").

Northwestern then argues that the course catalog is insufficient because it "do[es] not include the phrase 'in person' or any equivalent." Mem. at 8. Plaintiffs disagree; magic words are not required. *Erickson*, 551 U.S. at 93 ("Specific facts are not necessary; the statement need only give the defendant fair notice . . ."). A reasonable reading of the catalog is that the courses would be taught at the location specified. *See also* Northwestern Class Descriptions, Overview ("What information do the class descriptions contain? Information about classes['] . . . teaching methods.").[7] Northwestern is free to argue otherwise to a jury, but not on a motion to dismiss.

### 5. *Northwestern's Reliance on Distinguishable Cases Is Unavailing*

Northwestern ignores the overwhelming weight of authority holding that allegations like Plaintiffs' state a breach of contract claim. *See supra* n.1. Instead, Northwestern relies heavily[8]

---

[7] Class Descriptions, Overview, *available at* www.northwestern.edu/ses/staff/class-descriptions/overview.html (viewed Feb. 18, 2021).

[8] Northwestern also relies on *Galligan, Villareal, Miller, Bissessur, DiPerma, Hassan, Abrams,* and *Student "A"* to no avail. *Galligan* in fact denied the motion to dismiss, holding that while puffery-type promotional statements were not actionable, the handbook's promise that the school is "'committed to ensuring that qualified students with disabilities are afforded reasonable accommodations' is definite enough." *Galligan*, 2019 WL 423356, at *7.

*Villareal* dismissed the student's claim because the alleged promise was made *after* she enrolled. *Villareal v. Chamberlain College of Nursing & Health Scis., Inc.*, 2019 WL 4736488, at *3 (S.D. Tex. Sept. 27, 2019). Here, the alleged promises were made before Plaintiffs enrolled. *Miller* dismissed the student's claim that classes were to be taught three hours a week because the catalog provided only a course description and did not give course times. *Miller v. MacMurray College*, 2011 IL App (4th) 100988-U, ¶¶ 48, 49. Here, Northwestern's catalog provides course times and the on-campus location. In *Bissessur v. Indiana U. Bd. of Trustees*, the complaint "provides no notice for the basis of [plaintiff's] claims aside from a mere recitation of their elements." 581 F.3d 599, 603 (7th Cir. 2009) (beseeching, "What was the contract? The promises made?"). Here, Plaintiffs quote the alleged promises.

*DiPerna* gave no description of the alleged promise. *DiPerna v. Chicago Sch. of Prof. Psychol.*, 2014 WL 4167491, at *3 (N.D. Ill. Aug. 21, 2014) (dismissing with leave to amend). It later permitted the amended complaint to be heard. 2015 WL 361902, at *3 (N.D. Ill. Jan. 27, 2015). Similarly, *Hassan* permitted students to seek leave to amend their complaint, which is still pending. *Hassan v. Fordham U.*,

on *Gociman* and *Lindner*, which are both factually dissimilar. Mem. at 6-9. In *Gociman*, unlike here, the course catalog explicitly stated that it was "not a contract." *Gociman v. Loyola U. of Chicago*, 2021 WL 243573, at \*4 (N.D. Ill. Jan. 25, 2021). *See Workman v. United Parcel Serv., Inc.*, 234 F.3d 998, 1000 (7th Cir. 2000) (holding explicit disclaimer that policy at issue "[wa]s not a contract" barred breach of contract claim). And in *Lindner,* the court dismissed the suit because the student "failed to identify any specific language in the 2019-2020 Catalog," and instead relied on a class attendance policy and her course schedule and syllabi. *Lindner v. Occidental College*, 2020 WL 7350212, \*8 (C.D. Cal. Dec. 11, 2020). Plaintiffs do not make that mistake here. *See* CC at ¶¶ 37, 38.

Not only are *Gociman* and *Lindner* factually dissimilar, but their legal foundation have evaporated. *Gociman* relied on only one COVID college case, *Lindner*, which itself relied on only one COVID college case, *Chong I,* which dismissed the suit with leave to amend. *Gociman*, 2021 WL 243573, at \*3-4; *Lindner*, 2020 WL 7350212, at \*8-9; *Chong v. Ne. U.*, 2020 WL 5847626 (D. Mass. Oct. 1, 2020) ("*Chong I*").

