**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NATHANIEL POLLEY, NANCY QUIROZ, SURYA VEERAVALLI, and DANIEL GREENWALD, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> NORTHWESTERN UNIVERSITY, <br><br> Defendant. | Civil Action No. 1:20-cv-04798 <br> Honorable Judge Harry D. Leinenweber |

**DEFENDANT NORTHWESTERN UNIVERSITY'S RESPONSE
IN OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE**

**TABLE OF CONTENTS**

Page

INTRODUCTION ...........................................................................................................................1

ARGUMENT .................................................................................................................................1

I.     The Court May Properly Consider the Exhibits Attached to Northwestern's Motion
       to Dismiss..........................................................................................................................2

       A.     All of Northwestern's Exhibits are Referenced in Plaintiffs' Complaint
              and Central to their Claims. .................................................................................4

       B.     Plaintiffs' Specific Challenges to Five Exhibits Fail. ...........................................7

              1.     Paragraphs 7-13 of and Exhibit 8 to the Casazza Declaration are
                     Referenced in Plaintiffs' Complaint and Central to Their Breach of
                     Contract Claim. .........................................................................................7

              2.     Exhibit 2 to the Rastogi Declaration is Referenced in Plaintiffs'
                     Complaint and Central to Quiroz's Claims................................................9

              3.     Exhibits 2, 6, and 7 to the Yates Declaration are Referenced in
                     Plaintiffs' Complaint and Central to Their Claims. .................................12

II.    Plaintiffs Are Not Entitled to Discovery to Respond to Northwestern's Motion. ..............13

CONCLUSION.............................................................................................................................15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abcarian v. McDonald*,
617 F.3d 931 (7th Cir. 2010)............................................................................... 12

*Allstate Life Ins. Co. v. Peoplesoft, Inc.*,
No. 03-7025, 2004 WL 1375383 (N.D. Ill. May 26, 2004) ........................... 6, 7, 12

*Bland v. Edward D. Jones & Co., L.P.*,
375 F. Supp. 3d 962 (N.D. Ill. 2019) .................................................................. 12

*Bogie v. Rosenberg*, 705 F.3d 603 (7th Cir. 2013) ................................................ 11, 12

*Champaign-Urbana Healthcare, LLC v. Pryde*,
No. 20-2084, 2020 WL 5249117 (C.D. Ill. Aug. 12, 2020)...................................... 1

*Colander v. Metro. Life Ins. Co.*,
No. 17-2601, 2017 WL 3816100 (N.D. Ill. Aug. 31, 2017) ...................................... 3

*Cortec Indus., Inc. v. Sum Holding, L.P.*,
949 F.2d 42 (2d Cir. 1991)................................................................................. 14

*Doe v. Columbia Coll. Chi.*,
933 F.3d 849 (7th Cir. 2019)............................................................................... 12

*Ennenga v. Starns*,
677 F.3d 766 (7th Cir. 2012)............................................................................... 13

*Hecker v. Deere*,
556 F.3d 575 (7th Cir. 2009)................................................................................. 2

*Int'l Star Registry of Ill. v. Omnipoint Mktg., LLC*,
No. 05-6923, 2006 WL 2598056 (N.D. Ill. Sept. 6, 2006) ....................................... 8

*Irmer v. Reinsdorf*,
No. 13-2834, 2014 WL 2781833 (N.D. Ill. June 19, 2014)....................................... 2

*Levenstein v. Salafsky*,
164 F.3d 345 (7th Cir. 1998)................................................................................. 3

*Long v. Fed. Home Loan Mortg. Corp.*,
Nos. 16-03072 & 16-04617, 2017 WL 1178531 (N.D. Ill. Mar. 30, 2017).............. 9

*Metz v. Joe Rizza Imports, Inc.*,
700 F. Supp. 2d 983, 988 (N.D. Ill. 2010) ............................................................ 3

*Minch v. City of Chi.*,
486 F.3d 294 (7th Cir. 2007) ........................................................................................... 7

*Owens Trophies, Inc. v. Bluestone Designs & Creations, Inc.*,
No. 12-7670, 2014 WL 5858261 (N.D. Ill. Nov. 12, 2014) ......................................... 3

*Owens v. St. Anthony Med. Ctr., Inc.*,
No. 14-4068, 2015 WL 3819086 (N.D. Ill. June 18, 2015) ...................................... 1, 2

*Putzier v. Ace Hardware Corp.*,
50 F. Supp. 3d 964 (N.D. Ill. 2014) ............................................................................ 7

