**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NATHANIEL POLLEY, NANCY QUIROZ, SURYA VEERAVALLI, and DANIEL GREENWALD, on behalf of themselves and all others similarly situated, <br><br>       Plaintiffs, <br><br>   v. <br><br> NORTHWESTERN UNIVERSITY, <br><br>       Defendant. | Civil Action No. 1:20-cv-04798 (HDL) <br><br> **FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** |

Plaintiffs Nathaniel Polley, Nancy Quiroz, Surya Veeravalli, and Daniel Greenwald ("Plaintiffs") bring this action on behalf of themselves, and all others similarly situated, against Defendant Northwestern University ("Northwestern" or "Defendant"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

1.  Northwestern is one of the most prestigious private universities in the country, providing higher education in the arts, sciences, business, law, communications, education and social policy, engineering, journalism, management, music, medicine, and other disciplines. Plaintiffs are students that attended Northwestern during the Spring 2020 quarter, the Fall 2020 quarter, and other quarters that were affected by the pandemic of the Coronavirus Disease 2019 ("COVID-19").

1

2.      On March 11, 2020, Northwestern announced that it was canceling in-person classes due to COVID-19 ("March 2020 COVID Closure").[1]

3.      Plaintiffs do not dispute that Northwestern's decision to cease in-person instruction was warranted as a matter of compliance with the health and safety protocols in place by various state and local governments. Rather, Plaintiffs challenge Northwestern's unliteral decision to retain the full amount of tuition and the full amount of fees when it was unable to provide the educational services and experiences for which Plaintiffs and Class Members (as defined herein) contracted – and ask to be refunded the money they paid for services that were not provided.

4.      More specifically, and as described in detail herein, Plaintiffs and Class Members paid tuition, fees, and related payments for in-person education and facility access at Northwestern for the full academic quarter.

5.       Northwestern provided only online classes for the majority of its classes and limited educational services and access to campus from March 11, 2020 through at least the Spring 2021 Quarter.

6.      After Northwestern converted to online only education in or around March 11, 2020, Plaintiffs and Class Members did not receive any in-person classes, any in-person educational services, any access to campus facilities and resources, and any on-campus opportunities.

7.      Nonetheless, Northwestern has retained and demanded tuition and fee payments as if it were still offering a full in-person and on-campus educational experiences.

---

[1]      Northwestern, Morton Schapiro, Spring Break Extended and Spring Quarter Classes Will Be Remote (March 11, 2020), *available at* https://www.northwestern.edu/coronavirus-covid-19-updates/developments/updates/spring-break-extended-spring-quarter-remote.html (last viewed Oct. 15, 2020).

8.      Furthermore, although Northwestern represented that Plaintiffs and Class Members would have the benefit of access to campus facilities and resources and on-campus opportunities beginning in the Fall 2020 quarter, it failed to deliver on these promises.

9.      Northwestern itself typically charges far less for online education than in-person education.

10.     Online classes cannot replicate the full academic opportunities of in-person instruction. Online learning cannot recreate, for example, the access to facilities, materials, and faculty, or the opportunity for collaborative learning and in-person dialogue, feedback, and critique. Such remote learning options simply cannot replace the experiential richness of academic life on a college campus and thus do not have the same value as the in-person education for which Plaintiffs and Class Members paid.

11.     Plaintiffs and Class Members paid Northwestern for access to buildings and facilities that they were not permitted to enter, equipment and technology that they could not use, internships in which they could not participate, and much more. Northwestern is thus asking Plaintiffs and Class Members to bear the financial brunt of the pandemic.

12.     Northwestern is not entitled, by either contractual or equitable principles, to pass the entire cost of COVID-19-related closures to Plaintiffs and Class Members. Rather, Plaintiffs and Class Members are entitled to a partial refund of tuition and fees for in-person and on-campus educational services, facilities, access and/or opportunities for which they paid, and Northwestern failed to provide.

**PARTIES**

13.     Plaintiff Nathaniel Polley is a citizen and resident of the State of Illinois. Plaintiff Polley has attended Northwestern since the Fall 2018 Quarter. Plaintiff Polley paid, either

directly or through a third-party paying on his behalf, approximately $13,528 in tuition to Northwestern for the 2020 Spring Quarter. In June 2020, Plaintiff Polley graduated from Northwestern's McCormick School of Engineering with a Master of Science in Biotechnology.

14.    Plaintiff Nancy Quiroz is a citizen and resident of the State of Illinois. Plaintiff Quiroz is a graduate student at Northwestern's Marriage and Family Therapy program at the Family Institute. For the Fall 2020 Quarter, Northwestern charged Plaintiff Quiroz approximately $19,343 in tuition.

15.    Plaintiff Surya Veeravalli, a resident of Illinois, was an undergraduate student enrolled at Northwestern during the Winter 2020 and subsequent quarters, with an expected graduation date of June 2021. For the Winter 2020 and Spring 2020, Northwestern charged Plaintiff Veeravalli approximately $18,744.00 in tuition and fees per quarter. For the Fall 2020 and Spring 2021 quarters, Northwestern charged Plaintiff Veeravalli similar rates for tuition and fees.

16.    Plaintiff Daniel Greenwald, a resident and citizen of Maryland, attended the Evanston campus of Northwestern during 2019-2020. Plaintiff Greenwald enrolled in an MA program in Sound Arts and Industries during 2019-2020 and agreed to pay tuition in the amount of $65,536.

17.    Defendant Northwestern University is a private research university comprised of twelve constituent schools. Northwestern had a total enrollment of over 8,000 undergraduate students and over 13,000 graduate students for the 2019-2020 academic year. As of 2019, Northwestern reportedly had an endowment of $11.1 billion.

18.    Northwestern was eligible to receive federal stimulus funding under the CARES Act, which provided $14 billion for colleges and universities based on enrollment numbers to

mitigate the financial impact of COVID-19 on both institutions and students. On or about April 28, 2020, Northwestern announced it would not apply for CARES Act funding. Northwestern was allocated $15,884,247 through the Higher Education Emergency Relief Fund ("HEERF"). As of its last report, Northwestern had distributed only $44,246 to eligible students.[2]

## JURISDICTION AND VENUE

19.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

20.     This Court has personal jurisdiction over Defendant because Defendant is headquartered in this district, because many of the acts and transactions giving rise to this action occurred in this district, and because Defendant conducts substantial business in this district.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant is headquartered in this district.

## FACTUAL ALLEGATIONS

22.     Plaintiffs and Class Members entered into express or implied contracts with Northwestern whereby, in exchange for the payment of tuition, fees and other related costs, Northwestern would provide an agreed-upon number of classes through in-person

---

[2]     Northwestern, Quarterly Public Reporting Requirement for HEERF Student Aid Portion, *available at* https://www.northwestern.edu/asrsp/docs/quarterly_reporting_heerf-student_current.pdf (last viewed Oct. 15, 2021); Northwestern, Student Finance, *available at* https://www.northwestern.edu/sfs/help/faqs-heerf.html (last viewed Oct. 15, 2021).

instruction/classes (as it had historically provided) and access to campus and physical resources and school facilities such as libraries, laboratories, and classrooms.[3]

23.     Northwestern's promise to provide in-person classes and access to campus can be found in its marketing materials, application materials, admission matters, registration materials, and other documents that detail and reference the services that Northwestern agreed to provide and make available in exchange for the payment of tuition and fees.

24.     Evidence of Northwestern's promises are too numerous to document here. Nonetheless, Plaintiffs provide examples below.

### Before COVID-19, Northwestern Promised In-Person Instruction

25.     Before its March 2020 COVID Closure, Northwestern promised to teach in-person classes. This promise was made through its past course of conduct, by which Northwestern always provided classes in-person (unless the class or program was specifically identified to be online), and further confirmed by express writings stating the same.

