**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| NATHANIEL POLLEY, NANCY QUIROZ, SURYA VEERAVALLI, and DANIEL GREENWALD, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>NORTHWESTERN UNIVERSITY,<br><br>        Defendant. | Civil Action No. 1:20-cv-04798<br>Honorable Judge Harry D. Leinenweber |

**DEFENDANT NORTHWESTERN UNIVERSITY'S RESPONSE
IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

Defendant Northwestern University ("Northwestern") submits this Response in Opposition to the Motion to Compel (Dkt. 107, the "Motion") filed by plaintiffs on May 14, 2024. Following plaintiffs' half-hearted attempts to resolve these issues directly with Northwestern, and after dragging out these disputes for over six months, plaintiffs now move pursuant to Federal Rule of Civil Procedure 37(a) for an order: (1) compelling Northwestern to provide additional discovery, (2) entering an ESI protocol, (3) entering a protocol related to the Family Educational Rights and Privacy Act ("FERPA"), and (4) extending discovery for 75 days after an order on their Motion. Mot. at 1. Northwestern opposes plaintiffs' Motion, and in advance of the hearing set by the Court for Tuesday, May 21, 2024, *see* Dkt. 108, hereby states the following:

**ARGUMENT**

"The party requesting discovery bears the initial burden of establishing its relevancy." *Kyle v. Brennan*, No. 17 CV 3649, 2020 WL 13853499, at *1 (N.D. Ill. Aug. 18, 2020). Indeed,

1

"relevancy is the *sine qua non* of any discovery request," *Brown v. Crete Monee Cmty. Unit Sch. Dist., No. 201 U*, No. 20 C 5688, 2022 WL 1620024, at *2 (N.D. Ill. May 23, 2022), and "failure to make even a colorable initial showing as to relevance can doom a motion to compel," *West v. Miller*, No. 05C4977, 2006 WL 2349988, at *2 (N.D. Ill. Aug. 11, 2006), *aff'd*, No. 05 C 4977, 2007 WL 541943 (N.D. Ill. Feb. 13, 2007). The moving party also must demonstrate the requested discovery is proportional to the needs of the case. *See Trainauskas v. Jacob*, No. 21 C 4311, 2023 WL 121818, at *1 (N.D. Ill. Jan. 6, 2023). If the moving party makes this initial showing, the burden shifts to the objecting party to demonstrate the requests at issue are improper. *Id.* at *1.

## I. Plaintiffs' Motion Is Procedurally Improper.

As an initial matter, plaintiffs' Motion should be denied because plaintiffs did not fully comply with the conferral requirements of Local Rule 37.2.[1] Plaintiffs only met and conferred *once* via telephone with Northwestern (on December 11, 2023) regarding Northwestern's discovery responses. This call was cursory at best, as plaintiffs did not engage substantively with any of the parties' disputes. The parties then reached impasse regarding the discovery requests at issue here on February 16, 2024, yet, plaintiffs did not pursue another meet and confer call with Northwestern and delayed bringing this motion for nearly three months—and brought it just 24 days prior to the close of discovery. These facts in themselves weigh against granting plaintiffs' Motion. *See West*, 2006 WL 2349988, at *6 (finding undue delay in bringing motion to compel constituted waiver where party filed motion to compel after four months of delay and shortly before the close of fact discovery); *see also Rainey v. Metro. Water Reclamation Dist.*, No. 11 C 2594, 2012 WL 2192241, at *2 (N.D. Ill. June 14, 2012) (Leinenweber, J.) (denying motion to

---

[1] In addition to the procedural mishap described above, plaintiffs' Motion exceeds the page limit set out in Local Rule 7.1.

compel without prejudice where "Plaintiff did not comply with the Rule as it is intended—to give the opposing party notice of the specific deficiencies in its production before a motion is filed").

Moreover, the parties never conferred at all regarding the ESI protocol proposed by plaintiffs or the FERPA order, apart from exchanging emails. Again, this fact is not insignificant. *See* L.R. 37.2 ("[T]his court shall . . . refuse to hear any and all motions for discovery unless the motion includes a statement that after consultation in person or by telephone and good faith attempts to resolve differences they were unable to reach an accord.").

