**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NANCY QUIROZ, SURYA VEERAVALLI, and DANIEL GREENWALD, on behalf of themselves and all others similarly situated, | Civil Action No. 1:20-cv-04798 |
| Plaintiffs, | Honorable Lindsay C. Jenkins |
| v. | |
| NORTHWESTERN UNIVERSITY, | |
| Defendant. | |

**PLAINTIFFS' MOTION TO COMPEL**

Pursuant to Fed. Rule Civ. P. 37(a), Plaintiffs Nancy Quiroz, Surya Veeravalli, and Daniel Greenwald ("Plaintiffs") move the Court for an order compelling Defendant Northwestern University ("Defendant") to produce electronically stored information ("ESI"), financial records, documents concerning Defendant's commitment to providing a safe learning environment (a key term of the parties' contract), a privilege log, and set a deadline for the production of all remaining documents. The parties telephonically met and conferred, through (Eddie) Jae K. Kim and Tiffine E. Malamphy on behalf of Plaintiffs and Defendant's counsel, on November 25, 2024, at 3:00 pm CT and engaged in communication thereafter, but were unable to reach a compromise.

**I.      INTRODUCTION**

Discovery is meant to be a self-effectuating process; yet, in this litigation, it has been anything but. At every opportunity, Defendant has stonewalled discovery by delaying its production of documents, delaying its responses to meet-and-confer efforts, and improperly withholding documents and information. Defendant has adopted the following strategy: take an unsupportable position that dictates how Plaintiffs should litigate their claims, force Plaintiffs to

meet-and-confer to resolve discovery disputes that should not exist, offer small concessions but ultimately refuse to compromise, then accuse Plaintiffs of delaying discovery and not being diligent. Defendant's tactic must be rejected for what it is—gamesmanship. There is no reason to permit Defendant—one of the top 10 national universities with significant revenue and influence— to spend nearly 2 years to produce 1,666 documents (a mere fraction of the responsive documents), many of which were produced after Plaintiffs identified the documents as ones that should have been produced in the first instance. The following are missing from Defendant's production: (1) ESI; (2) financial records; (3) documents concerning Defendant's commitment to providing a safe learning environment; and (4) a privilege log. Plaintiffs respectfully request that Defendant be compelled to produce the foregoing and that the Court set a date certain for Defendant to complete its production of documents.

## II.     PRIOR DISCOVERY DISPUTES REQUIRING COURT INTERVENTION

On May 14, 2024, Plaintiffs filed a motion to compel Defendant to produce information and documents concerning Defendant's calculation of tuition and fees; Defendant's collection efforts against students for unpaid tuition and fees; Defendant's studies of its marketing efforts; and information regarding any changes to Defendant's endowment. Dkt. No. 107. Additionally, Plaintiffs requested the entry of an ESI protocol. *Id.* Defendant argued an ESI protocol was not necessary because its "production [was] substantially complete" by May of 2024. Dkt. No. 109, at 6. At that time, Defendant had produced 685 documents. Kim Decl., at ¶ 2. Since then, Defendant has produced around 1,000 more documents. *Id.* Defendant also stated, that as November 2024, its production *was not* substantially complete. *See* Kim Decl., Ex. 9.

In response to the motion to compel, the Court ordered the parties to meet and confer further and continued Plaintiffs' motion to compel. Dkt. No. 110. However, Plaintiffs' motion was

dropped from the schedule without a final ruling or an explanation for its removal from the calendar, and the matter was reassigned. *See* Dkt. Nos. 113, 115.