Three days after *Lindner*, the *Chong* court assessed the amended complaint and denied the motion to dismiss, holding sufficient plaintiffs' allegations of the financial responsibility

---

2021 WL 293255, at \*13 (S.D.N.Y. Jan. 28, 2021). *Hassan* did not address allegations like those here, such as the school canceling an entire week of instruction, its distinction among online and on-campus classes in awarding credits, or specific promises of on-campus access such as those made to Plaintiffs Greenwald and Quiroz. CC at ¶ 33, 55, 58; Admission Offer Letter (ECF 31-1). And *Abrams* was decided at summary judgment, not a motion to dismiss. *Abrams v. Illinois College of Podiatric Med.*, 395 N.E.2d 1061, 1066 (Ill. App. 1st Dist. 1979).

Northwestern is a private institution, and sovereign immunity is inapplicable. CC at ¶¶ 1, 17. Thus, equally unconvincing is *Student "A,"* which addressed whether public schools' promises satisfied state sovereign immunity statutes. *Student "A" v. Hogan*, 2021 WL 119083, at \*3 (D. Md. Jan. 13, 2021).

11

agreement, the semester schedule, and class detail documents. *Chong II*, 2020 WL 7338499, at *3. "Drawing all inferences in plaintiffs' favor, the court cannot, as a matter of law, say that no student who read these statements could have reasonably expected that executing the FRA and registering for on campus courses would entitle them to in-person instruction." *Id.*

So too here. Northwestern's seven declarations and twenty-six exhibits only underscore that the fundamental dispute raised by Northwestern is not about the law, but the facts. Drawing all inferences in Plaintiffs' favor, as the Court must, there is an issue of fact as to whether a reasonable person would believe Northwestern promised on-campus classes and access.

### 6. *Northwestern Cannot Change Course Formats without Notice*

As Plaintiffs allege, Northwestern requires course changes be approved in advance, and policy changes must have a 45-day notice and comment period. CC at ¶ 47.

Baldly denying Plaintiffs' allegations, Northwestern insists that it can change its course format without notice. Mem. at 9.[9] Yet Northwestern fails to point to any language stating such. The 2019-2020 graduate course catalog states an intent to create an "adaptable educational infrastructure" and allows changes to "registration and academic program policies," a far cry

---

[9]    Northwestern first gripes that Plaintiffs did not cite evidence for their allegation. Mem. at 9 n.4. Though Plaintiffs need not marshal evidence in their complaint, Plaintiffs provide Northwestern the following (non-exhaustive) links: Course Leaf Scheduling System (explaining approval process and specifying that "Room Characteristics cannot be edited" and "Where enrollment exists -- user cannot . . . adjust . . . meeting patterns"), *available at* www.registrar.northwestern.edu/faculty-staff/resources-for-departmental-staff-schedulers/clss-scheduling-guide.pdf; New Course and Changes to Existing Courses, www.registrar.northwestern.edu/faculty-staff/new-coursechange-an-existing-course.html; University Policy Development Guidelines (requiring approval process for policy changes), *available at* https://policies.northwestern.edu/docs/policy-development-guidelines-final.pdf.

Northwestern also argues that three of the four plaintiffs agreed that classes would be conducted remotely. Mem. at 9. This argument is addressed in Section I.B., *infra*.

from allowing course format changes outside the required procedures.

Northwestern seems to get closer with the printed 2019-2020 undergraduate catalog, which allows changes to "any statement in this catalog concerning . . . curricula[] and courses." Mem. at 9. But this too fails. The print catalog more specifically addresses course changes twelve pages later, explaining that courses might be changed after publication of the print catalog and that the online course catalog is the "complete and updated" course listing:

> Although the course listings in this catalog are as complete and exact as is possible at the time of publication, some changes may occur later, and courses may be dropped or added. The class schedule for each quarter is posted on CAESAR and contains a complete and updated listing of classes offered each quarter. . .

2019-20 Undergraduate Course Catalog at 22, *available at* https://catalogs.northwestern.edu/ archives/2019-2020/pdf/2019-2020-undergraduate.pdf. As Plaintiffs allege, the online course catalog stated that Plaintiffs' classes were to be on-campus. CC at ¶ 37.