*Ross v. Creighton Univ.*,
957 F.2d 410 (7th Cir. 1992) ............................................................................. 4, 7, 13

*Squires–Cannon v. White*,
864 F.3d 515 (7th Cir. 2017) ....................................................................................... 14

*Steigmann v. Democratic Party of Ill.*,
406 F. Supp. 2d 975 (N.D. Ill. 2005) ........................................................................... 9

*Tierney v. Vahle*,
304 F.3d 734 (7th Cir. 2002) .................................................................................. 3, 14

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,
987 F.2d 429 (7th Cir. 1993) ............................................................................... passim

*Wright v. Associated Ins. Cos. Inc.*,
29 F.3d 1244 (7th Cir. 1994) .................................................................................. 3, 7

**Rules**

Fed. R. Civ. P. 10 ......................................................................................................... 12

Fed. R. Civ. P. 12 ................................................................................................... 2, 3, 13

Fed. R. Civ. P. 56 ......................................................................................................... 13

Fed. R. Evid. 901 .................................................................................................... 10, 12

In their complaint, plaintiffs rely on a broad universe of alleged contractual documents to support their contract claim that Northwestern promised them in-person education and services under any and all circumstances—including a deadly airborne pandemic. *See, e.g.*, Compl., ¶¶ 36, 99. Faced with documents referenced in and central to their complaint that contradict their claims, plaintiffs now attempt to redraw the boundaries of that universe. While conceding that this Court may consider the vast majority of Northwestern's exhibits in ruling on Northwestern's motion to dismiss, plaintiffs attempt to evade dismissal by surgically excising contractual language that they (correctly) perceive as defeating their claims. The self-serving lines plaintiffs seek to draw contravene Seventh Circuit law and plaintiffs' own allegations and arguments, which together demonstrate that each of the disputed exhibits is properly before the Court at this stage. This Court should reject plaintiffs' transparent attempt to eliminate relevant contractual language from the record, and deny plaintiffs' motion.

## ARGUMENT

In the Seventh Circuit, motions to strike are generally disfavored, *see Owens v. St. Anthony Med. Ctr., Inc.*, No. 14-4068, 2015 WL 3819086, at *3 (N.D. Ill. June 18, 2015), "as they consume scarce judicial resources and may be used for dilatory purposes," *Champaign-Urbana Healthcare, LLC v. Pryde*, No. 20-2084, 2020 WL 5249117, at *1 (C.D. Ill. Aug. 12, 2020) (cleaned up). Despite obtaining an extra five pages for their opposition to Northwestern's motion to dismiss, plaintiffs nevertheless have filed a separate motion to strike paragraphs 7-13 of and Exhibit 8 to the Casazza Declaration, Exhibit 2 to the Rastogi Declaration, Exhibits 2, 6, and 7 to the Yates Declaration, and any corresponding arguments in Northwestern's supporting memorandum. Mot. at 1, 3, 8–9. At the same time, they concede that many similar exhibits are properly before the Court, *id.* at 3, and (erroneously) rely on those exhibits in their own opposition to Northwestern's motion, *e.g.*, Dkt. 41 at 5–6, 11 n.8, 13–14.

1

Plaintiffs offer no genuine basis to distinguish the five exhibits they selectively target from the twenty-one exhibits they concede were properly submitted.  Their motion should be denied.

**I.      The Court May Properly Consider the Exhibits Attached to Northwestern's Motion to Dismiss.**

The exhibits Northwestern has attached to its motion to dismiss are properly before the Court, because they are central to plaintiffs' breach of contract claim.  In moving to strike their cherry-picked set of five exhibits, plaintiffs rely on Federal Rule of Civil Procedure 12(d), which provides that if "matters outside the pleadings are presented to and not excluded by the court" on a Rule 12(b)(6) motion, the motion should be converted to one for summary judgment.  Mot. at 2. It is well-established in the Seventh Circuit that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993); *Owens*, 2015 WL 3819086, at *3–4 (denying motion to strike exhibit attached to defendant's motion to dismiss under this standard).  The Seventh Circuit has been "relatively liberal" in interpreting the scope of this rule.  *Hecker v. Deere*, 556 F.3d 575, 582 (7th Cir. 2009) (collecting cases).