26.     For example, Northwestern's 2020 Spring Course Schedules confirmed Northwestern's promise to provide in-person classes, and further specified the times and the on-campus locations for the courses.[4]

---

[3]     Tuition rates and fees for undergraduate and graduate programs, for the 2019-2020 academic year and beyond, can be found on Northwestern's website. *See, e.g.,* Northwestern Student Finance, Undergraduate Tuition, *available at* https://www.northwestern.edu/sfs/tuition/undergraduate/index.html (last viewed Dec. 22, 2020); Northwestern Student Finance, Graduate Tuition, *available at* https://www.northwestern.edu/sfs/tuition/graduate/index.html (last viewed Dec. 22, 2020).

[4]     Northwestern Undergraduate Spring 2020 Course Catalog, *available at* https://www.registrar.northwestern.edu/documents/registration/class-schedule-pdf/spring-2020-class-schedule.pdf (last viewed Dec. 22, 2020); *see also* Northwestern Graduate School Catalog Spring 2020 Course Catalog, *available at* https://northwestern-preview.courseleaf.com/archives/2019-2020/pdf/2019-2020-tgs.pdf (last viewed Dec. 22, 2020); Northwestern Law School Course Catalog, *available at* https://northwestern-preview.courseleaf.com/archives/2019-2020/pdf/2019-2020-law.pdf (last viewed Dec. 22, 2020).

| **111-0** | **Introduction to Astrobiology** | | | | | |
| 36562 | 1 | MWF | 02:00PM | 02:50PM | TCHLR3 | Larson |
| **220-0** | **Introduction to Astrophysics** | | | | | |
| 36469 | 1 | MWF | 02:00PM | 02:50PM | TCHL361 | Novak |

27.     As specific course locations or specific course times might change after the printing of the pdf version of the Class Schedule, students were instructed to verify course offerings on CAESAR.[5]

28.     CAESAR is the online platform through which Northwestern students view course information and register for courses.[6]

29.     While Northwestern reserves the right to change the courses promised in the pdf version of its course catalogs, it does not reserve this right in its CAESAR platform through which students *actually* select and register for their courses.

30.     CAESAR confirms Northwestern promised to teach the classes in-person. For example:[7]

---

[5]     *Id.*

[6]     Northwestern University Information Technology, *CAESAR*, Northwestern University, https://www.it.northwestern.edu/service-catalog/admin-bus/student/caesar.html (last viewed Oct. 8, 2021).

[7]     CAESAR, Northwestern University Course Search, *available at* https://caesar.northwestern.edu (last viewed Dec. 22, 2020). The example is provided at https://www.northwestern.edu/class-descriptions/4780/WCAS/ASTRON/220-0/36469.html (last viewed Dec. 22, 2020).

Northwestern

HOME » SPRING 2020 » WCAS » ASTRON » 220-0 » 1

## Class Descriptions

### Introduction to Astrophysics

**Instructors**

Giles A Novak - 847/491-8645 - Technological Institute (2145 Sheridan Road), Room F253, Evanston

**Meeting Info**

Technological Institute L361 - MoWeFr 2:00PM - 2:50PM

**Overview of class**

This introductory course is designed for undergraduate science and engineering students who are interested in quantitatively exploring the observed universe in terms of the underlying physical processes. The syllabus has been revamped for Spring 2020: While the course will still touch on all developments in astrophysics, it will focus primarily on star/planet systems including our own Solar System. We will review the 21st century experiments that have led to the recent discovery of thousands of planets in our Galaxy orbiting stars other than our Sun - a.k.a. "exoplanets". We will also discuss the formation and evolution of star/planet systems, as well as the final collapse to form a white dwarf star, neutron star, or black hole.

**Registration Requirements**

Physics 135-1,2,3 or the equivalent

**Teaching Method**

Three 50-minute lectures per week

**Evaluation Method**

Weighted average of problem set, in-class exam, and final exam scores

**Class Materials (Required)**

Foundations of Astrophysics By Ryden (NU Undergrad Alumna) and Peterson
ISBN: 978-0-321-59558-4

Previous editions: Not applicable
Online: No
Price: $90-$200
Other purchases: None

**Class Attributes**

Natural Sciences Distro Area

Current as of 4/5/20 7:04 PM (CT)

Office of the Registrar • 633 Clark Street • Evanston, Illinois 60208-1118

Phone: 847-491-5234 • Fax: 847-491-8458 • E-mail: nu-registrar@northwestern.edu

CAESAR • Academic Calendar

© 2020 Northwestern University

31.     The above example from CAESAR confirms that Northwestern's promise to provide the class through in-person instruction was current as of April 5, 2020, well *after* its

March 2020 COVID Closure.

32.    Northwestern's online Class Descriptions again repeat its promise to provide in-person instruction, which *still* promise in-person instruction for the Spring 2020 Quarter (at least as of this filing). For example:[8]



33.    Northwestern repeated this promise throughout its course syllabi, too numerous to count. As just some examples:

- "Class Participation: (7.5% of grade): ATTENDANCE IS REQUIRED. Since we

---

[8]    Northwestern University, Class Descriptions, 2020 Spring, Introduction to Astrophysics, *available at* https://class-descriptions.northwestern.edu/4780/WCAS/ASTRON/36469 (last viewed Oct. 15, 2021).

9

only meet once a week, and because the in-class activities are central to the learning experience in the class, <u>ONE</u> <u>unexcused</u> <u>absence</u> <u>will</u> <u>result</u> <u>in</u> <u>a</u> <u>participation</u> <u>grade</u> <u>of</u> <u>0</u>. *We're extremely strict about this policy.* If you need to miss class, you are allowed ONE excused absence, but you will need to arrange this beforehand with the instructors, and will be asked to schedule time with one of the instructors and do makeup work. Conflict with other scheduled events, such as a job fair, is *not* considered an excused absence."[9]

- "We will meet three times a week: Mondays, Wednesdays and Fridays, from 9-9.50pm in Lutkin Hall."[10]

34. Northwestern made its on-campus instruction central to its recruitment and marketing efforts. For example:

- "Experience student life . . . sample Northwestern's classroom culture."[11]

- "Northwestern places a strong focus on the undergraduate learning experience. Observing a class in session can provide a helpful glimpse into Northwestern's academic environment."[12]

- "To fully experience academic and student life at Northwestern, consider spending the day shadowing a current student. From 9:30 a.m. to 3 p.m., you'll attend classes, explore campus, grab lunch, tour a residence hall and ask all of your questions about life at Northwestern."[13]

---

[9]     Northwestern Syllabus for LOC/LS 308: Redesigning Everyday Organizations, Winter 2020, *available at* https://course-admin.sesp.northwestern.edu/media/files/syllabi/4770/LRN_SCI/LOC_LS-308-syllabus-Winter-2020.pdf (last viewed Oct. 15, 2021) (emphasis in original).

[10]     Winter 2020 Quarter, Syllabus for Econ 201, Introduction to Macroeconomics, *available at* https://northwestern.app.box.com/s/l2axwthq27pb9jy7fjwi4fhad8ymbvo1 (last viewed Oct. 15, 2021).

[11]     Northwestern, Undergraduate Admissions, Visit and Engage, Plan Your Visit (Nov. 20, 2018), https://web.archive.org/web/20181120020405/https://admissions.northwestern.edu/visit/plan-your-visit/index.html.

[12]     Northwestern, Undergraduate Admissions, Visit and Engage, Preview Student Life (Nov. 20, 2018), https://web.archive.org/web/20181120020408/https://admissions.northwestern.edu/visit/plan-your-visit/purple-preview.html.

[13]     *Id.*

34.     Northwestern repeats this representation to the U.S. Department of Education in its required submission of data to the National Center for Educational Statistics. For 2019, Northwestern reported to the U.S. Department of Education that it did not offer distance education for undergraduate students, and only a limited number of graduate students enrolled in distance education (418 of 13,766 graduate students).[14]

35.     In addition to representing that it does not offer undergraduate programs through distance learning, Northwestern separately markets its online or blended graduate programs. Most graduate programs are not offered fully online, with some offering only certain courses in an online or blended format.[15]

36.     Indeed, none of the Plaintiffs' programs are listed as available as online programs.[16] Given that Plaintiffs' programs were not even available in an online format, it is more than reasonable that Plaintiffs expected to receive in-person classes.