## II.       Plaintiffs Have Not Shown That the Discovery They Seek Is Relevant or Proportional.

Plaintiffs have failed to establish that the discovery they seek is relevant and/or proportional to the needs of the case, and for this reason, plaintiffs' Motion should be denied. *See Maxxsonics USA, Inc. v. Fengshun Peiying Electro Acoustic Co.*, No. 10 C 1174, 2012 WL 962698, at *3 (N.D. Ill. Mar. 21, 2012) (Leinenweber, J.) ("[T]he Court finds that [the party opposing the requested discovery] has demonstrated that the requested discovery would be unduly burdensome in light of the extensive resources it would require and the limited value that any such evidence would have to the case at hand.").

***Calculation of Tuition and Fees.*** Plaintiffs first explain they are "seeking information on [Northwestern's] tuition and fees, including the calculations and valuations of what to charge students," and assert that this information is "relevant to determining damages and evaluating whether [Northwestern] was unjustly enriched by its retention of Plaintiffs' and the Class's payments for on-campus programs during the transition to remote instruction." Mot. at 6. However, Northwestern has produced the amounts of tuition and fees that were charged to students, and the net tuition and fees received by Northwestern in any given fiscal year is a publicly-available in Northwestern's Annual Financial Reports. *See Northwestern University*,

3

Northwestern University Annual Financial Reports, https://www.northwestern.edu/financial-operations/annual-financial-reports/ (last visited May 20, 2024). Any internal calculations have nothing to do with the market value of Northwestern's programs – which is what plaintiffs would need to establish to prove their damages.

*Limitation of Discovery to Specific Quarters and Students.* Plaintiffs next argue that Defendants improperly limited its responses to the Spring 2020, Summer 2020, and Fall 2020 quarters and "to information that was specific to 'the named plaintiffs' programs and/or schools,'" "even though Plaintiffs' and the Class's claims are not so limited." Mot. at 8. However, plaintiffs previously agreed not to seek production relating to the Winter and Spring 2021 quarters as long as Northwestern produced Fall 2020 documents, which Northwestern is willing to do. Therefore, plaintiffs' inclusion of this issue in this Motion is perplexing.

Additionally, no class has been certified in this action, and no class *can* be certified for the academic quarters and programs beyond those referenced in Northwestern's discovery responses as plaintiffs do not have a representative for Northwestern's approximately 125 remaining graduate programs, and as all students other than first- and second-year undergraduate students were allowed back on campus beginning in the Fall 2020 quarter. *See* Dkt. 107-1 at 14–15.

What's more, any discovery into Northwestern's approximately 125 additional graduate programs would be overly burdensome. As Northwestern has explained to plaintiffs several times, Northwestern does not have a central repository of documents, and its graduate programs are administered separately, meaning that Northwestern would have to collect documents from the offices of each of the other graduate programs. Unless and until a class is certified covering students in these additional programs, this burden is not justified.

*Other Legal Proceedings.* Plaintiffs assert that documents relating to Northwestern's legal proceedings or other efforts to collect tuition and fee debts from students, as well as documents relating to other lawsuits filed against Northwestern for failure to provide promised services, "are relevant to [Northwestern's] interpretation of students' responsibilities under the contract and, potentially, damages." Mot. at 9–11. This relevance claim is particularly tenuous. Whether or not Northwestern has pursued legal relief with respect to any tuition and fees owed to it by its students has no bearing on the terms of the implied contract that such tuition and fees were intended to cover.

*Marketing Analyses.* Plaintiffs argue that Northwestern's "marketing campaigns, proposed marketing campaigns, focus groups, website engagement, and attendance surveys are relevant to students' expectations and choices as [a] result of [Northwestern]'s representations in its marketing." Mot. at 12. However, as plaintiffs acknowledge, Northwestern already agreed to produce "documents sufficient to show the marketing materials provided to prospective students seeking to apply for admission to the named plaintiffs' programs . . . for the 2019-2020 or 2020-2021 academic years." *Id.* at 12 n.6. The remaining documents that plaintiffs seek are internal to Northwestern, and thus have no bearing on ***students'*** expectations and choices or the terms of any implied contract between Northwestern and its students.