### III.   DEFENDANT SHOULD BE COMPELLED TO PRODUCE THE REQUESTED DOCUMENTS

#### A.  Defendant's ESI is Relevant to this Litigation.

##### i.  *Defendant's Metadata is Missing.*

Each set of Plaintiffs' requests for production ("RFP") defines "DOCUMENTS" to include ESI and specifies the form of production for ESI to include metadata. Kim Decl., at ¶ 3; *see e.g.*, Kim Decl., Ex. 2. Defendant never objected to the production of ESI in its responses to Plaintiffs' RFPs. Kim Decl., at ¶ 4; *see e.g.*, Kim Decl., Ex. 3; *see also Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 106 (E.D. Pa. 2010) ("Under Federal Rule of Civil Procedure 34, a party may specify the form of production of documents as including metadata and the responding party then must either produce it in the form specified or object."). To date, Defendant has not substantively produced any internal communications regarding this matter or sufficient metadata for its previously produced documents. *See* Kim Decl., at ¶ 5. Plaintiffs raised the issue of Defendant's ESI over a year ago and sent Defendant a proposed ESI protocol. Kim Decl., at ¶ 6; *see* Dkt. No. 107-5. Defendant has refused to produce any ESI, including metadata, on the basis that it does not have a central repository of documents and is producing documents "as they are kept in the normal course of business." Kim Decl., Ex. 4. But Defendant's metadata has clearly been scrubbed. For example, 1,496 documents say the custodian is "Northwestern" and that the documents were created and modified on "Dec 31, 9999 11:59PM EST." Kim Decl., at ¶ 5. Defendant's production is primarily PDFs with no Word documents, even when the document is clearly a template.[1] *Id.* Finally, the

---

[1] Previously, Plaintiffs had offered to not seek Word documents, but, given Defendant's refusal to produce all responsive ESI or identify which witness' files from Defendant's initial disclosures

few documents produced in Native format show that the documents were modified within a few months of being produced, with some showing modifications were made the day before Defendant's production, while Defendant's PDFs do not have any modification dates. *Id.*

"When a party is required to produce electronic documents as they are maintained in the ordinary course of business, the producing party should produce the electronic documents with their metadata intact. A file that is converted to another format solely for production, or for which the application metadata has been scrubbed or altered, is not produced as kept in the ordinary course of business. To the extent that any files that Nasco has produced have been scrubbed of their metadata, the documents produced are not responsive to Goodson's request." *Goodson v. Nasco Healthcare Inc.*, No. 3:21-CV-1467-N, 2023 WL 5604131, at *2 (N.D. Tex. Aug. 28, 2023) (internal citations omitted); *see In re Profundity LLC*, 663 B.R. 383, 385 (Bankr. S.D. Fla. 2024) (granting motion to compel based on foregoing reasoning); *Curry v. Boeing Co.*, No. 20 C 3088, 2021 WL 12318774, at *1 (N.D. Ill. July 1, 2021) ("The court also agrees with Boeing that all ESI must be produced in a format that preserves metadata and that is Bates-labeled.").

Here, in addition to Defendant's failure to object to the production of metadata, such information is particularly relevant because Defendant has identified 19 of its employee as likely to have discoverable information and stated that it produced documents from, around, 14 departments. Kim Decl., Ex. 6-7. Plaintiffs are unable to identify which document is relevant to which of Defendant's identified witnesses without the necessary metadata. Plaintiffs are also unable to identify if any other person would be a particularly relevant witness. Further, Defendant's production includes template versions of acceptance materials (Kim Decl., at ¶ 5),

---

were searched, Plaintiff is rescinding that offer to avoid being prejudiced by Defendant's stonewalling. Kim Decl., at ¶ 7, Ex. 5.

4

which do not indicate the date of creation or whether there were any recent modifications to the document. This may lead to admissible evidence about Defendant's promise to provide in-person instruction by revealing prior representations about an on-campus education. Defendant's production also includes Excel spreadsheets with aggregated student data. These documents show that metadata was removed from the PDF productions since the Excels include original author, last saved by, and comments from Defendant's employees. *Id.* All of this information is relevant to identifying potential witnesses. More importantly, none of Defendant's documents include the location of where the document was stored (*i.e.*, the file location). *Id.* This data is particularly key in this matter given Defendant's representation that there is no "central repository" of documents and that the documents were produced in manner maintained in the ordinary course of business. Kim Decl., Ex. 4. Without the file location, Plaintiffs have no way of confirming Defendant's representations or identifying where additional, relevant documents may exist or be located.

Therefore, the Court should compel Defendant to comply with Plaintiffs' RFPs and produce the requested metadata. *See e.g.*, Kim Decl., Ex. 2.