At most, Northwestern cites ambiguous language for a fact-finder to consider. *In re Modern Dairy of Champaign, Inc.*, 171 F.3d 1106, 1109 (7th Cir. 1999) ("When a contract is ambiguous, . . . the determination of the contract's meaning becomes a matter for trial."). For example, Northwestern's argument rubs hard against its June 16, 2020 promise that the online catalog "will clearly identify which courses will have in-person components and which will be entirely remote." Yates Decl. Ex. 6 (ECF 34-9).

## B. Students Did Not "Accept" Online Classes

Northwestern then claims that the allegations "conclusively show" Plaintiffs "accepted"

13

online classes. Mem. at 11. Northwestern is wrong both as to the law and the facts.

### 1. At time of enrollment, students did not know their classes would be only online.

*Spring Quarter.* Northwestern argues that on March 11, 2020, it told students that Spring 2020 classes would be online. Mem. at 11-12. Not so. On March 11, Northwestern did not identify which courses would be online. Instead, it told students that classes "lend[ing] themselves to remote instruction" would be online. Decl. Yates Ex. 1 (ECF 34-1). Northwestern did not tell students that classes would be online for the remainder of the quarter, but instead announced that courses would be online for three weeks; April 4, 2020 until April 25, 2020. *Id.* By April 24, the last day to withdraw for a partial refund, Casazza Decl. Ex. 1 (ECF 29-1), students *still* did not know whether the remainder of classes would be online. Instead, according to its March 11 announcement, Northwestern would not decide whether to resume in-person instruction until April 27, 2020, Decl. Yates Ex. 1, three days after the April 24 deadline.

*Fall Quarter.* Northwestern inaccurately claims that students knew three months beforehand that their Fall 2020 Quarter courses would be provided online. Mem. at 12. Not true. Instead, on June 16, 2020, Northwestern informed students that "[b]y the time registration begins" in late July or August, "class schedules will clearly identify which courses will have in-person components and which will be entirely remote." CC at ¶¶ 62, 63; Yates Decl. Ex. 9 (ECF 34-9). *See also* Yates Decl. Ex. 8 at 3 (ECF 34-8) ("*some* courses will be delivered remotely," and Northwestern's "goal is to return as much of our community to campus as possible.") (emphasis added). If a student selected a course that was identified as being provided

14

online, Plaintiffs do not dispute that Northwestern did not promise to provide that course on-campus. However, this does not end the breach of contract inquiry. First, if a Fall 2020 quarter course was to be provided on-campus and it was not, Northwestern *did* breach its promise of on-campus classes. *See* CC at ¶ 65. Second, Northwestern still breached its promise that students would have access to on-campus facilities and services. *See* CC at ¶¶ 35-36, 100.

### 2. *Students were not free to reject online classes.*

Northwestern assumes that, because students did not withdraw once they learned their courses went online, they necessarily "accepted" online courses – and somehow waived any claim they had to the alleged breach. *See* Mem. at 11-12. Not so. Students cannot simply withdraw one quarter and return the next. They must apply for readmission.[10] *See also* CC at ¶¶ 66-67. Northwestern gave students not a choice but an ultimatum: "accept our last-minute contract modification or leave the program." *See Rosado*, 2020 WL 6438684, at *5 (denying motion to dismiss similar COVID tuition suit; school "has not provided sufficient support for its position that [plaintiff] was required to threaten [school], risk financial loss, and disrupt [his] academic career in order to preserve her contractual remedies."); *Spiegel*, 2020 Ind. Cir. LEXIS 388, at *8 (same). *See also Robinson*, 19 F.3d at 363 ("The Illinois Supreme Court has held that

---

[10] 2019-2020 Undergraduate Catalog at 26 ("Undergraduate students who have not registered for one or more quarters of an academic year must file an application to reenter . . ."), *available at* https://catalogs.northwestern.edu/archives/2019-2020/pdf/2019-2020-undergraduate.pdf; 2019-2020; Graduate Catalog at 19 ("Degree-seeking students who miss one or more quarters of registration . . . will be discontinued . . . The decision to readmit a former student is at the discretion of the program"), *available at* https://catalogs.northwestern.edu/archives/2019-2020/pdf/2019-2020-tgs.pdf. Northwestern does not address these facts, instead shrugging off Plaintiffs' allegations "given how frequently students transfer and withdraw from universities." Mem. at 13. No alleged facts support its assumption that students "frequently" transfer or withdraw from the school, and the issue is not ripe on a motion to dismiss.

a party may not unilaterally modify a contract.").