Accordingly, courts in this district have held that "[t]his exception is especially applicable in cases interpreting a contract." *Irmer v. Reinsdorf*, No. 13-2834, 2014 WL 2781833, at *6 (N.D. Ill. June 19, 2014); *Venture Assocs.*, 987 F.2d at 431–32 (considering documents submitted with a motion to dismiss a contract claim because "they constitute[d] the core of the parties' contractual

2

relationship").[1]  The Seventh Circuit has encouraged district courts to consider relevant documents at the motion to dismiss stage to prevent a "plaintiff [from] evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proved that his claim had no merit." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002); *accord Colander v. Metro. Life Ins. Co.*, No. 17-2601, 2017 WL 3816100, at *3 (N.D. Ill. Aug. 31, 2017) ("The purpose of allowing courts to consider certain documents attached to a motion to dismiss 'is to prevent parties from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents.'"); *Owens Trophies, Inc. v. Bluestone Designs & Creations, Inc.*, No. 12-7670, 2014 WL 5858261, at *2 (N.D. Ill. Nov. 12, 2014) ("[I]t would be totally wasteful to uphold a claim on the false premise created by less than complete documentation when delayed consideration of the remaining documents would lead to dismissal of that claim." (cleaned up)).

Northwestern's exhibits fall squarely within this rule.  Plaintiffs allege a breach of contract claim against Northwestern, Compl, ¶¶ 97–108, but did not attach any of the relevant contractual documents, despite selectively quoting from several of them throughout their complaint, *see generally id.*  As explained in more detail below, Northwestern's exhibits—"which constitute the core of the parties' contractual relationship," *see Venture Assocs.*, 987 F.2d at 431–32—are both referenced in the complaint and central to plaintiffs' contract claim.

---

[1] *Metz v. Joe Rizza Imports, Inc.*, cited by plaintiffs, emphasizes that this exception to Rule 12(d) is "aimed at cases interpreting . . . a contract," where, as here, the plaintiffs' claims are "contingent upon the interpretation of a document."  700 F. Supp. 2d 983, 988 (N.D. Ill. 2010) (distinguishing applicability of rule to contract claims from workplace harassment and discrimination claims). Plaintiffs' other authorities are in accord.  *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998); *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

### A. All of Northwestern's Exhibits are Referenced in Plaintiffs' Complaint and Central to their Claims.

In a breach of contract action, the documents that comprise the parties' contractual relationship are, by definition, central to the plaintiffs' claim, because they "constitute the core of the parties' contractual relationship." *Venture Assocs.*, 987 F.2d at 431–32 (affirming district court's denial of motion to exclude plaintiff's "proposed letter of intent and [] related letters"). Plaintiffs and Northwestern agree that "[t]he basic legal relation between a student and a private university or college is contractual in nature," and that "[t]he catalogues, bulletins, circulars, and regulations of the institution made available to the matriculant become a part of the contract." Dkt. 41 at 7 (quoting *Ross v. Creighton Univ.*, 957 F.2d 410, 416 (7th Cir. 1992)); *see also* Dkt. 27 at 5. Indeed, plaintiffs expressly allege that their contract with Northwestern can be found in Northwestern's "school policies, course catalog, course schedule, representations, admission agreement, acceptance letters, [and] registration materials." Compl., ¶ 99; *see also id.*, ¶ 36 ("Northwestern's promise to provide in-person and on-campus educational services can be found in material materials [sic], application materials, admission matters, registration materials, and other documents that detail and reference the services that Northwestern agreed to provide and make available in exchange for the payment of tuition and fees.").

Northwestern's exhibits consist of: (1) Northwestern's course catalogs and academic calendars, *see* Dkt. 29, Casazza Decl., Exs. 1–6, (2) Northwestern's Policy on Awarding Credit, *see id.*, Ex. 7;[2] (3) a Community Expectations Agreement that three of the four plaintiffs executed

---

[2] Northwestern disputes that its Policy on Awarding Credit, Casazza Decl., Ex. 7, is part of its contract with plaintiffs and other students, because it is directed solely to faculty members. *See* Dkt. 27 at 9–10. Nevertheless, it is directly quoted in plaintiffs' complaint, *see* Compl., ¶¶ 51–55, and central to plaintiffs' contract claim against Northwestern because they (incorrectly) allege that it contains a promise to students to provide in-person instruction, *see id.*; Dkt. 41 at 4–5.

when registering for the Fall 2020 Quarter, *see id.*, Ex. 8, (4) Northwestern's admission offers to plaintiffs, *see* Dkt. 30, Korzeniowski Decl., Ex. 1; Dkt. 31, Rastogi Decl., Ex. 1; Dkt. 32, Watson Decl., Ex. 1; Dkt. 33, West Decl., Ex. 1, and (5) communications that Northwestern emailed to students or posted to its website during the relevant time period, *see* Rastogi Decl., Ex. 2; Dkt. 34, Yates Decl., Exs. 1–11. Those are precisely the types of documents plaintiffs allege comprise the parties' contract.