---

[14]     IPEDS, Northwestern University, Institutional Characteristics, *available at* https://nces.ed.gov/ipeds/datacenter/facsimile.aspx?action=pdf&unitid=147767&year=2019&surveyNumber=1 (last viewed Oct. 15, 2021) (linked from https://nces.ed.gov/ipeds/datacenter/facsimile.aspx?unitId=147767&goToReportId=6); IPEDS, Northwestern University, Fall Enrollment, *available at* https://nces.ed.gov/ipeds/datacenter/facsimile.aspx?action=pdf&unitid=147767&year=2019&surveyNumber=15 (last viewed Oct. 15, 2021) (linked from https://nces.ed.gov/ipeds/datacenter/facsimile.aspx?unitId=147767&goToReportId=6).

[15]     Office of the Provost, Northwestern Online Programs, *available at* https://www.northwestern.edu/provost/initiatives/teaching-and-learning/online-and-blended-learning/northwestern-online-programs.html (last viewed Oct. 15, 2021).

[16]     Plaintiff Quiroz's program may now be available online, but it was not created until April of 2021, and it is not clear the program is identical. *See* https://www.prnewswire.com/news-releases/the-family-institute-at-northwestern-university-announces-new-online-masters-degree-in-marriage-and-family-therapy-and-extends-partnership-with-2u-inc-301264979.html (last viewed Oct. 15, 2021).

37.     Northwestern requires changes to its policy to be available for 45 days for review and comment from the Northwestern community.[17] Students are the intended third-party beneficiaries of this requirement.

38.     Northwestern requires changes to courses to be submitted and approved in advance.[18] Students are the intended beneficiaries of these requirements.

39.     Northwestern's Faculty Handbook states: "faculty members are expected to be in residence and available to students and colleagues throughout the period of their appointment — in the case of faculty on nine-month appointments, from the arrival of students in the fall through Commencement."[19] Students are the intended beneficiaries of these requirements.

_____

[17]     Northwestern, University Policy Development Guidelines, *available at* https://policies.northwestern.edu/docs/policy-development-guidelines-final.pdf (last viewed Dec. 22, 2020).

[18]     New Course and Changes to Existing Courses ("If you need to add a new course or change an existing course's offerings, a New Course Form or Changes to Existing Course Form must be completed in its entirety."), *available at* www.registrar.northwestern.edu/faculty-staff/new-coursechange-an-existing-course.html (last viewed Dec. 22, 2020). *See also Resources for Schedulers & Departmental Staff, ("*The catalogs are published once a year in August, and represent a snapshot of the requirements effective during that academic year. Departments start editing for the subsequent year's edition during Winter quarter."), *available at* https://www.registrar.northwestern.edu/faculty-staff/resources-for-departmental-staff-schedulers/index.html (last viewed Dec. 22, 2020); Scheduling Calendars & Deadlines (providing deadlines for changes to class schedules), *available at* www.registrar.northwestern.edu/faculty-staff/resources-for-departmental-staff-schedulers/scheduling-calendars-deadlines.html (last viewed Dec. 22, 2020); Course Leaf Scheduling System ("Requested Room Cap and Room Characteristics cannot be edited" and "Where enrollment exists -- user cannot . . . adjust . . . meeting patterns"), *available at* https://www.registrar.northwestern.edu/faculty-staff/resources-for-departmental-staff-schedulers/clss-scheduling-guide.pdf (last viewed Dec. 22, 2020).

[19]     Northwestern University Faculty Handbook at 23 (effective October 19, 2018 - August 13, 2020), available at https://www.northwestern.edu/provost/docs/faculty_handbook_2018.pdf (last viewed Dec. 22, 2020); Northwestern University Faculty Handbook at 23 (effective August 14, 2020), available at https://www.northwestern.edu/provost/docs/faculty_handbook_2020.pdf (last viewed Dec. 22, 2020).

40. Northwestern's Policy on Awarding Credit recognizes that online instruction cannot simply replace in-person instruction. While typical, in-person classes require one hour of classroom or direct faculty instruction plus two hours of "out of class student work," each week, Northwestern's Policy states that, for "[o]nline and blended classes . . . the University awards one unit of credit when at least **nine** full hours of work per week are expected of the student, irrespective of department, delivery format, or degree level."[20] Students are the intended beneficiaries of these requirements.

**Before COVID-19, Northwestern Promised On-Campus Access**

41. Before its March 2020 COVID Closure, Northwestern promised to provide in-person, on-campus access to its facilities, resources, and services. This promise was made through its past course of conduct, by which Northwestern always provided in-person access to its campus, and further confirmed by express writings stating the same.

42. Northwestern made its on-campus access central to its recruitment and marketing efforts. For example:[21]

---

[20] Northwestern Policy on Awarding Credit, available at
https://www.northwestern.edu/provost/policies/awarding-credit.html (last viewed Dec. 22, 2020).

[21] Northwestern, Campus Life (July 26, 2019),
https://web.archive.org/web/20190726040101/https://www.northwestern.edu/campus-life/index.html.



43.     Northwestern uses its website, promotional materials, circulars, admission papers, and publications to tout the benefit of being on campus and the education students will receive in its facilities.

44.     Northwestern holds itself out through its website, educational and promotional literature, through in-person activities such as campus tours, and through representations to third parties as being as an elite residential research university. Northwestern advertises itself as a "comprehensive research university that is deeply interdisciplinary across multiple schools and units. Our rigorous yet empathetic academic environment provides a robust mixture of theory and practice, with an emphasis on top-tier research, new knowledge, creative expression, and

practical application. If you are at Northwestern, you are part of an innovative, collaborative, and multidimensional community delivering an impact that is rare in higher education."[22]

45.     Northwestern required that first- and second-year undergraduate students live on campus, promising on-campus residency with access to campus facilities as a motivation to enroll at the university. "All first-year and second-year students live on campus … Regardless of where you live, you'll find everything the campus has to offer just outside of your door."[23]

46.     Northwestern promised enrolled students the opportunity to engage in in-person events, activities, and networking through Northwestern Career Advancement (NCA). "As a student at Northwestern, you can participate in a variety of events/programs that provide an opportunity to connect with others, such as those listed below."[24] The types of programming listed include "career treks" and "career fairs" among other traditionally in-person events, conveying Northwestern's promise to students of in-person professional mentorship.[25]

47.     By "career treks," Northwestern promised undergraduate students like Plaintiff Veeravalli that they would be able to participate in in-person trips to employers in major cities like New York City and Washington, D.C. "Northwestern Career Advancement invites

---

[22]     The Northwestern Difference, *available at* https://www.northwestern.edu/about/facts.html (last viewed Oct. 15, 2021).

[23]     Northwestern Undergraduate Admissions, *Student Life: The Residential Experience*, Northwestern University (Oct. 13, 2019, 10:37 PM), https://web.archive.org/web/20191013223752/https://admissions.northwestern.edu/student-life/housing-dining.html.

[24]     Northwestern Career Advancement, *Networking: Connecting with Others*, Northwestern University (Apr. 16, 2019, 3:04 PM), https://web.archive.org/web/20190702220909/https://www.northwestern.edu/careers/job-intern-prep/networking/index.html.

[25]     *Id.*

15

undergraduate students to join us on September Career Treks to New York City, Washington D.C., Los Angeles, and San Francisco!"[26]

48.     Moreover, by "career fairs," Northwestern promised undergraduate students a face-to-face opportunity to network and advance their careers by speaking to employers in-person. In describing the career fairs Northwestern promised to students, Northwestern instructed students like Plaintiff Veeravalli to prepare to navigate an in-person professional environment and engage with employers face-to-face. "Review the employer summaries and map before entering the room. … Greet recruiters with a firm handshake and smile."[27]

49.     Northwestern is comprised of two primary campuses, a main campus in Evanston, Illinois, and another campus in downtown Chicago, Illinois. Northwestern also operates a campus in Qatar offering undergraduate degrees in communication and journalism.

50.     Northwestern advertises the Evanston campus as located in a "quintessential college town," where students will find "beaches, shops, coffee houses, restaurants, and theaters just down the street from classrooms, labs and lecture halls."[28]

51.     Northwestern boasts of "240 acres of natural beauty, including several hundred varieties of trees, grasses and flowers" on its Evanston campus.[29]

---

[26]     Northwestern Career Advancement, *Take a Trek with NCA*, Northwestern University (July 2, 2019, 10:10 PM), https://web.archive.org/web/20190702221013/https://www.northwestern.edu/careers/programs-opportunities/career-treks/index.html.