*Costs, Price Determinations, and Monetary Valuations.* Plaintiffs also request that this Court compel the production of additional "damages" information. Mot. at 14. Northwestern, however, has produced or has agreed to produce many documents containing the type of financial information that plaintiffs seek, including documents sufficient to show the tuition and fees charged to full-time, degree-seeking undergraduate and graduate students during the Spring 2020 and Summer 2020 academic quarters, as well as the tuition and fees charged to full-time, degree-

seeking undergraduate students during the Fall 2020 academic quarter; documents sufficient to show the total amount of tuition Northwestern received from full-time, degree-seeking students for the Spring 2020, Summer 2020, and Fall 2020 academic quarters; documents sufficient to show any refunds provided to students who opted to withdraw for a quarter after learning that such quarter would be conducted remotely; and many documents with financial information that were provided to Northwestern's Board of Trustees. Moreover, Northwestern's annual financial reports are available on its website dating back to 2001. It is not clear to Northwestern what additional information plaintiffs seek, and why any additional information would be needed to establish damages here.[2]

*ESI Protocol.* Plaintiffs further ask the Court to "enter the ESI protocol attached as an exhibit to th[eir] motion."[3] Mot. at 15. Simply stated, the time for an ESI protocol has passed. At this point in discovery, Northwestern's production is substantially complete. In order to comply with plaintiffs' proposed ESI Protocol, Northwestern would have to re-do its document collection and re-produce all of its documents. Plaintiffs did not confer with Northwestern on this issue, and barely engaged with Northwestern over the nearly six months that have passed since they first raised it aside from an email on February 16 and a second email over two months later on April

---

[2] The cases cited by plaintiffs here are inapposite. For example, plaintiffs describe *Suchanek v. Univ. of Kentucky*, an employment discrimination action, as "finding testimony about endowments [] relevant to claims and defenses." Mot. at 14. The court found the testimony at issue to be relevant, however, because it related to the plaintiff's job performance—any reference to "endowments" was incidental and not the focus of the claims or the court's analysis. *Suchanek v. Univ. of Kentucky*, No. CIV.A. 3:10-19-DCR, 2011 WL 1642562, at *1 (E.D. Ky. May 2, 2011). And in *American Taxi Dispatch, Inc. v. American Flat Rate, Inc.*, the court did state that the "Defendant's revenue and other financial information" was "relevant to a determination of plaintiff's damages, if any," but in that case, a trademark infringement action, the plaintiff expressly sought to "recover all profits derived from defendant's allegedly infringing acts," meaning the discovery sought was directly tied to the damages at issue. *Am. Taxi Dispatch, Inc. v. Am. Flat Rate, Inc.*, No. 10 C 1532, 2011 WL 13552050, at *1 (N.D. Ill. Apr. 15, 2011).

[3] Plaintiffs omit to mention the search terms they requested that Northwestern run, which included terms like "refund" and "campus" with no limiters. It goes without saying that terms like these are likely to hit on a large universe of non-responsive documents related to the university's routine operations.

30. During this expansive time period, Northwestern continued to diligently work on its document production. Plaintiffs should not now – on the eve of the close of fact discovery – be permitted to entirely alter the structure and scope of discovery in this way. As Northwestern has repeatedly explained to plaintiffs, it does not have a central repository of documents, but instead, must work with specific offices and custodians to obtain requested documents. Thus, the burdens involved are particularly significant.

*FERPA Order.* Finally, plaintiffs note that the parties "have already agreed to submit a FERPA Order to the Court," but in the event that the parties are unable to come to a final agreement on the language of that order, ask the Court to enter the FERPA Order attached as an exhibit to plaintiffs' Motion. Mot. at 16–17. The parties had not reached impasse on this issue – a fact expressly acknowledged by plaintiffs in their Motion, *see id.* at 16 – so Northwestern was surprised that plaintiffs chose to bring this issue to the Court for resolution, particularly in light of the fact that Northwestern has made clear to plaintiffs that no discovery is being withheld on these grounds. Northwestern further notes that plaintiffs attached to their Motion a version of the FERPA Order that contains language that Northwestern has repeatedly rejected in paragraph 2 (Dkt. 107-6). Specifically, the order as drafted would require Northwestern to provide notice to all implicated students within five days of receiving discovery requests, which would not even give Northwestern enough time to analyze and identify which students could be implicated.

### CONCLUSION

For the foregoing reasons, Northwestern respectfully requests that the Court deny plaintiffs' Motion. [4]

---

[4] Northwestern objects that any extension of discovery is necessary. However, in the event that the Court does grant any part of Plaintiffs' motion, a discovery extension (if any) should be proportional to the specific demands of that order, therefore a 75 day extension request is premature.

Dated: May 20, 2024

Respectfully submitted,

/s/ LaRue L. Robinson

Craig C. Martin
LaRue L. Robinson
Chloe E. Holt
WILLKIE FARR & GALLAGHER LLP
300 N. LaSalle Drive
Chicago, IL 60654
Tel: (312) 728-9050
Fax: (312) 728-9199
cmartin@willkie.com
lrobinson@willkie.com
cholt@willkie.com

*Counsel for Defendant*