### ii. *Defendant's Internal Communications Must be Produced.*

Defendant's internal communications are also highly relevant as they may lead to the discovery of admissions that Defendant breached its contract with Plaintiffs and the Class or was unjustly enriched by its retention of on-campus tuition and fees. In fact, Defendant has already admitted that students suffered a loss. Kim Decl., at ¶ 8. It is likely that Defendant's internal communications reveal admissions about its breach of contract despite its refusal to provide a *pro rata* refund of tuition and fees or admissions about Defendant's unjust enrichment by retaining the full tuition and fees. Additionally, Defendant's internal discussion about refunds and shutting down its campus may lead to admissible evidence that Plaintiffs could present to refute

Defendant's affirmative defenses, specifically: impossibility/impracticability, ratification, contract modification, and failure to mitigate. *See* Dkt. No. 93. Defendant's internal discussions may also lead to impeachment evidence and Defendant should not be permitted to withhold incriminating admissions. *See Handorf v. Milliman, Inc.*, 731 F. Supp. 3d 1077, 1083 (N.D. Iowa 2024) (finding internal communications relevant because "[t]he documents being sought might be wholly inconsequential and contain nothing that impeaches the people performing the analysis. Then again, they could [contain impeachment material]."). Finally, Defendant's internal communications will likely lead to admissible evidence supporting Plaintiffs' and the Class's unjust enrichment claim. Specifically, emails discussing Defendant's decision to issue a 10% reduction in tuition for undergraduate students but refusing to do so for graduate students, which ultimately led to an increase in profits despite the dire financial circumstances that supported reducing undergraduate tuition.

Accordingly, Defendant's internal communications are relevant, and the Court should compel Defendant to produce them, just as numerous other courts have done. *See e.g.*, *Koursa, Inc. v. manroland Inc.*, No. 12 C 746, 2014 WL 13111301, at *4 (N.D. Ill. Sept. 10, 2014) (refusing to exclude defendant's internal communications about its "ability to perform under the contract"); *Tier1 Innovation, LLC v. Expert Tech. Grp., LP*, No. CIV.A.06-CV-04622, 2007 WL 1576466, at *1 (E.D. Pa. May 30, 2007) (finding internal communications were "reasonably calculated to lead to relevant admissible evidence regarding the parties' understandings" of the contract); *Triumph Aerostructures, LLC v. Comau, Inc.*, No. 3:14-CV-2329-L, 2015 WL 5502625, at *7 (N.D. Tex. Sept. 18, 2015) (finding internal documents and communications "would at least be relevant to the claims or defenses raised in this action" for breach of contract); *Chartwell Therapeutics Licensing LLC v. Citron Pharma LLC*, No. 16CV3181MKBCLP, 2017 WL 11704930, at *3 (E.D.N.Y. Aug.

4, 2017) (finding defendant's internal communications were highly relevant based on plaintiff's argument that "internal communications will provide information about the alleged contract modification"); *Sewell v. St. Bernard Par. Gov't*, No. CV 21-2376, 2022 WL 22855267, at *4 (E.D. La. Dec. 2, 2022) (finding internal communications regarding the decision to not pay plaintiff "in the aftermath of Hurricane Ida is relevant.").

### iii. Defendant has Improperly Withheld Thousands of Responsive Electronic Documents.

On February 16, 2024, Plaintiffs proposed ESI search terms to Defendant. Kim Decl., Ex. 8. Defendant refused to respond to Plaintiffs' proposal for months. *Id.* When Defendant finally responded to Plaintiffs' proposal, Defendant claims that its "production, once complete, will satisfy Northwestern's obligations" to comply with discovery. *Id.* This is not true. Defendant admitted that Plaintiffs' ESI search terms revealed 100,000 unique, responsive documents. Kim Decl., Ex. 9. Defendant cannot have complied with its discovery obligations when it has inexcusably withheld so many documents, especially when it never objected to ESI in its discovery responses. *See In re Aircrash Disaster Near Roselawn, Ind. Oct. 31, 1994*, 172 F.R.D. 295, 306–07 (N.D. Ill. 1997) (finding that defendants' objections that discovery requests were "'vague, overly broad, unduly burdensome, and seeks information that is not relevant and not reasonably calculated to lead to the discovery of relevant evidence' [and] 'seeks information and material protected by the attorney client, work product doctrine or other privilege [were] inconsistent with both the letter and the spirit of the Federal Rules of Civil Procedure [as] objection to a document request must clearly specify the objection and how that objection relates to the documents being demanded [because the] burden is on the party resisting discovery to clarify and explain precisely why its objections are proper given the broad and liberal construction of the federal discovery rules."); *In re Jimmy John's Overtime Litig.*, No. 14 C 5509, 2016 WL 10957249, at *1 (N.D. Ill.