Instead of addressing the facts, Northwestern relies on *Eisele*, where the school changed its terms *before* the students accepted, not after like Northwestern. *Eisele v. Ayers*, 381 N.E.2d 21, 25, 26 (Ill. App. 1st Dist. 1978) (dismissing students' suit for school's 1977-78 tuition increase because the school changed its rate before the students enrolled).

### 3. *Northwestern cannot claim a waiver on a motion to dismiss.*

Citing a declaration claiming facts going beyond the Complaint, *see* Plaintiffs' Motion to Strike, Northwestern claims that three of the four Plaintiffs "expressly agreed" that tuition and fees for the Fall 2020 and Winter 2020 quarters would not be refunded due to online classes. Mem. at 12, citing Casaza Decl. at ¶ 9. Northwestern's argument does not affect Plaintiff Polley's claims, nor Plaintiff Veeravalli's and Plaintiff Greenwald's Spring 2020 quarter claims.

In essence, Northwestern raises the defenses of waiver, an affirmative defense that cannot be raised on a motion to dismiss.[11] Fed. R. Civ. P. 8(c) (listing waiver as an affirmative defense); *Deckard v. Gen. Motors Corp.*, 307 F.3d 556, 560 (7th Cir. 2002) (reversing dismissal; "the existence of a defense does not undercut the adequacy of the claim."); *In re Lexi Dev. Co., Inc.*, 453 B.R. 440, 446 (S.D. Fla. 2011) (similar); *Optima Media Group Ltd. v. Bloomberg L.P.*, 383 F. Supp. 3d 135, 150 (S.D.N.Y. 2019) (similar).

Northwestern's waiver claim raises too many unanswered questions, and motion to

---

[11] Northwestern's defense is also unlikely to succeed. *See, e.g., VC Mgt., LLC v. Reliastar Life Ins. Co.*, 195 F. Supp. 3d 974, 993, 994 (N.D. Ill. 2016) (granting summary judgment to plaintiff, holding his failure to object to contract modification was not a waiver).

dismiss is no place to try facts. *See, e.g., Gibson*, 2020 WL 7024463, at *5 (denying motion to dismiss similar COVID college tuition suit based on school's similar argument because "[i]t is not apparent from the allegations . . . what information was conveyed to students . . . or what actions, if any, Plaintiff took upon learning of the transition. Nor do the pleadings show that Plaintiff knew he could reject the contract at any point during the Spring semester.").

## II. Plaintiffs Do Not Claim Educational Malpractice

The underlying theory of Plaintiffs' claim is that Northwestern failed to provide the in-person classes promised, CC at ¶¶ 3, 9, 72-73, 107-08, not that Northwestern's online classes were sub-par or malpractice. Nonetheless, Northwestern attempts to reframe Plaintiffs' claims as "challeng[ing] the quality of the education Northwestern provided" and therefore sounding in "educational malpractice." Mem. at 13-14.

As the vast majority of courts addressing similar COVID college tuition claims have held, allegations like Plaintiffs' do not assert educational malpractice.[12] As *Rosado* put it: "This is

_____

[12] Northwestern incorrectly asserts that *Lindner* and *Gociman* held that similar claims were barred as educational malpractice. *See* Mem. at 13. Instead, *Lindner* and *Gociman*, considered those claims under contract law. *See supra* section I.A.5; *Lindner*, 2020 WL 7350212 at *8 (breach of contract claim based on admission policy); *Gociman*, 2021 WL 243573 at *4 (same, based on course catalog). They held *other* claims that online classes were "subpar" or "not worth the amount charged" could be barred as educational malpractice. *Lindner*, 2020 WL 7350212 at *7. *See also Gociman*, 2021 WL 243573 at *3.