In fact, as Northwestern shows in the following table, each contractual document attached to Northwestern's motion is, at a minimum, referenced in plaintiffs' complaint, and several are directly quoted or hyperlinked:

| Exhibit | References in Complaint and Other Documents Referenced in Complaint | Challenged by Plaintiffs |
|---|---|---|
| 2019-2020 Academic Calendar (Casazza Decl., Ex. 1) | Referenced at ¶¶ 36, 99; also referenced in course catalogs (cited in ¶¶ 36, 37, 38, 99) | |
| 2020-2021 Academic Calendar (Casazza Decl., Ex. 2) | Referenced at ¶¶ 36, 99; also referenced in course catalogs (cited in ¶¶ 36, 37, 38, 99) | |
| 2019-2020 Undergraduate Catalog (Excerpts) (Casazza Decl., Ex. 3) | Referenced at ¶¶ 36, 37, 38 (hyperlinked, snapshot included), 99 | |
| 2020-2021 Undergraduate Catalog (Excerpts) (Casazza Decl., Ex. 4) | Referenced at ¶¶ 36, 37, 38, 99 | |
| 2019-2020 Graduate Catalog (Excerpts) (Casazza Decl., Ex. 5) | Referenced at ¶¶ 36, 37, 38 (hyperlinked), 99 | |
| 2020-2021 Graduate Catalog (Excerpts) (Casazza Decl., Ex. 6) | Referenced at ¶¶ 36, 37, 38, 99 | |
| Policy on Awarding Credit (Casazza Decl., Ex. 7) | Referenced at ¶¶ 51–55 (quoted/hyperlinked) | |
| Community Expectations Agreement (Casazza Decl., ¶¶ 7–13 and Ex. 8) | Referenced at ¶¶ 36, 99; included in 2020-2021 undergraduate course catalog (referenced at ¶¶ 36, 37, 38, 99) | X |
| Polley Admission Letter (Korzeniowski Decl., Ex. 1) | Referenced at ¶¶ 23, 36, 41, 43, 99 | |

| | | |
|---|---|---|
| Quiroz Admission Letter (Rastogi Decl., Ex. 1) | Referenced at ¶¶ 23, 36, 41, 43, 99 | |
| July 16, 2020 Email from D. Breunlin to incoming Marriage and Family Therapy students (Rastogi Decl., Ex. 2) | Referenced at ¶¶ 36, 66, 99 | X |
| Undergraduate admission letter template (Watson Decl., Ex. 1) | Referenced at ¶¶ 23, 36, 41, 43, 99 | |
| Greenwald admission letter (West Decl., Ex. 1) | Referenced at ¶¶ 23, 36, 41, 43, 99 | |
| March 11, 2020 communication (Yates Decl., Ex. 1) | Referenced at ¶¶ 2, 36, 58, 66, 99 | |
| March 12, 2020 email (Yates Decl., Ex. 2) | Referenced at ¶¶ 36, 66, 99 | X |
| March 19, 2020 communication (Yates Decl., Ex. 3) | Referenced at ¶¶ 36, 66, 99 | |
| March 20, 2020 communication (Yates Decl., Ex. 4) | Referenced at ¶¶ 36, 66, 99 | |
| March 26, 2020 communication (Yates Decl., Ex. 5) | Referenced at ¶¶ 36, 66, 99 | |
| March 31, 2020 communication (undergraduate) (Yates Decl., Ex. 6) | Referenced at ¶¶ 36, 66, 99 | X |
| March 31, 2020 communication (graduate) (Yates Decl., Ex. 7) | Referenced at ¶¶ 36, 66, 99 | X |
| May 22, 2020 communication (Yates Decl., Ex. 8) | Referenced at ¶¶ 36, 66, 99 | |
| June 16, 2020 communication (Yates Decl., Ex. 9) | Referenced at ¶¶ 36, 62 (quoted/hyperlinked), 63 (hyperlinked), 65, 66, 99 | |
| July 22, 2020 communication (Yates Decl., Ex. 10) | Referenced at ¶¶ 36, 66, 99 | |
| July 31, 2020 communication (Yates Decl., Ex. 11) | Referenced at ¶¶ 36, 66, 99 | |

Because each of Northwestern's exhibits is incorporated into plaintiffs' complaint under both plaintiffs' definition of the contract between a university and its students, and that of Illinois law, the Court may properly consider each exhibit at this stage. *See Allstate Life Ins. Co. v.*