[27]     Northwestern Career Advancement, *Career Fairs*, Northwestern University (Jan. 26, 2021, 9:25 PM), https://web.archive.org/web/20210126212556/https://www.northwestern.edu/careers/jobs-internships/career-fairs/index.html.

[28]     Northwestern, Campus Life, Campus Highlights, You've gotta see it to believe it, *available at* https://www.northwestern.edu/campus-life/campus-highlights.html (last viewed Oct. 15, 2021).

[29]     *Id.*

52.     Through a "Campus Life" link on its webpage, Northwestern advertises "Favorite Spots" as "some of the best loved places on campus," including:

- Lakeside Fields

- Norris University Center

- Alice Millar Chapel

- Deering Meadow

- Shakespeare Garden

- Dearborn Observatory

- Deering Library, Sheridan Road

- Henry Crown Sports Pavilion

- First Fridays at Harris Hall

- Patrick G. and Shirley W. Ryan Center for the Musical Arts,

- Block Museum

- Annenberg Hall[30]

53.     Through the same "Campus Life" portal, prospective students and their parents can view calendars for the academic year, as well as varsity athletics, alumni events, and exhibits and performances all taking place at Northwestern.[31]

54.     Northwestern advertises the Chicago campus as located in a "global city . . . in the bustling Streeterville neighborhood . . . close to the attractions such as the Magnificent Mile, the Museum of Contemporary Art and the John Hancock Center."[32]

---

[30]     *Id.*

[31]     *Id.*

[32]     *Id.*

55.    In recruiting new and prospective students, Northwestern offers an "online guided tour for an interactive 360-view of the Northwestern campus at your own convenience. In addition to the academic buildings, you can see residential buildings, dining halls, athletic facilities and more."[33]

56.    Northwestern itself touts the value of its campus life and services throughout its promotional literature advertising the school.

57.    For instance, in Plaintiff Greenwald's MA program in Sound Arts and Industries, Northwestern emphasized in a publication titled "Director's Welcome – Sound Arts and Industries" that:[34]

- Persons enrolling in this program "have hands-on experience with the latest audio production technologies . . . ."

- "Students take advantage of Northwestern's state-of-the-art sound facilities, which include a newly renovated sound production lab, multiple sound editing stations, cutting-edge audiology facilities, and one of the best student radio stations in the country. Our students take advantage of a vibrant artistic and academic culture that is sustained through yearly conferences on emerging topics related to sound, as well as regular visits from world-famous professionals in sound science, sound studies, sound art, aural health and a range of sound industries."

- "The creative environment at Northwestern gives our sound professionals the opportunity to develop as innovators and collaborators. The MA in Sound Arts and Industries is part of a suite of professional programs at Northwestern, and our students interact and collaborate with writers, filmmakers, artists, and performers in the MFA in Documentary Media, the MFA in Writing for Screen and Stage and the MS in Creative Enterprises."

- "Our students take their unique set of knowledge and skills out into the world through the program's robust internship program. Our staff work

_____

[33]    Northwestern, Virtual Tour, *available at* https://admissions.northwestern.edu/visit/experience/virtual-tour.html (last viewed Oct. 15, 2021).

[34]    Northwestern, Director's Welcome, *available at* https://sound.northwestern.edu/about/directors-welcome/ (last viewed Oct. 15, 2021).

closely with students throughout the year and draw upon a cohort of alumni and industry advisors that include executives at major Hollywood film studios and Academy Award-winning sound designers, as well as academics, researchers and entrepreneurs."

58.     Another document Plaintiff Greenwald received, "Facilities – Sound Arts and Industries," stated that "Adjacent to WNUR-FM, this newly renovated 1,700 square foot sound studio and performance space can accommodate anything from a radio monologue to an 18-piece orchestra. SAI students use this space for classes and recording projects."[35]

59.     Plaintiff Polley's Master of Science in Biotechnology program is specifically advertised as being located on "Northwestern University's Evanston campus" with "Access to 100+ nearby leading research labs."[36]

60.     With respect to its undergraduate program, Northwestern provides data regarding student life and classes through a common data set that it publishes on its website and is used by multiple third-party marketing and ranking agencies, including US News & World Report.[37] In the common data set, Northwestern represents that *it does not offer* distance learning for its undergraduates, but *does* offer a panoply of student activities, many of which would only be available in an in-person or on-campus format.[38]

**Plaintiffs and Class Members Accepted Northwestern's Offer**

61.     Northwestern thus gave Plaintiffs and Class Members an expectation that they would receive in-person instruction and on-campus access in exchange for paying the requested tuition and fees.

---

[35]     *Id.*

[36]     Northwestern, Master of Science in Biotechnology, About the Program, *available at* https://www.mccormick.northwestern.edu/biotechnology/ (last viewed Oct. 15, 2021).

[37]     Northwestern, University Enrollment, Common Data Set, *available at* https://enrollment.northwestern.edu/common-data-set.html (last viewed Oct. 15, 2021).

[38]     *E.g.*, *id.* (2019-2020 at pages 15-16).

62.     Plaintiffs and Class Members accepted Northwestern's offer for in-person instruction and on-campus access by committing to attend Northwestern for the term required for their degree and by paying Northwestern a deposit initially, and tuition and fee payments subsequently, from quarter to quarter.

63.     During the 2019-2020 academic year, Northwestern charged its undergraduate students a tuition of $18,744 per quarter if enrolled between 3 to 5.5 course units, amounting to an estimated average cost of $4,828 per course unit. Students enrolled in fewer than 3 course units were charged $6,668 in tuition for each course unit, and students enrolled in greater than 5.5 course unites were charged $6,668 for each additional course unit.

64.     Northwestern also charged its undergraduate students a variety of fees, including an "Associated Student Government (ASG) Activity Fee" of $67 per quarter to "Cover[] special services and programs for students," an "Athletic Events Fee" of $57 per year, and an "Undergraduate Student Health Fee" of $67 per quarter.

65.     During the 2019-2020 academic year, Northwestern similarly charged its graduate students tuition by the quarter, term, and/or by course unit. For instance, Northwestern charged graduate students obtaining a Master of Science in Biotechnology from the McCormick School of Engineering $16,528 for the Spring 2020 Quarter ($4,652 per course unit) as well as an "Activity Fee" of $100 per quarter for "special services and program."

66.     During the 2020-2021 academic year, Northwestern charged its undergraduate students a tuition of $19,409 per quarter if enrolled between 3 to 5.5 course units. Students

enrolled in fewer than 3 course units or more than 5.5 course units were charged $6,901 in tuition for each course unit.[39]

67.     Northwestern also charged its undergraduate students a variety of fees, including an "Associated Student Government (ASG) Activity Fee" of $71 per quarter to "[c]over[] special services and programs for students," an "Athletic Events Fee" of $60 per year, and an "Undergraduate Student Health Fee" of $67 per quarter.[40]

68.     During the 2020-2021 academic year, Northwestern similarly charged its graduate students tuition by the quarter, term, and/or by course unit. For instance, Northwestern charged graduate students obtaining a Master's degree $19,343 per quarter as well as an "Activity Fee" of $125 per quarter for "special services and programs."[41]

69.     As was required, Plaintiffs and Class Members paid their deposit and/or requested tuition and fees, and they entered into express or implied contracts with Northwestern that provided that Plaintiffs and Class Members would pay tuition and fees and commit to attending Northwestern, and Northwestern would provide in-person and on-campus instruction and access to its campus and physical resources such as libraries and laboratories and other campus facilities, as it had promised and historically provided.

70.     Plaintiffs substantially fulfilled their contractual obligations. Northwestern did not.

---

[39]     Northwestern, Student Finance, Undergraduate Tuition, *available at* https://www.northwestern.edu/sfs/tuition/undergraduate/index.html#tab-panel2 (last viewed Oct. 15, 2021).