7

July 28, 2016) (ordering defendant to amend its responses where "[t]he responses state that subject to and without waiving the general objections, and in accordance with Rule 34, Jimmy John's was producing certain identified documents. That response sheds no light on whether any documents which would have been produced but for the objections were being withheld").

Plaintiffs have been, and remain, willing to negotiate ESI search terms with Defendant to avoid undue burden or excessive expense. Kim Decl., at ¶ 6. Defendant has refused to try to compromise. *See* Kim Decl., Ex. 7-8. Given the explicit evidence that Defendant is withholding a significant number of documents, the Court should compel Defendant to produce ESI, especially internal communications relating to Defendant's decision to not issue refunds and its internal communications concerning shutting down its campus.[2]

### B. Defendant's Financial Records are Relevant and Should be Produced.

Despite Defendant's repeated assertions that this matter is simply a breach of contract case, Plaintiffs have alleged, in the alternative, that Defendant was unjustly enriched by its refusal to refund any portion of students' tuition and fees even though Defendant was not incurring the same costs for its educational services as it would if the service was delivered on campus and in person. *See* Dkt. No. 55; *see also* Dkt. No. 71 (denying motion to dismiss Plaintiffs' unjust enrichment claim). Plaintiffs requested documents sufficient to show significant financial expenditures or savings incurred solely as a result of COVID-19, in RFP No. 31, and Defendant agreed to produce such documents. Kim Decl., Ex. 10. Plaintiffs also asked Defendant to identify "any significant financial expenditure, cost, or expense" to Defendant solely as a result of COVID-19, in

---

[2] Should the Court request, Plaintiffs will move to compel on each request for which Defendant has improperly withheld documents but would request additional pages for the briefing. *See* Local Rule 7.1. Alternatively, Plaintiffs would be willing to have a discovery conference with the Court to discuss each request and whether Defendant has complied with its discovery obligations.

Interrogatory No. 16, and Defendant agreed to produce documents in response to the interrogatory. Kim Decl., Ex. 11. During the meet and confer process, Defendant identified various documents that it claims identified the significant financial expenditures after the witness who verified the interrogatory responses was unable to confirm whether any documents were produced. Kim Decl., Ex. 12. Plaintiffs have reviewed Defendant's identified documents, and other reports produced, and found that none of the documents include specific expenditures by categories or sufficient information to prove which payments were a direct result of COVID-19. Kim Decl., at ¶ 9. For example, Defendant's identified documents include documents that have projections but no actual figures, state general categories of expected expenses (e.g., testing), or have block categories of expenses (e.g., supplies) without clearly indicating whether those supplies are related to COVID-19. *See id.*

In order to prove unjust enrichment, Plaintiff must demonstrate that "(1) the defendant has unjustly retained a benefit to the plaintiff's detriment, and (2) the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *MetroPCS v. Devor*, 215 F. Supp. 3d 626, 634–35 (N.D. Ill. 2016) quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 137 Ill.Dec. 19, 545 N.E.2d 672, 679 (Ill. 1989). Courts routinely grant motions to compel financial records in matters that involve unjust enrichment claims. *See e.g.*, *Taser Int'l, Inc. v. Stinger Sys., Inc.*, No. 2:09-CV-00289-KJD-PA, 2010 WL 5070929, at *5 (D. Nev. Dec. 6, 2010) (compelling production of financial documents for plaintiff to determine whether defendant was unjustly enriched); *Superior Homes, L.L.C. v. Comardelle*, No. CIV. 12-4126-KES, 2013 WL 6146051, at *8 (D.S.D. Nov. 21, 2013) (granting motion to compel because "Comardelle's financial and tax records from 2011 to the present could provide evidence on whether Comardelle personally received any financial benefit or payment for his role

in the Nabors project. Proof of such a benefit is an element of Superior Homes's unjust enrichment claim."); *see also Jones Lang LaSalle Americas, Inc. v. Martin*, No. 1:20-CV-03540, 2023 WL 4683409, at \*10 (N.D. Ill. July 21, 2023) (court requested production of financial records in advance of motion for summary judgment on claim for unjust enrichment).