Similarly, Northwestern's reliance on *Basso* and *Gokool* is misplaced. Mem. at 14 n.9. In *Basso*, the students brought a classic educational malpractice suit, claiming that the film school's instructors were not sufficiently experienced and taught using hand-held cameras, its facilities lacked a cafeteria and elevator, and classes were interrupted by construction noise. *Basso v. New York Univ.*, 2020 WL 7027589, at *2 (S.D.N.Y. 2020). Nonetheless, *Basso* did not bar the claims as educational malpractice, and instead granted summary judgment because plaintiffs lacked sufficient evidence of injury. *Id.* at *15. The plaintiff in *Gokool* brought a similarly classic educational malpractice claim, alleging the school should not have expelled her due to her failure to maintain adequate grades. *Gokool v. Oklahoma City Univ.*, 2016 WL 10520949, at *1 (W.D. Okla. 2016). Even here, the court did not bar her claims regarding the school's

17

kind of like purchasing a Cadillac at full price and receiving an Oldsmobile. Although both are fine vehicles, surely it is no consolation to the Cadillac buyer that the 'Olds' can also go from Point A to Point B." 2020 WL 6438684 (denying motion to dismiss similar COVID college tuition suit). *See also Rhodes*, 2021 WL 140708 at *6 (comparing student's similar claims to a theatergoer who paid to see Hamilton on Broadway but was only provided with a recording of Hamilton on Disney+); *Saroya*, 2020 WL 7013598, at *4 ("his claim is not that UOP failed to provide students with an adequate education, but that it failed to provide certain services as promised."); *Bahrani*, 2020 WL 7774292 at *2, n.1 (plaintiffs "challenge the fact of the switch from in-person to online instruction, not the *quality* of the online education..."); *Cross,* 2020 WL 4726814, at *3 ("A trial court's role, however, generally does not include recasting a party's pleadings."); *Salerno,* 2020 WL 5583522, at *5; *Milanov*, 2020 Mich. Ct. Cl. LEXIS 1, *8-9; *Ford*, 2020 WL 7389155, at *6; *Zahn*, 2020 WL 6163919, *2; *Gibson*, 2020 WL 7024463, at *4; *Waitt*, 2020 WL 5894543, at *1; *Garland*, 2020 Mich. Ct. Cl. LEXIS 7.

The measure of damages is the different market value between what Plaintiffs paid for (in-person education) and what they received (online education).[13] As Northwestern's own rates

---

inadequate responses to her post-expulsion requests. Instead, those claims were dismissed on contract grounds; her contract with the school ended once she was expelled. *Id.* at *3.

[13]    That the Consolidated Complaint refers to the different nature of online instruction does not imply that online classes were sub-par or malpractice. *See Grant*, 2021 Cal. Super. LEXIS 3, at *8 ("Notwithstanding Plaintiff's allegations comparing remote learning to in-person learning, ruling on these issues would not require an inquiry into pedagogical methods, the quality of Defendant's instructors and curriculum . . .") (internal punctuation omitted); *Smith*, 2020 WL 5694224, at *2 ("The mere mention of possible consequences to plaintiff's educational or professional future does not render plaintiff's complaint a claim for educational malpractice."); *McDermott*, 2020 Ohio Misc. LEXIS 127, at *5 (same).

    In any event, the measure of damages is better decided after evidence has been presented. *See, e.g., In re Boston U.*, 2021 WL 66443, at *2 n.5.

show, online courses have a lower market value. CC at ¶ 74. This does not mean online courses are legally deficient; they are just not what Plaintiffs chose. *Verlanga,* 2020 Cal. Super. LEXIS 1785 at *10 ("[T]his case is not about the quality of the [University's] education . . . This case is simply about an alleged promise to provide in-person learning that was allegedly breached.").

## III. Plaintiffs Properly Claim Unjust Enrichment in the Alternative

After arguing for thirteen pages that there is no contract that required in-person classes, Northwestern changes tack and argues Plaintiffs' unjust enrichment claim must be dismissed because their claims are covered by contract. Mem. at 14.

Yet Plaintiffs explicitly allege the unjust enrichment claim "in the alternative" to their breach of contract claim, CC at ¶ 110, as Rule 8(a)(3) allows. Fed. R. Civ. P. 8(a)(3) (party's demand for relief "may include relief in the alternative or different types of relief."). *CNA Int'l Inc. v. Guangdong Kelon,* 2007 WL 9817862, *3 (N.D. Ill. 2007) (denying motion to dismiss).