6

*Peoplesoft, Inc.*, No. 03-7025, 2004 WL 1375383, at *2 (N.D. Ill. May 26, 2004) ("[T]he contract that [plaintiff] has referred to in its complaint is central to [plaintiff's breach of contract] claim.").[3]

### B. Plaintiffs' Specific Challenges to Five Exhibits Fail.

Plaintiffs concede that twenty-one of the twenty-six exhibits Northwestern attached to its motion are properly considered by this Court because they are referenced in their complaint and central to their claims. *See* Mot. at 3. Their challenges to the remaining five exhibits, on the ground that they purportedly "introduce new factual issues or attempt to contradict the facts alleged in the Consolidated Complaint," *id.*, fail for two reasons: (1) plaintiffs disregard their own allegations and Illinois law governing the documents that make up the contract between a university and its students, *see Ross*, 957 F.2d at 416, and (2) plaintiffs misapply Seventh Circuit law, *see Venture Assocs.*, 987 F.2d at 431–32. Northwestern addresses plaintiffs' specific challenges to each item below, and explains why those challenges are meritless.

### 1. Paragraphs 7-13 of and Exhibit 8 to the Casazza Declaration are Referenced in Plaintiffs' Complaint and Central to Their Breach of Contract Claim.

Paragraphs 7-13 of and Exhibit 8 to the Casazza Declaration place before the Court a Community Expectations Agreement that Northwestern required students to execute when registering for the Fall 2020 Quarter and subsequent terms. Casazza Decl., ¶¶ 7–8. The Court may consider the Community Expectations Agreement in ruling on Northwestern's motion to dismiss for at least three reasons: (1) plaintiffs expressly allege that it is part of Northwestern's

---

[3] *Accord Minch v. City of Chi.*, 486 F.3d 294, 300 n.3 (7th Cir. 2007) (considering agreement on motion to dismiss that was "neither quoted from nor referred to" in the complaint where there was "no question that the plaintiffs' . . . claim rest[ed] on [its] terms"); *Wright*, 29 F.3d at 1248 (holding district court properly considered agreement between parties attached to defendant's motion to dismiss that plaintiff "repeatedly quote[d] from and refer[red] to" in his complaint); *Putzier v. Ace Hardware Corp.*, 50 F. Supp. 3d 964, 972–73 (N.D. Ill. 2014) (considering documents submitted by defendant that were "repeated[ly] reference[d]" in the complaint where their contents and "the circumstances surrounding their inception" were "central to Plaintiffs' claims").

contract with its students, Compl., ¶¶ 36, 99, (2) it is incorporated by reference in a contractual document that plaintiffs concede is properly before the Court, and (3) it plainly relates to plaintiffs' breach of contract claim with respect to the Fall 2020 Quarter and subsequent terms.

*First*, the Community Expectations Agreement is properly before this Court because plaintiffs expressly allege that their contract with Northwestern includes "registration materials." Compl., ¶¶ 36, 99. Plaintiffs do not dispute that this agreement "was part of [students'] registration materials." Casazza Decl., ¶ 8; *id.*, Ex. 4 at 9 (attesting that Northwestern required students to execute the agreement "[t]o be eligible to enroll"). Nor do they dispute that Greenwald, Veeravalli, and Quiroz each executed the Community Expectations Agreement. Mot. at 3–5; Dkt. 41 at 16.

*Second*, the Court may consider the Community Expectations Agreement because it is incorporated by reference in Northwestern's 2020-2021 Undergraduate Catalog. Plaintiffs concede that Northwestern's 2020-2021 Undergraduate Catalog, which undisputedly is part of plaintiffs' contract with Northwestern, is properly before the Court at this stage in the proceedings. *See* Mot. at 3. Under Illinois law, a contract incorporates another document by reference when it reflects a "clear and specific" intention to do so. *Int'l Star Registry of Ill. v. Omnipoint Mktg., LLC*, No. 05-6923, 2006 WL 2598056, at *3 (N.D. Ill. Sept. 6, 2006).