[40]     *Id.*

[41]     Northwestern, Student Finance, The Graduate School, *available at* https://www.northwestern.edu/sfs/tuition/graduate/the-graduate-school.html#tab-panel1-2 (last viewed Oct. 15, 2021).

**Northwestern's Breach**

71.     On March 11, 2020, Northwestern, through an email to its students, faculty, and staff, announced that because of COVID-19, it was canceling all classes from March 31, 2020 until April 4, 2020, closing its campus facilities, ending all in-person instruction, and moving all (or substantially all) classes online.[42]

72.     Classes that continued after Northwestern's March 2020 COVID Closure were offered in an online-only format, with no in-person instruction. Even classes for Class Members with concentrations in areas where in-person instruction is crucial (such as music, theatre, and the sciences), students had access only to online education services – if such alternatives were even available.

73.     Northwestern's March 2020 COVID Closure effectively signaled its breach or termination of the contract Northwestern had with Plaintiffs and Class Members, who paid for the opportunity to participate in the academic services to be provided by Northwestern on-campus and in-person.

74.     Eventually, the closure of Northwestern's campuses was extended through the end of the Spring 2020 Quarter, and Northwestern's 2020 commencement ceremony was held virtually.[43]

75.     At the time of its March 2020 COVID Closure, Plaintiffs and Class Members had already accepted Northwestern's offer and had already committed to attend Northwestern for the

---

[42]     Northwestern, Morton Schapiro, Spring Break Extended and Spring Quarter Classes Will Be Remote (March 11, 2020), *available at* https://www.northwestern.edu/coronavirus-covid-19-updates/developments/updates/spring-break-extended-spring-quarter-remote.html (last viewed Oct. 15, 2020).

[43]     Northwestern University COVID-19 and Campus Updates, Apr. 22, 2020, Northwestern's 162nd Commencement Will Be Virtual, *available at* https://www.northwestern.edu/coronavirus-covid-19-updates/developments/northwesterns-162nd-commencement-will-be-virtual.html (last viewed Oct. 15, 2021).

duration of their degree.[44] Plaintiffs who attended Northwestern during the Spring 2020 Quarter had also already completed their registration for classes.

### After COVID-19, Northwestern Continues to Promise In-Person Instruction

76.     After its March 2020 COVID Closure, on June 16, 2020, Northwestern announced that some of its Fall 2020 Quarter classes would be provided in-person and on-campus life would be available, though reduced.[45] Northwestern promised students that "[b]y the time registration begins, class schedules *will clearly identify which courses will have in-person components and which will be entirely remote*,"[46] thus intending students rely upon this information in crafting their schedules and their plans.

77.     After its March 2020 COVID Closure, in a July 10, 2020 communication to undergraduate students, Northwestern expressly promised to provide a number of Fall 2020 courses "entirely face to face."[47] In the same communication, Northwestern again promised that "[t]he teaching mode of each Fall class will be visible on the Class Descriptions page as well as in CAESAR."[48]

---

[44]     Plaintiffs Polley and Veeravalli accepted enrollment in 2017. Plaintiff Greenwald accepted enrollment in 2019. Plaintiff Quiroz accepted enrollment in early March 2020, before receiving the March 2020 COVID Closure announcement.

[45]     June 16, 2020 Northwestern University, Student Fall 2020 Academic Update, *available at* https://www.northwestern.edu/coronavirus-covid-19-updates/developments/student-fall-2020-academic-update.html (last viewed Oct. 15, 2020).

[46]     *Id.*

[47]     Jaci Casazza, From the Office of the Registrar: Fall Class Modalities, Schedule, and Registration, Northwestern University (July 10, 2020), *available at* https://www.tgs.northwestern.edu/about/news/2020/07/from-the-office-of-the-registrar-fall-class-modalities,-schedule,-and-registration.html (last viewed Oct. 15, 2021).

[48]     *Id.*

78.     As late as July 31, 2020, Northwestern promised students, "Some classes will meet in person, whether hybrid or entirely face-to-face."[49]

79.     Northwestern was not selling just credit hours, but credit hours of a certain type. It was not selling just a degree, but a degree of a certain type.

80.     For many programs, Northwestern was selling not just a degree, but an *accredited* degree, legally permitting students to work in the profession of their study.

81.     Even after its March 2020 COVID Closure, Northwestern continued to promise that a number of its programs meet specific accreditation standards, which themselves require in-person instruction and on-campus access. *See supra* at ¶¶ 42-60.

82.     For example, Northwestern promised that its Master of Science degree in Marriage and Family Therapy is fully accredited by the Commission on Accreditation of Marriage and Family Therapy Education (COAMFTE).[50] Even after its March 2020 COVID Closure, Northwestern continued to promise that its Marriage and Family Therapy program is accredited by COAMFTE.[51]

83.     Even after Northwestern's March 11, 2020 COVID-19 closure, Northwestern continued to promise students enrolled in its Master of Science degree in Marriage and Family Therapy, like Plaintiff Quiroz, that students who complete the program will have completed "at

---

[49]     Northwestern, Student Fall Quarter Preparations (July 31, 2020), *available at* https://www.northwestern.edu/coronavirus-covid-19-updates/developments/student-fall-quarter-preparations.html (last viewed Oct. 15, 2021).

[50]     Family Institute at Northwestern University, *Why Choose a Master of Science in Marriage & Family Therapy*, Northwestern University (July 10, 2019, 5:43 AM), http://web.archive.org/web/20190710054321/https://www.family-institute.org/graduate-education/master-science-marriage-family-therapy/why-choose.

[51]     Family Institute at Northwestern University, *Why Choose a Master of Science in Marriage & Family Therapy*, Northwestern University (July 11, 2020, 4:33 AM), http://web.archive.org/web/20200711043319/https://www.family-institute.org/graduate-education/master-science-marriage-family-therapy/why-choose.

least 500 hours of direct client contact" and "200 supervised hours" required for "licensure in most of the 50 states."[52]

84.     By "500 hours of direct client contact," Northwestern promised, and COAMFTE accreditation requires, that the hours are "*face-to-face* processes," explicitly excluding "telephone contact," "observation of therapy," and other activities that do not involve "direct client contact."[53] Standards Version 12.0 at 44 (emphasis added).

85.     By "100 supervised hours," Northwestern promised, and COAMFTE accreditation requires, that "the majority of supervision is with supervisor and supervisee physically present in the *same location*."[54] Standards Version 12.0 at 34 (emphasis added).

86.     Even after the COVID-19 pandemic, COAMFTE's requirements of "500 hours of direct client contact" and "100 supervised hours" were still in place. In particular, these face-to-face hours requirements were required by COAMFTE, and promised by Northwestern, in Accreditation Standards 12.0, which were effective since January 1, 2018.[55] Accreditation Standards 12.0 will continue to be the effective standard until 2022, when Accreditation Standards 12.5 will go into effect.[56] Today, version 12.0 remains in effect.[57]

---

[52]     *Id.*

[53]     Commission on Accreditation for Marriage and Family Therapy Education, *Accreditation Standards Version 12.0*, COAMFTE 44 (Aug. 2017), https://www.coamfte.org/documents/COAMFTE/Accreditation%20Resources/2018%20COAMFTE%20Accreditation%20Standards%20Version%2012%20May.pdf.

[54]     *Id.* at 34.

[55]     *Id.*

[56]     Commission on Accreditation for Marriage and Family Therapy Education, *Accreditation Standards Version 12.5*, COAMFTE (Aug. 2021), https://coamfte.org/documents/COAMFTE/Accreditation%20Resources/COAMFTE%20Standards%20Version%2012.5%20-%20Published%20August%202021%20-%208.26.21%20(with%20links).pdf.

87.     That is, even after the COVID-19 pandemic, COAMFTE required graduates to have 500 hours of "face-to-face processes" and 100 supervised hours the majority in which the "supervisor and supervisee [were] physically present in the same location."[58] Standards Version 12.0 at 44. And even after the COVID-19 pandemic, Northwestern promised students like Plaintiff Quiroz that its Master of Science in Marriage and Family Therapy was accredited by COAMFTE.[59]

88.     Thus, by promising students like Plaintiff Quiroz after the COVID-19 pandemic that its Master of Science in Marriage and Family Therapy program was accredited by COAMFTE, Northwestern also promised students like Plaintiff Quiroz that its program provided students like Plaintiff Quiroz 500 hours of direct client contact through "face-to-face processes" and at least 50 hours of supervision in the same physical location as the supervisor.