Therefore, Plaintiffs request that the Court compel Defendant to produce detailed financial records, including its audited financials.

### C. Documents Concerning Defendant's Commitment to a Safe Learning Environment is a Key Contractual Term.

For RFP No. 66, Plaintiffs requested all documents concerning Defendant's commitment to providing students with a safe learning environment. Kim Decl., Ex. 3. It is Plaintiffs' position that such documents are relevant to Defendant's defense that the parties' contract was modified; if a safe learning environment is a term of the parties' contract, then Defendant provided no consideration to modify the contract since Defendant was already obligated to protect its students. *See Watkins v. GMAC Fin. Servs.*, 337 Ill. App. 3d 58, 64, 785 N.E.2d 40, 44 (2003) ("A contract modification must satisfy the same criteria required for a valid contract: offer, acceptance, and consideration. Preexisting obligations are not sufficient consideration.") (internal citations omitted); *Doyle v. Holy Cross Hosp.*, 186 Ill. 2d 104, 112, 708 N.E.2d 1140, 1145 (1999) ("Because the defendant was seeking to reduce the rights enjoyed by the plaintiffs under the employee handbook, it was the defendant, and not the plaintiffs, who would properly be required to provide consideration for the modification. But in adding the disclaimer to the handbook, the defendant provided nothing of value to the plaintiffs and did not itself incur any disadvantage. In fact, the opposite occurred: the plaintiffs suffered a detriment—the loss of rights previously granted to them by the handbook—while the defendant gained a corresponding benefit.").

10

In response to Plaintiffs' request for production, Defendant refused to produce any documents and instead directed Plaintiffs to previously produced documents about its response to COVID-19. Kim Decl., Ex. 3. In order to establish the terms of the implied contract between Defendant and its students, Plaintiffs must demonstrate the terms through "the school's catalogs, bulletins, circulars, regulations, and other publications, and customs become part of the contract." *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 883 (7th Cir. 2022). Defendant's documents created during COVID-19 do not establish the terms of the parties' contract *before* COVID-19. Therefore, Defendant should be compelled to produce these relevant, responsive documents instead of stacking the deck in its favor by withholding key evidence.

### D. Defendant Must Produce a Privilege Log.

"Fed. R. Civ. P. 26(b)(5) requires parties withholding documents from discovery to claim the basis of the privilege and describe the nature of the privileged documents in a way that will allow other parties to assess the claim. Plaintiffs—and the court, when the parties seek intervention—are supposed to be able to "assess the claim" of privilege based on the defendant's privilege log. […] Compliance with Rule 26(b)(5)(A) is not optional." *Rossman v. EN Eng'g, LLC*, 335 F.R.D. 171, 172 (N.D. Ill. 2020) (internal citations omitted). Courts have found that privilege logs are untimely when produced months after responses to document requests were due. *See e.g.*, *Surgery Ctr. at 900 N. Michigan Ave., LLC v. Am. Physicians Assurance Corp., Inc.*, 317 F.R.D. 620, 632 (N.D. Ill. 2016) (privilege log was untimely when it was produced 4 ½ months after responses were due); *Miller v. City of Plymouth*, No. 2:09-CV-205-JVB-PRC, 2011 WL 1740154, at *4 (N.D. Ind. May 5, 2011) (finding privilege log untimely when produced five months after responses were due); *St. Paul Guardian Ins. Co. v. Walsh Constr. Co.*, No. 1:15-CV-10324, 2022 WL 1642311, at *2 (N.D. Ill. Mar. 30, 2022) (finding privilege log was untimely where there was

11

a one month delay in initial production log and five month delay in providing supplemental privilege log); *see also Kramer v. Am. Bank & Tr. Co., N.A.,* No. 11 C 8758, 2015 WL 13735745, at *2 (N.D. Ill. Aug. 17, 2015), *report and recommendation adopted,* No. 11 C 8758, 2016 WL 1238172 (N.D. Ill. Mar. 30, 2016) ("in many cases a privilege log is not contemporaneously produced at the time a claim of privilege is made and often is not produced for months or even years after the claim of privilege is raised. This insouciant attitude towards the privilege log requirement can have catastrophic repercussions, for the court can deem the claims of privilege waived.").