As other courts addressing similar COVID college tuition claims have held, "since the existence of the underlying contract is in dispute, it would be premature for the Court to dismiss Plaintiff[s'] unjust enrichment claim pled in the alternative." *Bradley,* 2020 WL 7634159, at *4. *See also Bahrani,* 2020 WL 7774292, at *3; *Chong II,* 2020 WL 7338499, at *4; *Bergeron,* 2020 WL 7486682, at *9; *Gibson,* 2020 WL 7024463, at *6; *Rosado,* 2020 WL 6438684, at *5-6.

Moreover, even if there is *some* contractual relationship between the parties, "the precise meaning of the contractual terms, a question of fact for this ambiguous contract, will need to be determined before a comparison to the quasi-contractual claims can be made." *Argonaut Ins. Co.*

19

*v. Broadspire Servs., Inc.*, 2008 WL 4346418, \*4 (N.D. Ill. Mar. 25, 2008) (denying motion to dismiss). *Accord Indiana Harbor Belt R. Co. v. Pielet Bros. Scrap Iron & Metal*, 676 F. Supp. 849, 855 (N.D. Ill. 1987) (denying summary judgment to defendant); *Sullivan v. Alcatel-Lucent USA, Inc.*, 2013 WL 228244, at \*5 (N.D. Ill. Jan. 22, 2013) (denying motion to dismiss).

Finally, Northwestern's argument that it did not violate the principles of justice must be rejected at this stage. *See* Mem. at 15; CC at ¶¶ 12, 111-116 (alleging Northwestern's conduct was unjust). Whether Northwestern's conduct was equitable is a question of fact that is not resolvable on a motion to dismiss. *See*, *e.g.*, *Muehlbauer v. General Motors Corp.*, 431 F. Supp. 2d 847, 855 (N.D. Ill. 2006) (denying dismissal, reasoning that "[t]he adequacy of the recall, as well as the sufficiency of any return of benefits, also present questions of fact."); *Rosado*, 2020 WL 6438684, at \*4 (rejecting similar defense to unjust enrichment claim; "[t]he question is not whether [the university] was justified in closing its campus due to an unforeseen pandemic. Rather, the question is where that risk (i.e., the financial burden) should be contractually allocated. That is what this lawsuit is about."); *Ford*, 2020 WL 7389155, at \*9 (similar).

## CONCLUSION

In line with Rule 8's notice pleading standard, Plaintiffs did not present every piece of evidence in their complaint. If this Court is inclined to grant the motion in whole or in part, Plaintiffs respectfully request leave to amend. Fed. R. Civ. P. 15(a) ("The court should freely give leave [to amend pleading] when justice so requires.").

20

Dated: March 8, 2021

/s/ Yvette Golan
Yvette Golan
**THE GOLAN LAW FIRM PLLC**
2000 M Street, N.W., Suite #750-A
Washington, DC 20036
(866) 298-4150, ext. 101
(928) 441-8250 (FAX)
ygolan@tgfirm.com

James A. Francis
John Soumilas
David A. Searles
Edward H. Skipton
**FRANCIS MAILMAN SOUMILAS, P.C.**
1600 Market Street, Suite 2510
Philadelphia, PA 19103
(215) 735-8600
(215) 940-8000 (FAX)
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
dsearles@consumerlawfirm.com
eskipton@consumerlawfirm.com

Katrina Carroll
**CARLSON LYNCH LLP**
111 West Washington Street
Suite 1240
Chicago, IL 60602
(312) 750-1265
klally@carlsonlynch.com
kcarroll@carlsonlynch.com

Edward W. Ciolko
**CARLSON LYNCH LLP**
1133 Penn Avenue 5th Floor
Pittsburgh, PA 15222
(412) 322-9243
(412) 231-0246 (FAX)

21

eciolko@carlsonlynch.com

Jeffrey K. Brown, Esq.(pro hac vice forthcoming)
Michael Tompkins, Esq.
**LEEDS BROWN LAW, P.C.**
One Old Country Road, Suite 347
Carle Place, NY 11514
(516) 873-9550
jbrown@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com

Daniel A. Edelman
Cathleen M. Combs
Kasun Wijegunawardana
**EDLEMAN, COMBS, LATTURNER &
GOODWIN LLC**
20 South Clark St., Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com
dedelman@edcombs.com
ccombs@edcombs.com
kwije@edcombs.com

*Counsel for Plaintiffs*

22