The second section of the 2020-2021 Undergraduate Catalog contains the full text of the Community Expectations Agreement reflected in Paragraph 9 of, and Exhibit 8 to, the Casazza Declaration. Casazza Decl., Ex. 4 at 9–10. The Catalog specifies further, in italicized text, that "*[a]ll enrolled students must acknowledge via CAESAR that they read and understood this statement and agreed to [its] terms.*" *Id*. at 10. Accordingly, the Catalog unambiguously demonstrates an intent to incorporate the Community Expectations Agreement, which is properly considered as part of that document, *see Int'l Star*, 2006 WL 2598056, at *3–4, and, for that reason,

8

is appropriately before the Court, *see Long v. Fed. Home Loan Mortg. Corp.*, Nos. 16-03072 & 16-04617, 2017 WL 1178531, at *6 (N.D. Ill. Mar. 30, 2017) (considering document attached to motion to dismiss because it was "prominently refer[enced]" in document submitted by plaintiffs and used by defendants "for the same purpose" as other documents properly before the court); *Steigmann v. Democratic Party of Ill.*, 406 F. Supp. 2d 975, 985–86 (N.D. Ill. 2005) (considering document incorporated by reference in agreements referenced in complaint because it went "to the heart of Plaintiff's claim").

*Third*, the Community Expectations Agreement is central to plaintiffs' breach of contract claim, and does not relate "*only* to Defendant's affirmative defense that certain parties purportedly waived or released their rights in this suit," as plaintiffs contend. *See* Mot. at 4–5 (emphasis original). As explained in Northwestern's concurrently-filed Reply in Support of its Motion to Dismiss (at 5), plaintiffs mischaracterize Northwestern's argument. Northwestern does not assert that plaintiffs waived their right to bring this lawsuit. Rather, it asserts that the terms of the contract make plaintiffs' claim that Northwestern promised them in-person education and services implausible. Thus, plaintiffs' assertion that documents may be stricken where they are central only to affirmative defenses is irrelevant.

For each of the above reasons, plaintiffs' motion to strike Paragraphs 7-13 of and Exhibit 8 to the Casazza Declaration should be denied.

### 2. Exhibit 2 to the Rastogi Declaration is Referenced in Plaintiffs' Complaint and Central to Quiroz's Claims.

Plaintiffs contend that Exhibit 2 to the Rastogi Declaration—a July 16, 2020 email from the Director of Northwestern's Marriage and Family Therapy program to incoming students,

9

including Quiroz[4]—should be stricken because it "was in no way referred to or central to the Consolidated Complaint" and "is a blatant attempt to contradict the otherwise well-pleaded facts of the Consolidated Complaint." Mot. at 5–6. Plaintiffs' first argument mischaracterizes the facts, and their second argument misstates the law.

As demonstrated above, Exhibit 2 to the Rastogi Declaration *was* referenced in, and is central to, plaintiffs' complaint, because it, too, is part of the contract between Northwestern and Quiroz. Plaintiffs expressly allege that Northwestern's "representations" to students and "other documents" form the parties' contract. Compl., ¶¶ 36, 99. Northwestern's course catalogs further emphasize that "[e]mail is the University's mechanism for official communication with students, and Northwestern has the right to expect that students will read official email in a timely fashion." Casazza Decl., Ex. 3 at 9; Ex. 4 at 10. Moreover, plaintiffs have conceded, and in some instances expressly argued, that other specific communications are incorporated into their complaint or contain their contract with Northwestern. *See, e.g.*, Mot. at 3; Compl., ¶¶ 62–65 (alleging that Northwestern promised "that some courses in the Fall 2020 Quarter would be provided in a face-to-face format" in a June 16, 2020 communication to students); Dkt. 41 at 14–15 (arguing Northwestern could have breached a promise for in-person education and services based on email communications to students, citing Yates Decl., Exs. 8, 9). Plaintiffs draw no legal or factual distinction between the communications that they (erroneously) believe support their claims, and the communications they seek to strike.

---

[4] Northwestern redacted its students' email addresses from Exhibit 2 to the Rastogi Declaration to protect their privacy. Although plaintiffs use Northwestern's privacy redaction to complain that the exhibit "does not clearly identify that it was sent to Plaintiff Quiroz," Mot. at 5, the director of Quiroz's degree program properly authenticated the email pursuant to Federal Rule of Evidence 901, and averred under oath that it was transmitted to Quiroz, Rastogi Decl., ¶ 3. While plaintiffs obliquely attempt to infer doubt on that score, *see* Mot. at 5, they neither move to strike Paragraph 2 of the Rastogi Declaration, nor outright deny that the email is authentic and Quiroz received it.

A review of Exhibit 2 explains why plaintiffs would prefer that the Court disregard it. In the July 16 email, sent well before the enrollment and tuition deadlines for the Fall 2020 Quarter (September 16 and October 1, respectively), Northwestern expressly informed all incoming students in the Marriage and Family Therapy program "that Fall Quarter 2020 courses and experiences would be remote," and "[a]ll courses and meetings will take place via Zoom." Rastogi Decl., Ex. 2 at 2. The email further explains that "[w]hen [students] begin seeing clients in the winter quarter . . . [they] will be engaged in tele-therapy." *Id.* at 2–3. The email acknowledges that, although incoming students had "indicated [their] intention to enroll in the Program th[at] fall," they had not yet completed enrollment, and asked that the students promptly provide "an update on [their] intention to enroll" in light of the circumstances of the pandemic. *Id.* at 2.