89.     Not only did Northwestern promise face-to-face hours through the promise that its program was COAMFTE-accredited, but Northwestern also directly promised face-to-face client contact in its statement that the Master of Science in Marriage and Family Therapy

---

[57]     Commission on Accreditation for Marriage and Family Therapy Education, *Maintaining Accreditation*, COAMFTE, https://coamfte.org/documents/COAMFTE/Accreditation%20Resources/COAMFTE%20Standards%20Version%2012.5%20-%20Published%20August%202021%20-%208.26.21%20(with%20links).pdf (last viewed Oct. 8, 2021).

[58]     Commission on Accreditation for Marriage and Family Therapy Education, *Accreditation Standards Version 12.0*, COAMFTE 44 (Aug. 2017), https://www.coamfte.org/documents/COAMFTE/Accreditation%20Resources/2018%20COAMFTE%20Accreditation%20Standards%20Version%2012%20May.pdf.

[59]     Family Institute at Northwestern University, *Why Choose a Master of Science in Marriage & Family Therapy*, Northwestern University (July 11, 2020, 4:33 AM), http://web.archive.org/web/20200711043319/https://www.family-institute.org/graduate-education/master-science-marriage-family-therapy/why-choose.

"offer[s] a unique combination of classroom hours integrated with *face-to-face* supervised client work"[60] (emphasis added).

90.     Northwestern breached this promise by failing to provide Plaintiff Quiroz with the required 500 hours of "direct client contact" through "face-to-face processes" and "supervisor and supervisee physically present in the same location" as it promised directly and as required by COAMTE Accreditation Standards Version 12.0.[61] Standards at 34, 44.

91.     After its March 2020 COVID Closure, Northwestern also made other promises of in-person education. For example, Northwestern promised its students, "Our vision is to support hands-on experiential learning at Northwestern that enables students to engage with the physical environment, address global environmental issues, and grow as leaders in sustainability. … We are committed to providing hands-on experiential learning that not only educates our students about sustainability but also empowers them to be sustainability leaders equipped to solve critical environmental and social challenges."[62]

**After COVID-19, Northwestern Continues to Promise In-Person Access**

92.     Even after its March 2020 COVID Closure, Northwestern continued to promise students they will have access to its campus and in-person educational opportunities.

---

[60]     Family Institute at Northwestern University, *Why Choose a Master of Science in Marriage & Family Therapy*, Northwestern University (July 11, 2020, 4:33 AM), http://web.archive.org/web/20200711043319/https://www.family-institute.org/graduate-education/master-science-marriage-family-therapy/why-choose.

[61]     Commission on Accreditation for Marriage and Family Therapy Education, *Accreditation Standards Version 12.0*, COAMFTE 34, 44 (Aug. 2017), https://www.coamfte.org/documents/COAMFTE/Accreditation%20Resources/2018%20COAMFTE%20Accreditation%20Standards%20Version%2012%20May.pdf.

[62]     Northwestern, sustainNU (July 12, 2020), *available at* https://web.archive.org/web/20200712052058/https://www.northwestern.edu/sustainability/program-areas/experiential-learning/.

93.     Before its March 2020 COVID Closure, Northwestern required that first- and second-year undergraduate students live on campus.[63] Even after its March 2020 COVID Closure, Northwestern continued to require first- and second-year undergraduate students live on-campus.[64]

94.     For example, after its March 2020 COVID Closure, on May 31, 2020, Northwestern promised incoming students that they would "live in residence halls, residential colleges, and/or special-interest housing (including fraternities and sororities) during their first two years on campus ..."[65]

95.     After its March 2020 COVID Closure, Northwestern promised all undergraduate students, such as Plaintiff Veeravalli, that "these options remain open to students throughout their time at Northwestern. … Regardless of where you live, you'll find everything the campus has to offer within your residential area or nearby."[66]

96.     Northwestern reaffirmed its promise of campus access, including to housing, dining, and recreation, and fitness resources on July 31, 2020, telling students to prepare to move in between September 6-9, 2020.[67]

---

[63]     Northwestern Undergraduate Admissions, *Student Life: The Residential Experience*, Northwestern University (Oct. 13, 2019, 10:37 PM), https://web.archive.org/web/20191013223752/https://admissions.northwestern.edu/student-life/housing-dining.html.

[64]     Northwestern Undergraduate Admissions, *Student Life: The Residential Experience*, Northwestern University (May 31, 2020, 12:33 AM), https://web.archive.org/web/20200531055516/https://admissions.northwestern.edu/student-life/housing-dining.html.

[65]     *Id.*

[66]     *Id.*

[67]     Northwestern University COVID-19 and Campus Updates, *Student Fall Quarter Preparations*, July 31, 2020 https://www.northwestern.edu/coronavirus-covid-19-updates/developments/student-fall-quarter-preparations.html

97.     Even after its March 2020 COVID Closure, Northwestern promised students in-person career advancement opportunities and experiences like "career treks" and "career fairs."[68] Northwestern's instructions to students for in-person career fairs remained the same during the pandemic, promising that students would be able to practice "[r]eview[ing] the employer summaries and map before entering the room" and "[g]reet[ing] recruiters with a firm handshake and smile."[69]

98.     Northwestern continued a host of other promises even after its March 2020 COVID Closure. For example, Northwestern promised undergraduate students, regardless of their course of study, the chance to participate in in-person research. Specifically, Northwestern promised on its undergraduate admissions webpage that, "[w]ith hundreds of labs (accessible no matter your major) and major grants available, you'll have countless opportunities to engage in self-directed research."[70] Northwestern's promise of access to "hundreds of" physical labs "accessible no matter your major" was effective even after the pandemic.[71]

---

[68]     Northwestern Career Advancement, *Networking: Connecting with Others*, Northwestern University (July 11, 2020, 8:55 PM), https://web.archive.org/web/20200711205555/https://www.northwestern.edu/careers/job-intern-prep/networking/index.html.

[69]     Northwestern Career Advancement, *Career Fairs*, Northwestern University (Jan. 26, 2021, 9:25 PM), https://web.archive.org/web/20210126212556/https://www.northwestern.edu/careers/jobs-internships/career-fairs/index.html.

[70]     Northwestern University Undergraduate Admissions, *Academics*, Northwestern University (Oct. 13, 2019, 10:37 PM), http://web.archive.org/web/20191013223745/https://admissions.northwestern.edu/academics/index.html.

[71]     Northwestern University Undergraduate Admissions, *Academics*, Northwestern University (Apr. 27, 2020, 7:05 PM), http://web.archive.org/web/20200427190535/https://admissions.northwestern.edu/academics/index.html.

99.     As another example, departments conducting research at Northwestern maintained webpages listing research opportunities and laboratory locations. For instance, Northwestern promised that "Biological Sciences majors can pursue research in any one of many laboratories located on or off-campus."[72] Northwestern's promise of access to "any one of many laboratories located on or off-campus" remained effective after the pandemic.[73]

100.    As yet another example, after its March 2020 COVID Closure, Northwestern promised its law students that, "[w]ith over 40 student organizations, students have countless opportunities in the classroom and outside to build leadership skills, develop relationships with their peers, and influence the Law School agenda."[74]

**Northwestern's Breach of Post-COVID-19 Promises**

101.    Despite the fact that, even after its March 2020 COVID Closure, Northwestern promised that some courses in the Fall 2020 Quarter would be provided in a face-to-face format, it failed to provide the in-person classes promised.

102.    Despite its continued reassurance that students can and should rely on the course formats communicated in CAESAR, Northwestern failed to provide the courses offered.

---

[72]    Northwestern University Program in Biological Sciences, *Research Labs*, Northwestern University (July 2, 2019, 9:11 PM),
http://web.archive.org/web/20190702211140/https://biosci.northwestern.edu/research/research-labs.html.