Here, Plaintiffs served their first set of RFPs on July 26, 2023, with responses served on September 25, 2023. Kim Decl., at ¶ 10. Plaintiffs served their second set of RFPs on September 20, 2023, and responses were served on October 20, 2023. *Id.* Plaintiffs' third set of RFPs were propounded on July 31, 2024, and Defendant responded on August 30, 2024. *Id.* On September 13, 2024, Plaintiffs served a fourth set of RFPs, and, on October 15, 2024, responses were served. *Id.* Finally, Plaintiffs' fifth set of RFPs were served on October 9, 2024, and responses were served on November 12, 2024. *Id* Defendant raised privilege in its responses to each set of RFPs. *Id.*

On November 11, 2024, Defendant sent a letter to Plaintiffs clawing back portions of documents that are purportedly protected by attorney-client privilege and/or the work product doctrine. Kim Decl., Ex. 13. Defendant's letter stated that "Defendant […] included these documents on their privilege log." *Id.* On November 18, 2024, Plaintiffs requested that Defendant provide a privilege log by November 22, 2024. Kim Decl., Ex. 14. Defendant refused on the grounds that a privilege log would be "premature" as Defendant's production was "ongoing" and that it would provide the log "once its productions are substantially complete." Kim Decl., Ex. 9. On November 26, 2024, Plaintiffs reiterated their request for a privilege log because Plaintiffs

intend to challenge, at least, the alleged privilege status of the clawed back documents. Kim Decl., Ex. 8. Defendant never responded to this request. *Id.*

To date, Defendant has not produced a privilege log. Kim Decl., at ¶ 10. Accordingly, Plaintiffs request that the Court compel Defendant to produce an adequate privilege log. *See RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 218 (N.D. Ill. 2013) ("Courts in this district have required that a privilege log identify for each separate document the following information: the date, the author and all recipients, along with their capacities, the subject matter of the document, the purpose for its production and a specific explanation of why the document is privileged.").

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court enter an order compelling Defendant to produce: (1) ESI; (2) financial records in response to RFP No. 31 and Interrogatory No. 16; (3) documents concerning Defendant's commitment to providing a safe learning environment in response to RFP No. 66; and (4) a privilege log. Plaintiffs also respectfully request that the Court set a date certain for Defendant to complete its production of documents.

Dated: February 11, 2025

Respectfully submitted,

*/s/ (Eddie) Jae K. Kim*
(Eddie) Jae K. Kim
Tiffine E. Malamphy
LYNCH CARPENTER LLP
117 East Colorado Blvd.
Suite 600
Pasadena, CA 91105
Phone: 626.550.1250
Fax: 619.756.6991
ekim@lcllp.com
tiffine@lcllp.com

Katrina Carroll
LYNCH CARPENTER LLP
111 West Washington Street

13

Suite 1240
Chicago, IL 60602
(312) 750-1265
katrina@lcllp.com

James A. Francis
John Soumilas
David A. Searles
Edward H. Skipton
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
(215) 735-8600
(215) 940-8000 (FAX)
Email: jfrancis@consumerlawfirm.com
Email: jsoumilas@consumerlawfirm.com
Email: dsearles@consumerlawfirm.com
Email: eskipton@consumerlawfirm.com


Yvette Golan
THE GOLAN LAW FIRM
2000 M Street, N.W., Suite #750-A
Washington, DC 20036
(866) 298-4150, ext. 101
(928) 441-8250 (FAX)
Email: ygolan@tgfirm.com

Jeffrey K. Brown, Esq. (To Apply Pro Hac
Vice)
Michael Tompkins, Esq. (Pending Pro Hac
Vice)
LEEDS BROWN LAW, P.C.
One Old Country Road, Suite 347
Carle Place, NY 11514
(516) 873-9550
jbrown@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com

Daniel A. Edelman (IL Bar; NDIL Trial Bar)
EDELMAN, COMBS, LATTURNER
& GOODWIN LLC
20 S. Clark Street, Suite 1800
Chicago, IL 60603-1841
(312) 739-4200
(312) 419-0379 (FAX)

14

15

dedelman@edcombs.com

*Counsel for Plaintiffs
and the Proposed Class*