Plaintiffs are entirely correct that these representations—made to Quiroz before her contract with Northwestern for the Fall 2020 Quarter was consummated—"contradict the allegations that [Northwestern] offered in-person instruction" to her. Mot. at 5. Their argument that this factual contradiction provides a basis to strike the exhibit, however, flouts controlling precedent. The law in the Seventh Circuit is clear: "[w]hen an exhibit" that is incorporated by reference in the plaintiff's pleading "incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, *even when considering a motion to dismiss*." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (emphasis added). Under those circumstances, "ruling against the non-moving party on a motion to dismiss is consistent with [the court's] obligation to review all facts in the light most favorable to the non-moving party." *Id*.

Plaintiffs' motion to strike Exhibit 2 to the Rastogi Declaration should be denied.

11

### 3. Exhibits 2, 6, and 7 to the Yates Declaration are Referenced in Plaintiffs' Complaint and Central to Their Claims.

Plaintiffs assert essentially the same objections to the communications reflected in Exhibits 2, 6, and 7 to the Yates Declaration, *see* Mot. at 6–7, which, like the email to Quiroz discussed above, also constitute "representations" that were transmitted to students via email and, in the case of Exhibits 6 and 7, posted publicly on Northwestern's website, Yates Decl., ¶¶ 3, 7–8. Thus, plaintiffs' arguments with respect to those exhibits lack merit for the same reasons.

Plaintiffs' remaining arguments—that these exhibits should be stricken because Northwestern "appears to want the Court to take notice . . . that the facts asserted in them are true," and they are not "reasonably subject to judicial notice," Mot. at 7—fall equally flat. In ruling on a motion to dismiss, the court "accept[s] all well-pleaded facts as true." *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 854 (7th Cir. 2019). That standard extends beyond the allegations in the complaint to include facts set forth in exhibits that are considered part of the pleading. *See Venture Assocs.*, 987 F.2d at 431; *Allstate*, 2004 WL 1375383, at \*2 ("[T]he contract that was attached to [defendant's] motion to dismiss will be considered as part of the pleadings in this matter."); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading *for all purposes*." (emphasis added)). Thus, to the extent facts set forth in Northwestern's exhibits contradict plaintiffs' allegations, "the exhibits trump the allegations." *Bland v. Edward D. Jones & Co., L.P.*, 375 F. Supp. 3d 962, 983 (N.D. Ill. 2019) (quoting *Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010)); *see also Bogie*, 705 F.3d at 609.[5]

---

[5] As with Exhibit 2 to the Rastogi Declaration, while plaintiffs insinuate in passing that Exhibits 2, 6, and 7 to the Yates Declaration may not be "reliable," Mot. at 6, they fail to mount an actual challenge to their authenticity. Indeed, each was properly authenticated pursuant to Federal Rule of Evidence 901 by Northwestern's Assistant Vice President of Communications. Yates Decl., ¶¶ 3, 7, and 8.

Plaintiffs contend further that the Court should strike Exhibits 2, 6, and 7 because they are "not reasonably subject to judicial notice." Mot. at 7. Once again, plaintiffs respond to the argument they wish Northwestern had made, rather than the argument Northwestern actually made. In its motion to dismiss, Northwestern asserted that this Court may consider "communications 'made available to the matriculant[s]'" because they are part of the parties' contract, and thus, referenced in plaintiffs' complaint and central to their claims. Dkt. 27, at 2 n.1 (quoting *Ross*, 957 F.2d at 416). Northwestern did not specifically argue that its website is subject to judicial notice (though it is readily apparent that its contents are not subject to reasonable dispute, and generally known within this Court's territorial jurisdiction, *see Ennenga v. Starns*, 677 F.3d 766, 773–74 (7th Cir. 2012)). In fact, it is *plaintiffs* who have argued in their opposition to Northwestern's motion to dismiss that "[t]his Court may take judicial notice of Northwestern's websites." Dkt. 41 at 6 n.5 (citations omitted). Plaintiffs cannot have their cake and eat it too.[6] Their motion to strike Exhibits 2, 6, and 7 to the Yates Declaration should be denied.