[73]    Northwestern University Program in Biological Sciences, *Research Labs*, Northwestern University (July 6, 2020, 7:19 PM),
http://web.archive.org/web/20200706191953/https://biosci.northwestern.edu/research/research-labs.html.

[74]    Northwestern, Pritzker School of Law 2021-2022 Viewbook at 3, *available at*
https://wwws.law.northwestern.edu/admissions/applying/documents/northwestern-law-viewbook-2021-2022.pdf.

103. Even if courses *began* in the promised course format, Northwestern changed course formats for some courses during the Fall 2020 quarter.[75]

104. Northwestern did not give Class Members the time necessary to make alternative arrangements (such as applying to another program).

105. Despite the fact that, even after its March 2020 COVID Closure, Northwestern promised students they would receive on-campus access at the start of the Fall 2020 Quarter, many students did not in fact receive on-campus access until the following year.

106. It was not until August 28, 2020, *after* students had registered for courses and shortly before the required move-in period for all students, that Northwestern announced that no first- or second-year students would be permitted on campus and would have to take *all* of their classes remotely.[76]

107. Indeed, first- and second-year undergraduate students were not allowed on campus to access in-person resources or classes until *at least* January 2021.[77] Discovery is needed to confirm when, and to what extent, in-person access was restored, and whether and to what it was revoked again.

---

[75] *See, e.g.,* WGN9, Northwestern school halts in-person classes over virus, (Oct. 17, 2020) *available at* https://wgntv.com/news/coronavirus/northwestern-school-halts-in-person-classes-over-virus/.

[76] Northwestern Covid-19 and Campus Updates, Undergraduate Students: Updated Plans for the Fall Quarter, *available at* https://www.northwestern.edu/coronavirus-covid-19-updates/developments/undergraduate-students-updated-plans-for-the-fall-quarter.html (last viewed Oct. 15, 2021).

[77] Northwestern University COVID-19 and Campus Updates, Student Winter Terms Update, Oct. 28, 2020, *available at* https://www.northwestern.edu/coronavirus-covid-19-updates/developments/student-winter-terms-update.html (announcing plans to invite first- and second-year undergraduate students to campus beginning January 3, 2021) (last viewed Oct. 15, 2021).

**Plaintiffs' and Class Members' Injury and Damages**

108.     Northwestern canceled all classes (remote or otherwise) for a full week in Spring 2020 but did not give students any refund or discount.

109.     Northwestern priced the tuition, fees, and related expenses based on the in-person educational services, opportunities, and experiences it was providing on campus.

110.     Online education is not equivalent to in-person education and on-campus services, which Northwestern recognizes by charging significantly lower prices for online classes than in-person classes, and by having different policies regarding the awarding of credits.

111.     In Northwestern's Policy on Awarding Credit, Northwestern defines a credit hour (or course unit) as "One hour of classroom or direct faculty instruction and a minimum of two hours of out of class student work each week for approximately fifteen weeks for one semester or trimester hour of credit, or ten to twelve weeks for one quarter hour of credit, or the equivalent amount of work over a different amount of time," or "[a]t least an equivalent amount of work . . . for other academic activities as established by the institution including laboratory work, internships, practica, studio work, and other academic work leading to the award of credit hours."[78]

112.     "Quarter-long classes typically meet three hours per week on average (three 50-minute sessions per week or two 80-minute sessions) over a 10-week term."[79]

113.     "The University's standard meeting times illustrate meeting patterns that meet the requirement for direct faculty instruction each week."[80]

---

[78]     Northwestern Policy on Awarding Credit, *available at* https://www.northwestern.edu/provost/policies/awarding-credit.html (last viewed Dec. 22, 2020).

[79]     *Id.*

[80]     *Id.*

114.     While in-person classes typically require one hour of classroom or direct faculty instruction plus two hours of "out of class student work," each week, Northwestern's Policy states that, for "[o]nline and blended classes . . . the University awards one unit of credit when at least **nine** full hours of work per week are expected of the student, irrespective of department, delivery format, or degree level."[81] Students are the intended beneficiaries of this requirement.

115.     As such, Northwestern implicitly recognizes the significant different between the two delivery methods.

116.     Moreover, the tuition and fees for in-person instruction at Northwestern are higher than tuition and fees for its own online classes and for other online institutions because such costs cover not just the academic instruction, but encompass an entirely different experience that includes but is not limited to:

- Face to face interaction with professors, mentors, and peers;

- Access to facilities such as libraries, laboratories, computer labs, and study rooms;

- Student governance and student unions;

- Extra-curricular activities, groups, intramural sports;

- Student art, cultures, and other activities;

- Social development and independence;

- Hands on learning and experimentation; and

- Networking and mentorship opportunities.

117.     For example, for a student taking a course unit at Northwestern's Medill School of Journalism, Media, Integrated Marketing Communications, Northwestern charged students

---

[81]     *Id.* (emphasis added).

approximately $6,121 for the in-person, on-campus class, while it charged $4,665 for the online class.[82]



---

[82]     Northwestern University, Student Finance, Medill School of Journalism, Media, Integrated Marketing Communications, 2019-2020 tuition (July 2019), *available at* https://web.archive.org/web/20190709215628/https://www.northwestern.edu/sfs/tuition/graduate /medill-school-of-journalism.html.

118.    The online learning options being offered to Plaintiffs and Class Members are materially different compared to the educational experience previously afforded to them. For example, Northwestern used programs by which previously recorded lectures were posted online for students to view on their own or by virtual Zoom meetings. Therefore, there was a lack of classroom interaction among teachers and students, and among students that is instrumental in educational development and instruction.

119.    The online formats being used by Northwestern do not require the development of strong study skills given the absence of any possibility of being called on in class and the ability to consult books and other materials when taking exams. Further, the ability to receive a Pass-Fail grade rather than a letter grade provides educational leniency that the students would not otherwise have with the in-person letter grading education that was paid for and expected.

120.    Plaintiffs and Class Members have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.

121.    Plaintiffs and Class Members were denied access to facilities such as libraries, laboratories, computer labs, recitations, and study rooms, which are considered integral to a college education.

122.    Plaintiffs and Class Members were denied access to activities offered on campus including those that fosters intellectual and academic development and independence, and networking for future careers.

123.    Plaintiffs and Class Members have done all they can to mitigate their damages, and have made appropriate arrangements based on Northwestern's representations, including those on its website concerning dinning, housing, and other traditional campus experiences.

124.     Plaintiffs and Class Members did not and do not have the option of transferring or pausing their education to wait for the resumption of in-person classes, whether based on Northwestern's matriculation requirements, financial burden, or other academic or personal necessity, and were, therefore, compelled to pay full tuition for inferior education in the Spring, Summer, Fall, and any subsequent quarters if they wished to avoid the prejudice associated with an interrupted or terminated education.

125.     Moreover, students would have to reapply for admission if they withdrew from attending any quarter.

126.     Northwestern refused to refund tuition and related expenses properly and proportionally.

127.     As a result of Northwestern's closure of its campuses, Northwestern has failed to deliver the educational services, facilities, access and/or opportunities that Plaintiffs and the Class Members paid for, either directly or through a third-party on their behalf.

128.     Plaintiffs and Class Members did not choose and pay to attend an online college, but instead chose to attend Northwestern's elite institution and enroll on an in-person basis and have access to the facilities and educational opportunities available on Northwestern's campuses.

129.     The online learning options Northwestern actually given, though consistent with safety measures, thus simply cannot provide the academic experiences Northwestern itself touts as its signatures.

130.     Northwestern has not made any refund of any portion of the tuition Plaintiffs and Class Members paid for the Spring 2020 quarter and has provided only some students an inadequate discount for other quarters.

131. Northwestern has not refunded any portion of the fees it collected from Plaintiffs and Class Members for the affected quarters even though it closed or ceased operating the services and facilities for tuition and fees were intended to pay.

132. Through this lawsuit, Plaintiffs seek, for themselves and the Class Members, Northwestern's reimbursement, return, and disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time in the affected quarters when classes moved online and campus services ceased being provided, accounting for the diminished value of online learning. Plaintiffs seek return of these amounts on behalf of themselves and the Class as defined below.