## II. Plaintiffs Are Not Entitled to Discovery to Respond to Northwestern's Motion.

Conversion of Northwestern's Rule 12(b)(6) motion to a motion for summary judgment under Rule 56 is not warranted here, and thus, plaintiffs are not entitled to take discovery under Rule 56(d) for the purpose of opposing it. "[T]he purpose of requiring conversion" from Rule 12(b) to Rule 56 "if matters outside the pleadings are considered by the court, is to make sure that each party has notice of evidence that the opposing party wants to present in support of his claim

---

[6] Plaintiffs mischaracterize Exhibit 7 as "an internal Northwestern document," Mot. at 7, though it is clear both from the face of the exhibit and from the Yates Declaration that it was posted on Northwestern's website, *see* Yates Decl., ¶ 8 (averring that the communication reflected in Exhibit 7 was "posted publicly" on March 31, 2020 "on Northwestern's website," and providing URL). And plaintiffs try to have it both ways yet again by assailing Exhibit 2 solely on the ground that it is an "'exemplar' email," Mot. at 7, while conceding that the exemplar admission offer letter reflected in Exhibit 1 to the Watson Declaration is properly before the Court, *see id*. at 3.

or defense." *Tierney*, 304 F.3d at 738 (citing *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)).

Here, the overwhelming majority of Northwestern's exhibits are publicly available on Northwestern's website, which plaintiffs undoubtedly were aware of and had access to given their many references and hyperlinks to it both in their complaint and in their response to Northwestern's motion to dismiss. Compl., ¶¶ 22–31, 33–34, 35 n.8, 36-38, 49, 51–55, 62–63, 74, 99; Dkt. 41 at vii, 3–6, 9–10, 12-15; *see also* Dkt. 41 at 6 n.5 ("This Court may take judicial notice of Northwestern's websites."). The remaining exhibits are email communications or admission letters that were sent directly from Northwestern to plaintiffs.[7] Plaintiffs do not, and cannot, genuinely assert they lacked notice of any of these documents. *See Tierney*, 304 F.3d at 738 ("[R]eference in the pleading to the evidence furnishes [the requisite] notice."); *Cortec*, 949 F.2d at 48 (holding that plaintiffs' "possession" or "knowledge" of documents "upon which they relied in bringing suit" refuted any assertion that they lacked the requisite notice); *see also Squires–Cannon v. White*, 864 F.3d 515, 517 (7th Cir. 2017) (finding plaintiff had not been "deprived of 'the opportunity to conduct discovery and to present contrary evidence on a point of genuinely disputed fact'" raised by exhibits attached to motion to dismiss where plaintiff did not dispute the veracity of the exhibits). Plaintiffs have had ample opportunity to review these documents and others in their possession, and to use them to support their allegations as well as to oppose Northwestern's motion to dismiss. Conversion to summary judgment and related discovery is

---

[7] Plaintiffs remark that it is "curious" that Northwestern did not submit promotional brochures and other unspecified materials purportedly enclosed with plaintiffs' admission letters, and suggest that this supposed omission justifies their request for discovery. Mot. at 8. What is more curious is that plaintiffs, who ostensibly relied on such documents in drafting their complaint, *see* Compl., ¶¶ 23, 36, 41, 43, 99; Mot. at 8, failed to attach them to their complaint, submit them to this Court in connection with their briefs, or even describe what they are and how they might be relevant.

14

unnecessary, and would needlessly prolong this case and waste the resources of the parties and this Court.

*# # #*

After alleging that a broad universe of documents comprises their contract with Northwestern, Compl., ¶¶ 36, 99, plaintiffs cannot now pick and choose which specific documents from within that universe form the contract and which do not. Because each exhibit submitted by Northwestern falls within the expansively-defined categories of documents that plaintiffs reference in their complaint as the basis for their claims, this Court may properly consider all of them in ruling on Northwestern's motion to dismiss.

**CONCLUSION**

For the foregoing reasons, plaintiffs' motion to strike should be denied.

Dated: March 22, 2021                    Respectfully submitted,

                                         /s/ *Craig C. Martin*
                                         One of the Attorneys for Defendant

                                         Craig C. Martin
                                         Brienne M. Letourneau
                                         Chloe Holt
                                         cmartin@willkie.com
                                         bletourneau@willkie.com
                                         cholt@willkie.com
                                         WILLKIE FARR & GALLAGHER LLP
                                         300 North LaSalle, 50th Floor
                                         Chicago, Illinois 60654
                                         Tel: (312) 728-9000

                                         *Counsel for Defendant Northwestern University*

15