133. Plaintiffs further seek, for themselves and Class Members, Northwestern's reimbursement, return, and disgorgement of the tuition and fees paid for subsequent quarters, over and above the value of online learning.

134. Plaintiffs also seek damages relating to Northwestern's passing off an online, "virtual" college experience as similar in kind to full immersion in the academic life of a college campus.

## <u>CLASS</u> <u>ALLEGATIONS</u>

135. This action is brought, and may properly be maintained as, a class action pursuant to FED R. CIV. P. 23(b)(3) on behalf of the following Class:

> Any person who paid or caused to be paid tuition and/or fees for attendance at Northwestern University programs when classes and/or coursework were limited in whole or in part to online attendance as a result of or in connection with COVID-19.

136. Members of the Class are collectively referred to herein as "Class Members."

137. Specifically excluded from the Class are Northwestern, Northwestern's officers, directors, trustees and agents, the judge assigned to this action, and any member of the judge's immediate family.

138. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

139. **Numerosity.** The members of the Class are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiffs reasonably estimate that there are thousands of Class Members. Although the precise number of Class Members is unknown to Plaintiffs at this time, the true number of Class Members is known by Northwestern and may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Northwestern and third-party retailers and vendors.

140. **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all Class Members and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to, the following:

(a) whether Northwestern accepted money from Class Members in exchange for the promise to provide in-person, on-campus educational services;

(b) whether Northwestern has provided the services for which Class Members contracted;

(c) whether Class Members are entitled to a refund for that portion of the tuition and fees that was contracted for services that Northwestern did not provide; and

(d) whether Northwestern is liable to Plaintiffs and the Class Members for unjust enrichment.

141. **Typicality.** Plaintiffs' claims are typical of the claims of the other members of the Class in that, among other things, all Class Members were similarly situated and were comparably injured through Northwestern's wrongful conduct as set forth herein. Further, there are no defenses available to Northwestern that are unique to Plaintiffs.

142. **Adequacy of Representation.** Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Class. Furthermore, Plaintiffs have no interests that are antagonistic to those of the Class.

143. **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense of individual litigation of their claims against Northwestern. It would, thus, be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if Class Members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

144. In the alternative, the Class may also be certified because:

(a) the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the Northwestern;

(b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)    Northwestern has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class.

## COUNT I
### Breach Of Contract
### (On behalf of Plaintiffs and the Class)

145.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

146.    Plaintiffs bring this claim individually and on behalf of the Class against Northwestern.

147.    Through its school policies, course catalog, course schedule, representations, admission agreement, registration materials, course of past conduct, and payment of tuition and fees, Plaintiffs and each Class Member entered a binding contract with Northwestern. This contract was both express and implied in fact.

148.    As part of the contract, and in exchange for the aforementioned consideration, Northwestern promised to provide in-person, on-campus education services, including in-person instruction and access to on campus resources, for the full duration of the applicable term.

149.    Northwestern's in-person educational opportunities, experiences, and services are of substantial value.

150.    Northwestern's online educational opportunities, experiences, and services, while perhaps educationally adequate, possess a lower market price and a lower market value.

151.    Northwestern has agreed to provide in-person educational opportunities, experiences, and services to Plaintiffs and Class Members.

152.    Northwestern has promoted its in-person educational services as being valuable to the educational experiences and development of Plaintiffs and Class Members.

153.     Plaintiffs and Class Members fulfilled their end of the bargain when they paid monies due for tuition, fees, and related expenses.

154.     Northwestern has failed to provide the contracted-for services and has otherwise not performed under the contract as set forth above.

155.     Northwestern has retained monies paid by Plaintiffs and Class Members and refuses to issue tuition adjustments or any other type of refund or reimbursement for services Plaintiffs and Class Members never received.

156.     Plaintiffs and Class Members have suffered damage as a direct and proximate result of Northwestern's breach, including but not limited to deprivation of the education, experience, and services that they were promised and for which they have already paid.

157.     As a direct and proximate result of Northwestern's breach, Plaintiffs and the Class Members are entitled to damages, to be decided by the trier of fact in this action, to include but not be limited to reimbursement of certain tuition, fees, and other expenses that were collected by Northwestern for services that Northwestern has failed to deliver.

## COUNT II
### Unjust Enrichment
### (On behalf of Plaintiffs and the Class and in the Alternative to Count I)

158.     Plaintiffs bring this claim individually and on behalf of the Class against Northwestern, in the alternative to Count I and in the event that (a) Northwestern disputes that any contract exists to provide in-person classes and educational services and access to campus; (b) any such contract is found not to cover in-person classes and/or educational services and/or access to campus; (c) any such contract is found to be illusory, *e.g.,* if Northwestern can change course formats or course length "without notice"; (d) any such contract is found to be void or unenforceable; or (e) performance of any such contract is excused, *e.g.,* if performance is found to be impossible.

159.    Plaintiffs and Class Members conferred a benefit on Northwestern in the form of monies paid for tuition, fees, and related expenses in exchange for in-person educational services and in-person facility access, and an in-person, on-campus educational experience. Tuition and fees were intended to cover in-person educational services, not a virtual campus and online courses.

160.    Plaintiffs and the Class Members did not pay for course credits. Plaintiffs and the Class Members paid for the services Northwestern promised, which services they did not receive.

161.    Northwestern voluntarily accepted and retained this benefit by accepting payment from Plaintiffs and the Class.

162.    Northwestern unfairly and inequitably retained the tuition and fees paid by Plaintiffs and the Class, even though it ceased providing the full education, experience, and services for which the tuition and fees were collected.

163.    The online education services Northwestern substituted for the in-person education and on-campus services for which Plaintiffs and Class Members paid has a substantially lower price and lower market value, but Northwestern has nonetheless retained full payment from Plaintiffs and the Class.

164.    It would be unjust and inequitable for Northwestern to retain benefits in excess of the services it provided, and Northwestern should be required to disgorge any tuition and fees that exceed the value of online education for the days of instruction where Northwestern failed to provide in-person, on-campus academic experience.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Northwestern, as follows:

(a)    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class;

(b)    For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

(c)    For actual, compensatory, and all other available damages in amounts to be determined by the Court and/or jury;

(d)    For prejudgment interest on all amounts awarded;

(e)    For an order of restitution and all other forms of equitable monetary relief, including disgorgement;

(f)    For injunctive relief as pleaded or as the Court may deem proper;

(g)    For an order awarding Plaintiffs and the Class reasonable attorneys' fees and expenses and costs of suit; and

(h)    All other relief to which Plaintiffs and members of the Class may be entitled by law or in equity.

## **<u>DEMAND FOR TRIAL BY JURY</u>**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated: October 15, 2021

Respectfully submitted,

*/s/ Yvette Golan*_____
Yvette Golan
THE GOLAN FIRM PLLC
529 14th Street NW Suite 914
Washington DC 20045
Tel: 866-298-4150, ext. 101
Fax: 928-441-8250
Email: ygolan@tgfirm.com

Katrina Carroll
Kathleen P. Lally
LYNCH CARPENTER, LLP
111 West Washington Street
Suite 1240
Chicago, IL 60602

Tel: (312) 750-1265
Email: katrina@lcllp.com
Email: kathleen@lcllp.com

Daniel A. Edelman
Cathleen M. Combs
Julia Ozello
EDELMAN, COMBS, LATTURNER &
GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, IL 60603
Tel: 312-626-3585
Email: dedelman@edcombs.com
Email: ccombs@edcombs.com
Email: jozello@edcombs.com

James A. Francis (*Pro Hac Vice*)
John Soumilas (*Pro Hac Vice*)
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Tel: 215-735-8600
Fax: 215-940-8000
Email: jfrancis@consumerlawfirm.com
Email: jsoumilas@consumerlawfirm.com

Jeffrey K. Brown, Esq. (*Pro Hac Vice forthcoming*)
Michael Tompkins, Esq. (*Pro Hac Vice*)
LEEDS BROWN LAW, P.C.
One Old Country Road, Suite 347
Carle Place, NY 11514
(516) 873-9550
jbrown@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com